**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | |
| Plaintiff, | |
| v. | Civil Action No. 18-cv-945 (CRC) |
| AMERICAN ACTION NETWORK, | |
| Defendant. | |

**PLAINTIFF CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON'S
OPPOSITION TO AMERICAN ACTION NETWORK'S MOTION FOR STAY**

# TABLE OF CONTENTS

I.   Introduction..................................................................................................................1

II.  Background ..................................................................................................................3

    A.  The FECA Provides for a Citizen Suit Following Exhaustion of Other Remedies..........3

    B.  AAN's Activities Gave Rise to CREW's Complaint, and CREW Has Exhausted its
        Remedies ........................................................................................................4

III. Standard of Review .....................................................................................................5

IV.  AAN's Stay Request is Unwarranted ..........................................................................6

    A.  AAN's Lengthy and Indefinite Stay Request is Immoderate and Unlawful..................6

    B.  AAN Has Not Shown Even a More Moderate Stay is Warranted ..............................10

        1. AAN Will Suffer No Cognizable Harm from Proceeding Here ..............................10

        2. CREW Would be Severely Prejudiced by a Stay.....................................................18

        3. A Stay Would Harm the Public's Interest ...............................................................20

        4. AAN Fails to Show Any Likelihood of Success on Appeal......................................23

V.   In the Alternative, if the Court Grants AAN's Stay, CREW Requests Leave to Serve
    Preservation Subpoenas on Likely Custodians and Leave to Gather Information to Identify
    those Custodians ........................................................................................................25

## I.       Introduction

American Action Network ("AAN"), now having flouted its disclosure obligations under the federal campaign finance laws for nearly a decade, asks this Court to further postpone any possible remedy by granting "extraordinary relief" that is appropriate only in "rare circumstances."  *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *Nat'l Indus. For Blind v. Dep't of Veteran Affairs*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017).  It seeks a stay of all proceedings in this action pending final appellate resolution of its appeal of "independent litigation."  AAN Mot. for Stay 10, ECF No. 11 ("AAN Mot.").  AAN has not even begun to meet its "heav[y]" burden to warrant such relief.  *Landis*, 299 U.S. at 256.

The administrative action that gave rise to the "independent litigation" began more than six years ago when Citizens for Responsibility and Ethics in Washington ("CREW") asked the Federal Election Commission ("FEC" or "Commission") to investigate AAN's failure to register and report as a political committee—as all available evidence demonstrated AAN was required to do under the relevant provisions of the FECA.  When a controlling bloc of FEC Commissioners first refused to act on those claims, CREW sought and this Court granted a declaration that the dismissal of CREW's complaint was "contrary to law."  On remand, the controlling Commissioners against refused to act, and this Court again determined that their refusal was based on an unlawful standard.  The Commission failed to conform with this latter order, triggering CREW's statutory right of action to challenge AAN's ongoing disclosure violations directly.

By now requesting the "extraordinary relief" of a stay, AAN simply seeks to further "prevent[] [CREW] from proceeding with [its] claims in federal court for an indefinite period of time, potentially for years."  *Belize Social Dev. Ltd. v. Gov't of Belize*, 688 F.3d 724, 732 (D.C.

1

Cir. 2012).  There can be no justification for such an indefinite request.  There is no risk of irreparable injury to AAN without one, and AAN has not and cannot prove otherwise.  But any additional delay would be manifestly at odds with CREW's and the public's interest in the expeditious resolution of this case.

Nor is AAN's request well founded.  Rather, it is based on misquotations and misrepresentations.  AAN misquotes the Supreme Court authority on point, *Landis*, misrepresenting the reversed district court's opinion as the holding of the Supreme Court.  *See* AAN Mot. 6.  AAN misinterprets the triggering condition the FECA places on a citizen suit.  *See* AAN Mot. 1–2.  AAN even resorts to misleadingly quoting this Court's own judgment out of context.  AAN Mot. 11.

That AAN must resort to misquoting authority simply underscores its failure to establish its burden to show a stay is warranted.  Indeed, AAN fails to identify any injury that would result from this case proceeding, let alone one sufficient to warrant the extraordinary relief it seeks here.  AAN further fails to show a stay would work no injury to CREW, fails to show the public interest would support a stay, and fails to show even a remote likelihood of success on its appeal—an appeal it fails to show is even within the jurisdiction of the Court of Appeals.

CREW and the public have waited the better part of a decade for AAN to fulfill its legal obligations, which started in 2009 and continue through today.  By this motion, AAN merely seeks to continue to deprive CREW and voters of information to which Congress has declared both are legally entitled.  Indeed, Congress intended information to be *timely* disclosed, not months or years after the fact as AAN's motion seeks.  In sum, AAN has failed to show an extraordinary stay is warranted here, and CREW respectfully asks this Court to deny AAN's request.

## II.     Background

### A.     The FECA Provides for a Citizen Suit Following Exhaustion of Other Remedies

The FECA provides a plaintiff with a cause of action to bring a case in its own name against a defendant who is alleged to have violated the Act.  52 U.S.C. § 30109(a)(8)(C).  Before that suit may be brought, the FECA requires the plaintiff exhaust administrative remedies with the FEC. *Id.*  The plaintiff must present its claim to the FEC and provide the agency an opportunity to remedy the violation.  *Id.* at § 30109(a)(1), (8)(c).  The FEC must consider whether the complaint gives rise to a "reason to believe" a violation may have occurred.  *Id.* at § 30101(a)(2); FEC, Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. 12,545, 12,545 (Mar. 16, 2007).  If it does, then the FEC "shall make an investigation of such alleged violation."  52 U.S.C. § 30109(a)(2).  The FEC must then determine whether there is "probable cause" to believe a violation has occurred and, if there is, to first pursue conciliation and later pursue enforcement by civil litigation if conciliation attempts fail.  52 U.S.C. § 30109(a)(4), (6).  If the FEC pursues enforcement, the complainant may not bring its own civil action.

If, however, the FEC either fails to act on the complaint or dismisses the complaint, the complainant may seek judicial review to determine whether the failure to act or dismissal was "contrary to law."  52 U.S.C. § 30109(a)(8)(A).  In the event the plaintiff succeeds in winning a declaration from "the court . . . that the dismissal of the complaint or the failure to act is contrary to law," then the court may direct the FEC to "conform with such declaration within 30 days."  *Id.* at § 30109(a)(8)(C).  Finally, if the FEC fails to conform with that court declaration within 30 days, the FECA provides that the plaintiff has exhausted administrative remedies, and awards the

complainant the right to bring a civil action "in the name of such complainant . . . to remedy the violation involved in the original complaint." *Id.*

### B.     AAN's Activities Gave Rise to CREW's Complaint, and CREW Has Exhausted its Remedies

The litigation here and the preceding administrative and judicial proceedings concern CREW's allegation that AAN is and has been violating the FECA since 2009.  On June 7, 2012, CREW filed an administrative complaint asserting that AAN violated the FECA by operating as a political committee, while failing to register and report as required by the statute.  Compl. ¶¶ 37, 66.  CREW's complaint arises from the fact that, starting in 2009 and continuing to today, AAN accepted and spent millions of dollars to influence federal elections, *id.* ¶¶ 38–41, 62, 63, 78, 79, easily meeting the FECA's statutory threshold for political committee status, 52 U.S.C. § 30101(4).  Further, as evidenced by AAN's extensive spending on political ads in 2009 to 2010, AAN's major purpose was and is to influence elections.  Thus, it is not excused from reporting under the limitations imposed by *Buckley v. Valeo*, 424 U.S. 1, 79 (1976).  Compl. ¶¶ 45, 60, 61, 82, 83.  Accordingly, as early as 2009, AAN was obliged to register as a political committee and start fulfilling its reporting obligations; these obligations continue until AAN terminates its political committee status with the FEC under 52 U.S.C. § 30103(d)(1).  Compl. ¶¶ 64, 90, 91.[1]

In its initial consideration of CREW's complaint, the Commission dismissed it after splitting three-to-three over the recommendation of the FEC's Office of General Counsel to find

---

[1] AAN mischaracterizes the nature of CREW's claim by inaccurately attributing a quote to CREW's district court complaint that does not appear there.  *See* AAN Mot. 9 (attributing quote to "Compl. ¶ 8").  While AAN's actions in 2009 and 2010 first triggered AAN's duty to register and report, AAN's duties continued from then to today and will continue into the future until it lawful terminates with the FEC.  The case therefore does not exclusively "focus[] on AAN's past conduct between July 2009 and June 2011."  AAN Mot. 12.

4

CREW's allegations raised a "reason to believe" AAN violated the Act. Compl. ¶ 68. CREW sought judicial review and, on September 19, 2016, this Court held the dismissal was "contrary to law," finding that the dissenting commissioners' analysis in their statement of reasons "blinks reality." Compl. ¶ 69 (quoting *CREW v. FEC*, 209 F. Supp. 3d 77, 93 (D.D.C. 2016) ("*CREW I*")). AAN appealed that judgment, but it was dismissed because "[t]he district court order remanding the case to the [FEC was] not a final, appealable order." *CREW v. FEC*, No. 16-5300, 2017 WL 4957233, at *1 (D.C. Cir. Apr. 4, 2017) (per curiam).

On remand, the Commission once again split three-to-three on CREW's complaint and the dissenting commissioners issued a new statement of reasons. Compl. ¶ 70. CREW once again sought judicial review and, on March 20, 2018, obtained a declaration that the commissioners' new statement of reasons was also contrary to law. *Id.* ¶ 71 (citing *CREW v. FEC*, 299 F. Supp. 3d 83, 101 (D.D.C. 2018) ("*CREW II*")). This Court gave the FEC thirty days to conform with its judgment. Compl. ¶ 72. That deadline expired on April 19, 2018 without the FEC conforming.[2] *Id.* at ¶ 73. CREW thereby exhausted its administrative remedies, giving rise to its cause of action which is the subject of this litigation. On April 23, 2018, CREW filed this suit, in its own name, seeking to "remedy the violation involved in the original complaint," as provided by 52 U.S.C. § 30109(a)(8)(C). *See* Compl. On June 1, 2018, AAN moved to stay this action pending "final appellate resolution" of *CREW I and CREW II*. AAN Mot. 1.

## III.   Standard of Review

The relief AAN requests here, a stay of an action pending "appeal from independent litigation against the FEC," AAN Mot. 10, is an "extraordinary remedy." *Nat'l Indus. For Blind,*

_____

[2] Nor did the FEC appeal or seek stay of enforcement of the Court's Order. Compl. ¶ 73.

296 F. Supp. 3d at 137.  A party seeking to stay an action during an interlocutory appeal in the *same* case "bears the burden of showing that the circumstances justify an exercise of that discretion," *Nken v. Holder*, 556 U.S. 418, 433–34 (2009), but a party who seeks a stay pending appeal of a *different* case bears a burden that is particularly "heav[y]." *Landis*, 299 U.S. at 255, 256.  Such relief should be granted only in "rare circumstances."  *Id.* at 255.  In addition to the factors that courts analyze when considering a stay request pending interlocutory appeal in the same case, AAN faces additional factors where, as here, it seeks a stay pending appeal in a different case.  Here, the movant must also "must make out a clear case of hardship or inequity in being required to go forward" and a "pressing need." *Id.*; *accord Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971).  The movant must also show the "public welfare[] will . . . be promoted" by the stay.  *Landis*, 299 U.S. at 256.  Even then, a "stay is not a matter of right, even if irreparable injury might otherwise result." *Nat'l Indus. of Blind*, 296 F. Supp. 3d at 138.  Further, even though "the power to stay is incidental to the power inherent in every court to control the disposition of the causes on its docket," the court abuses that discretion if it issues a stay "unless so framed in its inception that its force will be spent within reasonable limits." *Landis*, 299 U.S. at 258; *accord Belize Social Dev. Ltd.*, 688 F.3d at 732.

IV.    **AAN's Stay Request is Unwarranted**

    A.    **AAN's Lengthy and Indefinite Stay Request is Immoderate and Unlawful**

AAN requests a stay pending "final appellate resolution" of its appeal of *CREW I* and *CREW II.*  AAN Mot. 1.  Assuming AAN's appeal of *CREW II* is not dismissed like its previous appeal of *CREW I*, AAN's request "has the legal effect of preventing [CREW] from proceeding with [its] claims in federal court for an indefinite period of time, potentially for years." *Belize*, 668 F.3d at 732.  "The case now pending before the Court of Appeals will, unquestionably, take

at least one or more years to get resolved and an additional one to two years if the Supreme Court decides to grant certiorari which the loser before our Court of Appeals will undoubtedly request." *United States v. Philip Morris USA, Inc.*, 841 F. Supp. 2d 139, 141 (D.D.C. 2012). AAN's attempts to justify this significant request fail. First, AAN fails to recognize the burden that it faces, by misapprehending the standard of review and relying on inapposite authority. Second, under the applicable legal standard, AAN's cannot meet its burden, and its request for a lengthy and indefinite stay is both immoderate and unlawful.

In *Landis*, the Supreme Court established the lens through which courts view requests for a stay pending appeal in a different case, establishing a "heav[y]" burden with relief to be granted only in "rare circumstances." *Landis*, 299 U.S. at 255, 256. While AAN recognizes that the standard of review is different than for a stay pending interlocutory appeal in the same case, it errs in describing the *Landis* standard, by citing the Supreme Court's discussion of the district court's opinion, rather than the Court's own holding in the case. Citing *Landis*, AAN argues that there is reason enough to stay a case where the appeal of a separate case may "assist in the determination of the questions of law involved." AAN Mot. 6 (quoting *Landis*, 299 U.S. at 253). However, this quote does not appear as part of the *Landis* holding, rather, is it found in the Court's discussion of the District Judge's reasoning. *Landis*, 299 U.S. at 253 ("Upon this showing *the District Judge* reached the conclusion that the motion should be granted, stating his reasons in an opinion. 'A decision,' *he said*, 'by the Supreme Court . . . even if it should not dispose of all the questions involved, would certainly narrow the issues in the pending cases and assist in the determination of the questions of law involved.'" (emphasis added)). The Supreme Court found that, in staying the case on these grounds, "discretion was abused," and it vacated the District Court's order and remanded the case for further proceedings "in accordance with the

principles laid down in this opinion." *Id.* at 256, 258.[3]  This misreading of *Landis* may explain AAN's odd—and incorrect—assertion that a request for a stay pending interlocutory appeal faces a "more stringent" test than a stay pending appeal of an entirely separate legal action. AAN Mot. 10.

Thus, contrary to AAN's suggestion, AAN faces a greater burden in this case than in the typical case regarding a stay pending interlocutory appeal. Here, it is not sufficient to show "similar legal issues" are presented in the two cases, or that the "parties overlap," as AAN argues. *Nat'l Indus. For Blind*, 296 F. Supp. 3d at 133.  Nor does the mere fact that a judgment in another proceeding would be instructive or reduce the need for briefing here justify a stay. *Dellinger*, 442 F.2d at 787 (criticizing government's argument that judicial "economy" supported a stay pending resolution in a related case, as such an argument "would support a district court stay of proceedings in a case whenever the same question is involved before another court in litigation," contravening *Landis*'s command that such stays only be awarded in "rare circumstances").

In addition to simply misreading *Landis*, AAN manufactures its erroneous standard of review by relying on authority not relevant to the issue at hand.  For example, it cites cases in which a plaintiff's claim would be precluded by a prior adverse judgment, and the plaintiff

---

[3] For this reason alone, AAN's citation of *Fairview Hosp. v. Leavitt*, No. 05-1065 (RWR), 2007 WL 1521233, at *3 (D.D.C. May 22, 2007) does nothing to support its argument.  That case similarly misread *Landis*, holding that a stay requested by the plaintiff was justified by the very factors *Landis* found insufficient.  *Compare id.* at *2 & *3 n.7 (granting stay because resolution of pending case would "simplify the proceedings.") *with Landis*, 299 U.S. at 256 (noting pending appeal could "settle many and simplify . . .  all" the issues, but holding the movant must still "mak[e] out the justice and wisdom of a departure from the beaten track").  *Fairview* is also inapposite on its facts, as there the defendant had agreed to similar stays and had not justified its departure, and the legal issues and defenses were "indistinguishable" from the pending case. 2007 WL 1521233, at *3.  Finally, briefing on a dipositive motion in the pending case was already complete, and thus the court found the stay was not indefinite.  *Id.* at *3 n.7.

sought a stay pending appeal of that adverse judgment that would otherwise preclude the suit. *See Martin v. Malhoyt*, 830 F.2d 237, 264–65 (D.C. Cir. 1987) (stating that "[a]ccording preclusive effect to a judgment from which an appeal has been taken, however,  risks denying relief on the basis of a judgment that is subsequently over-turned"; issuing stay "provided [appellate proceedings] are moving forward with reasonable dispatch and will not be long delayed"); *Univ. of Co. Health at Mem'l Hosp. v. Burwell*, 233 F. Supp. 3d 69, 87, (D.D.C. 2017) (granting stay consented to by parties pending appeal of adverse decision in earlier case which, absent reversal, precludes plaintiffs' claims); *see also IBT/HERE Emps. Representatives' Council v. Gate Gourmet Div. Americas*, 402 F. Supp. 2d 289, 293 (D.D.C. 2005) (granting plaintiff's motion to stay pending resolution of arbitration proceeding rather than grant defendant's motion to dismiss for lack of jurisdiction).  These cases do not support the relief AAN requests not do they lessen the burden that weighs "heavily on [movants]" to show a stay is warranted.  *Landis*, 299 U.S. at 256.

Having dispensed with AAN's erroneous legal standard and inappropriate case law, AAN simply cannot meet its "heav[y]" burden to show "a clear case of hardship or inequity in being required to go forward," a "pressing need," and that the "public welfare will . . . be promoted" by the stay.  *Landis*, 299 U.S. at 255, 256.; *accord Dellinger*, 442 F.2d at 786.  As detailed in section IV.B., *infra*, AAN can show neither harm absent a stay nor promotion of public welfare should a stay be granted.

Further, and in addition to its inability to show hardship, AAN's request for such a lengthy and open-ended stay is *per se* "unlawful."  A request for a stay is "immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits." *Dellinger*, 442 F.2d at 787; *Philip Morris USA, Inc.*, 841 F. Supp. at 141 (citing "lengthy and

indefinite" nature of stay as reason to deny request); *cf. Fonville v. District of Columbia*, 766 F. Supp. 2d 171, 172 (D.D.C. 2011) (granting stay pending resolution of matters pending before highest state court, one of which briefing was complete and the other for which briefing would complete the next day, that parties agreed would resolve "threshold—and dipositive—issue in this litigation"). AAN's requested stay has no such reasonable limits, rendering it unlawful.

### B.    AAN Has Not Shown Even a More Moderate Stay is Warranted

Even if reasonable limits were imposed on AAN's stay request, it has failed to show that a stay is warranted. First, AAN has not shown it would suffer *any* harm from proceeding here, never mind made a "clear showing of hardship," "irreparable harm," and a "pressing need." Second, there is more than a "fair possibility the stay for which it prays will work damage" to CREW, as it would, indeed, cause substantial harm. Third, the public welfare is not advanced by the stay, but rather would be harmed. Finally, AAN has failed to demonstrate a likelihood of success for its appeal.

### 1.    AAN Will Suffer No Cognizable Harm from Proceeding Here

AAN's request rests ultimately on its desire to avoid litigation before this Court. Nevertheless, it makes no clear showing of harm or pressing need to avoid litigation here; indeed, it fails to identify a cognizable harm that would befall it if this case moves forward. Nor do its conclusory and erroneous assertions about the effect its appeal could have on this case support a stay, even assuming that appeal is not dismissed like the previous one.

#### a.  *Litigation is Not a Harm*

"Litigation costs, standing alone, do not rise to the level of irreparable injury." *McSurley v. McClellan*, 697 F.2d 309, 317 n.13 (D.C. Cir. 1982). Indeed, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are

not enough" to warrant a stay. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). AAN points to its need to defend this suit to justify its request for a stay. That is not a harm sufficient to justify a stay, so its request fails.

AAN of course claims to show more, but its attempts fail. First, contrary to AAN's suggestion, there is no First Amendment right against defending a lawsuit. AAN Mot. at 8. AAN cites *Citizen United v. FEC*, 558 U.S. 310, 326 (2010), *FEC v. Wisconsin Right to Life ("WRTL")*, 551 U.S. 449, 469 (2007), and *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 794 (1988), for this supposed right, but none support this wild conclusion. Each of those cases were discussing the fact that an unconstitutionally broad law could not be salvaged through subsequent litigation that clarifies and limits it. *See Citizens United*, 558 U.S. at 326-27; *WRTL*, 551 U.S. at 469; *Riley*, 487 U.S. at 794. That is a far cry from AAN's suggestion that it is immune from the reach of constitutional law simply because it self-identifies as an "issue advocacy" group. AAN Mot. at 5. All defendants have First Amendment rights—and some defendants are named specifically because they engaged in speech that may constitutionally subject the speaker to liability. *See, e.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 36 (2010). Whatever constitutional challenges AAN may have to the underlying statute may be heard and adjudicated here and, if necessary, addressed by an appellate court reviewing a judgment from this action. *See SEC v. Deloitte Touche Thomatshu CPA Ltd.*, 940 F. Supp. 2d 10, 14 (D.D.C. 2013) (denying stay where "final decisions" emanating from two pending proceedings "would both be resolved by the same decision-maker, our Court of Appeals"); *see also Philip Morris USA Inc.*, 841 F. Supp. 2d at 142 ("The mere fact that First Amendment

issues are being raised in both cases does not provide sufficient justification to delay" resolution

of the case).[4]

AAN also attempts to manufacture a right to proceed only before the FEC and subject to

the various administrative mechanisms in the FECA.  AAN Mot. 11–12.  Contrary to AAN's

argument, Congress did not intend for all FECA enforcement to proceed through the FEC.

Rather, the same FECA that establishes administrative proceedings also gives CREW a cause of

action to pursue civil litigation directly against AAN here.  *See* 52 U.S.C. § 30109(a)(8)(C).  Nor

is the FECA's citizen suit provision the only non-administrative enforcement mechanism

authorized by the FECA.  Rather, in addition to FEC enforcement and citizen suit enforcement,

the FECA provides that the Department of Justice may prosecute a group like AAN without any

of the check points for the FEC, provided there is probable cause to believe a crime occurred.

*See Fieger v. Gonzales*, 542 F.3d 1111, 1116 (6th Cir. 2008) (rejecting argument DOJ may only

prosecute FECA violation after referral from FEC); *Bialek v. Mukasey*, 529 F.3d 1267, 1274

(10th Cir. 2008) (same).

Nor does AAN enjoy a right of confidentiality over any materials that may be relevant to

this litigation beyond those privileges that belong to litigants generally.  AAN Mot. 2.  While the

FECA "prohibit[s] the FEC from disclosing information concerning ongoing investigations," *In*

*re Sealed Case*, 237 F.3d 657, 667 (D.C. Cir. 2001), it does not confer any confidentiality on the

---

[4] Nor does the Commission have any power "to decide whether or not to regulate First Amendment activity," thereby granting some sort of First Amendment immunity to those groups over which it abdicates enforcement.  *Cf.* AAN Mot. 8; *see also Akins v. FEC*, 101 F.3d 731, 744 (D.C. Cir. 1996) (en banc) (holding FEC's enforcement discretion "raises First Amendment concerns"), *vacated on other grounds by FEC v. Akins*, 524 U.S. 11 (1998).  The FECA expressly provides for alternative avenues of enforcement, particularly where the FEC bases its lack of enforcement on the erroneous views of a minority of commissioners, *see CREW I*, 209 F. Supp. 3d at 81.

underlying materials themselves. Just as the attorney-client privilege does not confer a privilege on materials simply because they are sent to an attorney, *United States v. Naegele*, 468 F. Supp. 2d 165, 169 (D.D.C. 2007), neither does the FECA privilege underlying documents or facts about AAN simply because the FEC may have also gathered them.[5]   Moreover, any confidentiality AAN enjoys in materials that may be relevant to this matter, including any interests that are grounded in the First Amendment, may be addressed in this litigation by protective orders or other means. *See, e.g.*, *ETSI Pipeline Project v. Burlington No., Inc.*, 674 F. Supp. 1489, 1490 (D.D.C. 1987).

Nor is there any risk AAN will face "duplicative proceedings," AAN Mot. 2, particularly those not of its own making. The proceedings in the appeal AAN seeks, if not dismissed, will concern the propriety of the FEC's decision making. *See CREW II*, 299 F. Supp. 3d at 98-101. By contrast, this litigation presents the entirely different question of adjudicating AAN's political committee status. *See* Compl. ¶¶ 86, 91. Thus this case is an entirely different posture than *DSCC v. NRSC*, No. 97-cv-1493-JHG (D.D.C. Aug. 27, 1997) ("NRSC Order"), the only precedent citizen suit. While AAN is correct that a stay was granted there, *see* Order, *DSCC v. NRSC*, No. 97-cv-1493-JHG (D.D.C. Aug. 27, 1997) (attached as Exhibit 1), the reason for the stay was that the NRSC would have been "forc[ed] . . . to fight a two-front war" and materials from an open investigation would necessarily be disclosed, *id.* at 2, because the NRSC was both the defendant in the citizen suit *and* the subject of an active an ongoing FEC investigation, *see* Mem.  In Support of Def.'s Mot. for Stay of Proceedings or for Alternative Relief 9, *DSCC v.*

---

[5] Given that the FEC twice dismissed CREW's claims against AAN before proceeding to an investigation, *see CREW II*, 299 F. Supp. 3d at 86, 88-92, it is unlikely any documents were gathered that could be subject to protection under § 30109(a)(12).  Moreover, even if any such documents were gathered, AAN's communications with the FEC are unlikely to be relevant, as this case does not concern the FEC's investigation but rather AAN's legal status.

*NRSC*, No. 97-cv-1493-JHG (D.D.C. filed July 18, 1997) ("NRSC Motion") ("NRSC would be required to defend itself in the on-going Commission investigation . . . while simultaneously defending itself in the instant action.") (attached as Exhibit 2).  As that case arose from the Commission's failure to act, rather than a dismissal, the FEC enforcement proceeding was ongoing and, once a citizen suit was filed, quite active.  Order at 1–2, *DSCC v. FEC*, No. 96-cv-2184-JHG (D.D.C. Sept. 11, 2000) (attached as Exhibit 3) (noting once citizen suit was brought, "the FEC completed its proceedings on the underlying administrative complaint, and entered into a conciliation agreement with the NRSC"); *see also DSCC v. FEC*, 139 F.3d 951, 952 (D.C. Cir. 1998) (setting forth procedural history).  AAN, however, makes no representation that it is currently the subject of an ongoing and active FEC investigation, and all available evidence indicates that it is not.[6]

Indeed, the order in *DSCC v. NRSC* is informative for the arguments it rejected *sub silentio*, many of which are raised here:  that civil litigation would deprive NRSC of the benefit of a "neutral government prosecutor making judgments at each stage of the investigation," NRSC Motion at 9, and, as discussed further below, that the appeal "may eliminate the DSCC's argued jurisdictional basis for its claim and thereby eliminate the need for any further litigation," *id.* at 8.

Simply put, AAN would of course prefer to postpone indefinitely discovery into and adjudication regarding its status as a political committee.  But AAN's preference to avoid the law

---

[6] *See* AAN Mot. Exs. A, B.  Although CREW received a notice that the matter is currently "open" before the agency, the letter makes clear it is only "open" because it has been remanded from this Court.  *See* Ltr. Kathleen Guith to Noah Bookbinder Re. MUR 6589R (May 17, 2018) (attached as Exhibit 4).  The letter makes no reference to a vote finding reason to believe, the necessary next step for any investigation to proceed against AAN.  Moreover, if an investigation was active, AAN could disclose that to the Court.  While the FEC may not disclose the fact of an investigation, AAN is free to.  *See* 52 U.S.C. § 30109(a)(12).

and litigation expenses are not injuries warranting a stay.  Each of AAN's interests may properly

be addressed during this proceeding without requiring an indefinite stay.

### b.  Reversal of CREW II Would Not Preclude Suit Here

AAN asserts, with no citation to authority, that a success in its appeal of *CREW II* would

mean "there will be no statutory basis for this lawsuit."  AAN Mot. 1–2.  AAN is incorrect.  The

text of the FECA and the structure of the appellate process demonstrate a reversal would not

deprive CREW of its cause of action here.

First, the text of the FECA makes plain that the prerequisite for CREW's suit is that the

FEC failed to conform to this Court's Order, a fact that cannot be altered even if the court of

appeals reverses.  The relevant text provides:

> In any proceeding under this paragraph the court may declare that the dismissal of
> the complaint or the failure to act is contrary to law, and may direct the
> Commission to conform with such declaration within 30 days, failing which the
> complainant may bring, in the name of such complainant, a civil action to remedy
> the violation involved in the original complaint.

52 U.S.C. § 30109(a)(8)(C).  As this provision plainly states, a cause of action for a citizen suit

arises when the Commission "fail[s]" to "conform with such declaration."  *Id.*  Congress did not

condition the citizen suit cause of action on a determination that the *dismissal* was contrary to

law, rather it did so on the Commission's failure to conform to the district court's *declaration*.

*Id.*  Here, the Commission failed to conform and nothing that may happen on appeal can alter

that fact.  Indeed, this conclusion is bolstered by the fact that a "district court order remanding

the case to the [FEC] is not a final, appealable order."  *CREW*, 2017 WL 4957233, at *1.  It

would make no sense to then condition a citizen suit's propriety on events occurring on an appeal

that cannot be brought.

15

Second, the alternative grounds for judicial relief confirm this reading.  In addition to judicial review of dismissals, the FECA also provides for judicial review of the FEC's failure to act.  52 U.S.C. § 30109(a)(8)(A).  That suit can be brought as early as 120 days after the complaint is filed.  *Id*.  If a district court finds the failure to act is unreasonable, it can declare the failure to act contrary to law and permit a citizen suit if there is no conformity within 30 days.  52 U.S.C. § 30109(a)(8)(C); *Common Cause v. FEC*, 489 F. Supp. 738, 744 (D.D.C. 1980).  Given that "[t]he Act is studded with *short* deadlines governing the speed with which such complaints must be handled," *Rose v. FEC*, 608 F. Supp. 1, 11 (D.D.C. 1985), *on remand from In re Nat'l Cong. Club*, Nos. 84-5701, 84-5719, 1984 WL 148396 (D.C. Cir. Oct. 24, 1984), including the ability to bring a citizen suit within 30 days of a district court order issued after a complaint has been pending with the agency for only 120 days, it would be very odd to then allow the respondent to put the citizen suit in jeopardy with indefinite appeals.

Third, the statutory deadlines support the plain reading of the text.  While parties to FEC litigation would have sixty days to appeal—if an appeal was possible—*see* Fed. R. App. P. 4, the statute provides the FEC only thirty days to conform, 52 U.S.C. § 30109(a)(8)(C).  AAN's interpretation would have the odd result of both permitting a citizen suit on the thirty-first day and thwarting that same suit if the parties appeal on day thirty-one through sixty.  Finally, as noted, the court in *DSCC v. NRSC* rejected the argument *sub silentio* when the defendant there suggested a stay was warranted because an appeal could deprive the DSCC of its cause of action.  *Compare* NRSC Motion at 8 *with* NRSC Order at 2.

### c.  The Outcome on Appeal is Not Dispositive of the Issues in This Case

Regardless of the outcome on appeal, issues in this case would remain.  First, the causes of action before the courts would be distinct:  the cause of action in *CREW II* was CREW's claim

under 52 U.S.C. § 30109(a)(8)(A) that the FEC's dismissal was contrary to law, *CREW II,* 299 F. Supp. 3d at 86, while the suit here is brought under 52 U.S.C. § 30109(a)(8)(C) and concerns whether AAN violated 52 U.S.C. § 30103 and § 30104 and applicable regulations, *see* Compl. ¶¶ 86, 91.  Thus, it is possible for the Court of Appeals to reverse *CREW II* on grounds that would have no bearing on the questions presented here.  *See, e.g.*, *SEC*, 940 F. Supp. 2d at 14 (denying stay even where issues in two proceedings overlap, but "involve[d] different statutes, with different legal standards, and seek entirely different result."); *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 143 (denying stay where, "[a]lthough the substance may be similar" in two actions, they involve "an entirely different cause of action," and where there was "considerable uncertainty regarding whether or not the Federal Circuit will actually reach the legal issue that is common to these cases").

Second, even if the Court of Appeals did opine on an issue likely to be relevant here—the treatment of electioneering communications under *Buckley*'s "major purpose" test, 424 U.S. at 79—that ruling would not be dispositive to this action.  In the unlikely event that the Court of Appeal finds that this Court erred on that question in *CREW I* and *CREW II*, this Court could simply apply the Court of Appeal's guidance in the course of this proceeding.  If in the extraordinarily unlikely event that, under that new guidance, none of AAN's electioneering communications could be deemed to evidence a purpose to elect federal candidates, CREW's case would continue under other theories presented here:  that AAN's solicitation's and internal documents show that its major purpose is to nominate and elect federal candidates.  *See* Compl. ¶¶ 61, 80, 82, 83; *see also* FEC, <u>Political Committee Status, Supplemental Explanation and Justification</u>, 72 Fed. Reg. 5595, 5601, 5605 (Feb. 7, 2007) (group's internal documents and solicitations may show its major purpose).  Further, that unlikely reversal would not result in any

great waste of resources here.  Given that AAN's electioneering communications are publicly

available, *see CREW II*, 299 F. Supp. 3d at 87–91 & nn. 2, 6–11, discovery may focus on the

other issues presented in this case that are not the subject of the appeal in *CREW I* and *CREW II*.

Thus, even a ruling favorable to AAN in the appeals may not significantly change the need for

discovery on the distinct issues presented here.  AAN's interests are therefore hardly "pressing."

*Landis*, 299 U.S. at 255.

 In sum, given the fact that an appellate judgment—if one could be had—would neither

deprive CREW of its cause of action nor provide dipositive guidance, AAN fails to show a stay

is warranted pending final appellate resolution of its attempted appeal.

## 2. CREW Would be Severely Prejudiced by a Stay

 Contrary to AAN's claims, staying this action pending what may be years of appellate

litigation will severely prejudice CREW.  A lengthy delay will deny CREW access to the

information to which is it entitled while allowing AAN to continue spending millions on

elections while shirking its duty to register as a political committee and report its contributors.

 CREW first filed the administrative complaint asserting AAN violated the FECA by

failing to register and report as a political committee more than six years ago.  Compl. ¶ 66.

Since that time, AAN has spent millions more on federal elections without providing any insight

into where its funds originate.  *Id.* ¶¶ 62, 63.  Indeed, it appears AAN is preparing to spend

millions more in the upcoming 2018 election, but has no apparent plan to provide CREW or the

public with information about "who is speaking about a candidate," *Citizens* United, 558 U.S. at

369, and the "sources of a candidate's financial support."  *Buckley*, 424 U.S. at 67; *see also* Scott

Bland, *Ryan-Linked group raised $24.6M from anonymous donor*, Politico (May 18, 2018),

https://politi.co/2t6rlVQ (describing AAN's receipt of $24.6 million from a single anonymous

donor between July 2016 and June 2017); Anna Palmer, *Power Briefing: Inside McCarthy's first House super PAC fundraiser*, Politico (May 15, 2018), https://politi.co/2tiIH23 (noting AAN, together with its associated super PAC, have raised $117.8 million this election cycle, of which about $36.4 million belongs to AAN).

Nonetheless, ANN proposes to indefinitely stay this action pending what will likely be years of appellate litigation, extending AAN's unlawful failure to disclose required information far into the future. Given that the information AAN is required to report is most useful, however, to CREW, its readers, and the public when that information is timely and relates to concurrent government actions or elections, the injury AAN causes and will continue to cause by failing to timely report is irreparable. A delayed release of information cannot fully substitute for the timely release of information. Every day that goes by without AAN disclosing information that it is legally required to disclose prevents CREW from carrying out its activities in the most useful and advantageous manner. A stay therefore would cause extensive and irreparable injury to CREW.

AAN asserts otherwise because it misconstrues CREW's action here to "look[] backward" and to relate solely to AAN's actions in 2009 and 2010. AAN Mot. 9. As an initial matter, the quote it attributes to CREW's district court complaint and cites in support of this argument is found nowhere in CREW's district court complaint. *See id*; *see also* Compl. ¶¶ 1-92.[7] More importantly, however, AAN misunderstands the import of its historical actions. AAN's actions in 2009 and 2010 are important because, AAN *first* became a political committee

---

[7] The text that AAN quotes appears in the administrative record, but is found nowhere in CREW's district court complaint.

as early as 2009 and no later than 2010.  Comp. ¶¶ 78, 79.[8]  Under the FECA, once AAN became

a political committee, it was lawfully required to report the sources of all its funds from that

point on until it ceased making any expenditures and accepting any contributions, and terminated

its political committee status with the FEC.  52 U.S.C. § 30103(d)(1).  AAN has never filed a

notice of termination, Compl. ¶ 64; nor, in fact, could it qualify for termination because it has

never ceased taking contributions or making expenditures, *id.* ¶¶ 62, 63.  Therefore, this suit

seeks to prove that AAN is currently a political committee and has been one since at least 2010.

If proven, CREW would have a right to know, among other things, the identity of every

contributor who gave over $200 in a year to AAN from 2009 until now, as well as any such

future contributors until such time as AAN lawfully terminates.  CREW's allegations thus

"involve[] a not insubstantial claim of present and continuing infringement" of CREW's legal

rights.  *See Dellinger*, 442 F.2d at 787 (denying stay where complaint concerned continuing

violation).  A stay therefore would indefinitely postpone CREW's ability to vindicate its right to

know and render much of that information untimely, thus resulting in significant injury to

CREW.

### 3.   A Stay Would Harm the Public's Interest

Rather incredibly, AAN asserts that a stay here—which has the effect of depriving the

public of information to which it is lawfully entitled—is nonetheless supported by the public

interest.  It does so only by ignoring the immense public interests in full and timely disclosure of

---

[8] AAN is correct, however, that evidence from 2009 and 2010 is highly relevant to CREW's claims here.  But that counsels against granting a stay, because "a thorough, comprehensive investigation only gets more difficult with the passage of time."  *SEC*, 940 F. Supp. 2d at 14 (denying stay where investigation had only been pending for "twenty-two months").  Indeed, many financial institutions only retain records for seven years, *see* 17 C.F.R. § 210.2-06, so there is already significant risk that AAN's records from its first year of existence have been lost.  This case must proceed expeditiously if further spoliation is to be prevented.

AAN's funders, and by asserting an interest which is no greater served by a stay than through proceeding with litigation.

First, AAN's discussion of the public interest notably ignores the true nature of the public interest at stake:  the public's right to be "fully informed" about "[t]he sources of a candidate's financial support," *Buckley*, 424 U.S. at 67, 76, and "who is speaking about a candidate," *Citizens United*, 558 U.S. at 369.  *See also McConnell v. FEC*, 540 U.S. 93, 121 (2003) (outlining multiple interests served by disclosure).  "[T]he public has an interest in knowing who is speaking about a candidate and who is funding that speech. . ."  *SpeechNow.org v. FEC*, 599 F.3d 686, 698 (D.C. Cir. 2010).  It allows "citizens [to] see whether elected officials are 'in the pocket' of so-called moneyed interests."  *Citizens United*, 558 U.S. at 370.  Indeed, disclosure is necessary to preserve the "free functioning of our national institutions."  *Buckley*, 424 U.S. at 66–67.  Thus, the Supreme Court has clearly identified a substantial public interest in providing voters information on who is speaking in support of or in opposition to candidates for political office.

These public interests come squarely to bear on AAN, an organization which indisputably has spent tens of millions over the years to elect and defeat federal candidates. Voters will soon be facing the question whether to elect candidates supported or opposed by AAN, and some of the same candidates that appeared in AAN's 2010 ads are running in elections this year.  *See, e.g.*, *CREW II*, 299 F. Sup. 3d at 90 n.8 (describing AAN's ad attacking candidate Mike Oliverio); FEC, Federal Elections 2010 at 145 (July 2011), http://bit.ly/2HWxI3C (showing David McKinley, the beneficiary of AAN's ads, beat Mike Oliverio); David McKinley, FEC Form 2, Statement of Candidacy (Nov. 28, 2016), http://bit.ly/2sYukR6 (declaration of David McKinley of candidacy for federal office in 2018

election).  The public has an immense interest in accessing the information which Congress has
deemed essential for the proper exercise of their franchise *before* an election.  AAN's request for
a stay, however, would render such timely access impossible, potentially postponing this case for
so long as to deprive voters in the *2020* election of the information to which Congress
determined they are entitled.

By contrast, AAN asserts a public interest in "clarity and consistency" in First
Amendment law, and an interest in protecting against "chill."  AAN Mot. 13.  AAN fails to
explain why this Court's decision in *CREW I* and *CREW II* did not provide "clarity and
consistency," or why this Court cannot further provide clarity and consistency here.  Rather,
AAN believes that this Court got the law wrong, and it wants a ruling "consistent[]" with its
preferred outcome from the D.C. Circuit.  But even if the D.C. Circuit's opinion was needed for
clarity and consistency, it may be obtained by appeal from any judgment here *after* this litigation
concludes.  Thus, AAN's asserted interest does nothing to support its request.

Finally, AAN also fails to explain why there is any risk of "chilling" First Amendment
rights if this case proceeds.  The proceedings in this case have no bearing on the speed of the
D.C. Circuit's decision on appeal—assuming an appeal of *CREW II* is even permissible—and
this Court has already corrected the FEC's unlawful application of the FECA and provided
guidance on its scope.  What AAN apparently means, but does not say, is that it *wants* to spend
money on elections anonymously, and that the rulings in *CREW I* and *CREW II* have threatened
to eliminate its ability to do so in violation of federal law.  The courts have already considered
this "chill" to unlawfully-anonymous spending and found that public interests in disclosure
easily overwhelm any such risk.  *See Citizens United*, 558 U.S. at 370 (rejecting contention that
possibility that disclosure would "chill donations to an organization" creates constitutional

22

infirmity); *Buckley*, 424 U.S. at 74 (rejecting argument that potential "chill" from disclosure warranted blanket exemption from disclosure requirements).  Indeed, disclosure does "not prevent anyone from speaking." *Citizens United*, 558 U.S. at 366.

The public interest weighs heavily against granting a stay here.

### 4. AAN Fails to Show Any Likelihood of Success on Appeal

Finally, AAN fails to demonstrate any likelihood of success on appeal.  First, it fails to make any showing why its appeal of *CREW II* will not be dismissed, as was the case with *CREW I. See CREW*, 2017 WL 4957233, at *1.  Secondly, it entirely fails to show any likelihood of success in the event its appeal is not dismissed, particularly because the "probability of success [required] is inversely proportional to the degree of irreparable injury evidence."  *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).  Rather, to manufacture probability of success where none exists, AAN resorts to misquoting this Court's own judgment.

AAN argues it has a likely chance of success because, in part, it says this Court found the Commission's "second decision [dismissing CREW's complaint] resolved 'directives that . . . push the agency in opposite directions.'"  AAN Mot. 11 (quoting *CREW II*, 299 F. Supp. 3d at 101).  By taking this quote out of context, AAN misapprehends its import.  In fact, the Court stated: "The Court recognizes that the Commission, like all executive agencies, must comply with directives from the two other branches of government—directives that sometimes push the agency in opposite directions."  *CREW II*, 299 F. Supp. 3d at 101.  But the Court went on to find that *CREW II* did not represent this type of push-pull situation.  Rather, "[t]he problem [in *CREW II*] is that the FEC has equated two directives that are plainly unequal in their relevance to the issue at hand."  *Id.*  AAN's position, thus, finds no support in the Court's opinion.

Next, AAN points to the fact that the Commission divided evenly below, but that fact is also unhelpful to it.  The division did not represent a good faith and reasonable dispute about the application of the law.  Indeed, this Court already found that the analysis that AAN seeks to revive on appeal "blinks reality."  *CREW I*, 209 F. Supp. 3d at 93.  In response to the controlling commissioners' second attempt at analysis, the Court simply asked "Seriously?"  *CREW II*, 299 F. Supp. 3d at 98.  Similarly, AAN's assertion that the Court's judgments are at odds with the Seventh and Tenth Circuits is also unfounded.  AAN Mot. 11.  The Court previously explained that the referenced opinions are irrelevant here and did not support the commissioners' analysis. S*ee CREW I*, 209 F. Supp. 3d at 90 & n.8, 91 (finding *New Mexico Youth Organized v. Herrera*, 611 F.3d 669 (10th Cir. 2010) was uninformative as it "is best considered as a pre- rather than post-*Citizens United* case," and that *Wisconsin Right to Life, Inc. v. Barland*, 751 F.3d 804 (7th Cir. 2014) rested on "read[ing] nonexistent qualifiers into a Supreme Court opinion" and "a flawed premise" flatly contracted by precedent of the D.C. Circuit).

Left without any serious possibility of a likelihood of success, AAN merely asserts that this case and the putative appeal both raise "serious legal questions."  AAN Mot. 10.  The presence of "serious legal questions," however, is plainly not enough to stay a case pending interlocutory appeal—never mind pending appeal in a separate lawsuit.  Rather, the case AAN cites for its "serious legal question" test notably interpreted that test not to examine the weight of the legal issues or the possible impact of the precedent, but rather to ask whether there was a "serious legal question" about whether the "district court decision [on the issue] was correct." *Population Inst. v. McPherson*, 797 F.2d 1062, 1079–81 (D.C. Cir. 1986) (finding no "serious legal question" where it "appear[ed]" that the district court decision . . . was correct," but finding one existed where "there [was] a reasonable likelihood that appellant [would] succeed"); *see also*

24

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*, 185 F. Supp. 3d 233, 250 (D.D.C. 2016) (rejecting request for stay even where Supreme Court had asked Solicitor General to weigh in on appeal). Here, AAN has failed to show any "serious legal question" about the Court's conclusion that advertisements like those AAN ran do not work to excuse their maker from lawful reporting obligations and to deprive voters and groups like CREW of information to which they are entitled. AAN has therefore failed to justify a stay of this action.

*       *       *

In sum, AAN's indefinite stay is immoderate and unlawful. AAN has also failed to demonstrate any harm that could warrant a limited stay, even under the more lenient standards that apply to a stay pending interlocutory appeal. It has absolutely failed to show that it faces a "clear case of hardship" and a "pressing need," as are required to establish that this case is the "rare circumstance[]" justifying the "extraordinary remedy" of a stay pending final appellate review of an independent case. *Landis*, 299 U.S. at 255; *Nat'l Indus. for Blind*, 296 F. Supp. 3d at 137. A stay would work substantial and irreparable harm to CREW and to the public interest and is unnecessary, as the appeal will likely be dismissed. This action should proceed apace.

**V.    In the Alternative, if the Court Grants AAN's Stay, CREW Requests Leave to Serve Preservation Subpoenas on Likely Custodians and Leave to Gather Information to Identify those Custodians**

While, for the reasons detailed above, CREW urges the Court to deny AAN's Motion to Stay and allow this action to proceed, should the Court grant AAN's Motion, CREW requests that the Court authorize the service of preservation subpoenas to preserve CREW's litigation position during the pendency of the stay. As detailed above, AAN seeks a stay of indefinite length that may go on for years. *See* part III.A., *supra*; *Belize*, 668 F.3d at 732 (a stay pending appeal has "the legal effect of preventing [CREW] from proceeding with [its] claims in federal

25

court for an indefinite period of time, potentially for years."). Such a significant delay risks destruction or deterioration of relevant information. *See SEC*, 940 F. Supp. 2d at 14 (denying stay where investigation had been pending for twenty-two months, as "a thorough, comprehensive investigation only gets more difficult with the passage of time"). To mitigate this harm, CREW requests that the Court grant leave to serve preservation subpoenas on likely custodians and to gather information to identify such custodians.

As a party to this suit, AAN is subject to broad obligations to preserve evidence in advance of discovery. *See* Fed. R. Civ. P. 26. However, discovery in this case will encompass information in the custody of third-parties who are not currently under a legally enforceable obligation to preserve relevant materials. As detailed above, CREW seeks to establish the AAN qualified as a "political committee" as early as 2009 and no later than 2010, and as such was subject to the FECA's reporting requirements. While the FEC's consideration of AAN focused on its spending, this is not the only information that could lead to a determination of AAN's political committee status. Rather, other information relevant to the "major purpose" analysis includes, *inter alia*, (1) statements to prospective donors detailing AAN's goals, (2) statements in fundraising solicitations, (3) statements in internal organization planning documents, and (4) financial information including spending on public communications mentioning candidates for political office. *See* 72 Fed. Reg. 5595-02, 5601 (identifying these factors as among the factors examined by the FEC in determining whether an organization's "major purpose" was to elect or defeat candidates for political office).

While much of the information relevant to CREW's claims in this case may be in AAN's custody and subject to its preservation obligation, relevant information may also be in the custody of third parties, such as financial institutions and third-party fundraisers. Bank records,

26

for example, may be relevant to establish the extent of AAN's income and spending in relevant years, and financial institutions regularly destroy account records after seven years have elapsed. 17 C.F.R. § 210.2-06; *see generally Trudel v. SunTrust Bank*, 288 F. Supp. 3d 239, 244 (D.D.C. 2018) (acknowledging routine destruction of bank records after seven years); *Schnack v. Valley Bank*, 291 F. App'x. 168, 173 (10th Cir. 2008) ("[T]he bank justifiably destroyed its account records after seven years."). Correspondence between third-party fundraisers and AAN donors, much of which may be outside AAN's custody, may be relevant to establish AAN's stated goals as communicated to its donors. As the relevant financial institutions and other third-parties are under no current, legally enforceable preservation obligation, relevant information is at significant and imminent risk of destruction or deterioration.

CREW's ability to pursue its claims in this litigation would be significantly prejudiced by the destruction of relevant records that will likely occur during the pendency of a stay. Accordingly, in the event the Court grants AAN's Motion, CREW requests that the Court authorize the issuance of preservation subpoenas to maintain the status quo for the duration of the stay. *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. 14-cv-11191, 2015 WL 1565462, at *2 (E.D. Mich. Apr. 8, 2015) (granting leave to service preservation subpoenas on third parties to "maintain the status quo" until resolution of the motion to dismiss). Pursuant to Rule 26(d)(1) of the Federal Rules of Civil Procedure, the Court may authorize the issuance of preservation subpoenas to third parties prior to the commencement of discovery. *See* Fed. R. Civ. P. 26(d)(1) (restricting discovery prior to the Rule 26(f) conference *except* when "authorized by . . . court order"). In this context, "[p]reservation subpoenas are court orders." *In re Heckmann Corp.*, No. 10-378-LPS-MPT, 2011 WL 10636718, *4 (D. Del. Feb. 28, 2011).

In analogous circumstances, where PSLRA imposes by statute a stay of discovery in securities cases until after any motion to dismiss is resolved, courts permit preservation subpoenas to be served when the specific statutory standards of PSLRA are met.  15 U.S.C. § 78u-4(b)(3)(B); *see Koncelik v. Savient Pharm., Inc.*, No. 08-cv-10262(GEL), 2009 WL 2448029 (S.D.N.Y. Aug. 10, 2009); *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 252–53 (D. Md. 2004); *In re Cree, Inc. Sec. Litig.*, 220 F.R.D. 443, 447 (M.D.N.C. 2004); *In re Massey Energy Co. Sec. Litig.*, No. 5:10-cv-0689 2011 WL 4528509, at *7 (S.D.W. Va. Sept. 28, 2011).

For these reasons, should the Court grant AAN's Motion, CREW requests that the Court authorize the issuance of preservation subpoenas in accordance with the following process. First, AAN shall confer with CREW to identify third parties that may have information relevant to CREW's claims in this litigation.  Second, CREW shall submit a list to the Court of proposed recipients of the preservation subpoenas.  Third, following Court Order authorizing the issuance of preservation subpoenas, CREW shall serve subpoenas on the listed individuals and/or entities. CREW further requests that any order authorizing the issuance of preservation subpoenas clarify that no document production will be required prior to the earlier of (a) entry of a scheduling order opening discovery or (b) further order of this Court.

Dated:  June 22, 2018

Respectfully submitted,

*/s/ Stuart C. McPhail*
Stuart C. McPhail (D.C. Bar No. 1032529)
smcphail@citizensforethics.org
Adam J. Rappaport (D.C. Bar No. 479866)
arappaport@citizensforethics.org
Laura C. Beckerman (*pro hac vice*)
lbeckerman@citizensforethics.org
Citizens for Responsibility and Ethics
in Washington
455 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone: (202) 408-5565
Fax: (202) 588-5020

*Counsel for Citizens for Responsibility and
Ethics in Washington*