# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | |
| Plaintiff, | |
| v. | Civil Action No. 1:18-cv-945 (CRC) |
| AMERICAN ACTION NETWORK, | |
| Defendant. | |

## AMERICAN ACTION NETWORK'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ......................................................................................................... 3

I.     LEGAL BACKGROUND ................................................................................ 3

II.    PROCEDURAL BACKGROUND................................................................... 5

STANDARDS OF REVIEW ..................................................................................... 12

I.     RULE 12(B)(1) .............................................................................................. 12

II.    RULE 12(B)(6) .............................................................................................. 13

ARGUMENT ............................................................................................................. 13

I.     THIS COURT SHOULD DISMISS THE COMPLAINT BECAUSE CREW
      LACKS STANDING. ..................................................................................... 14

      A.    CREW Has Not Adequately Pled an Injury in Fact................................ 14

      B.    CREW Has Also Failed to Plead a Redressable Injury. ....................... 18

II.    THIS COURT SHOULD DISMISS THE COMPLAINT BECAUSE THE FEC
      EXERCISED ITS PROSECUTORIAL DISCRETION TO DISMISS CREW'S
      CLAIMS. ....................................................................................................... 20

III.   THIS COURT SHOULD DISMISS CREW'S CLAIMS THAT AAN VIOLATED
      THE FECA AFTER JUNE 30, 2011. ............................................................. 22

      A.    This Court Lacks Subject Matter Jurisdiction Over CREW's Post-June-
            2011 Claims. ..................................................................................... 22

      B.    CREW Failed to State a Claim for Violations of the FECA After June
            2011.................................................................................................. 25

IV.   THIS COURT SHOULD DISMISS CREW'S PRE-JULY-2011 CLAIMS AS
      TIME-BARRED. ............................................................................................ 28

      A.    The Five-Year Statute of Limitations Bars CREW's Claims Because
            CREW Seeks to Impose a Penalty on AAN. ..................................... 28

B.      The Five-Year Statute of Limitations Also Bars CREW's Claims Because
        CREW Seeks a Concurrent Remedy.....................................................................30

C.      CREW's Claims Are Untimely.............................................................................32

V.      THIS COURT SHOULD DISMISS THE COMPLAINT BECAUSE
        SECTION 30109(A)(8)(C) AND ITS APPLICATION HERE ARE
        UNCONSTITUIONAL.............................................................................................34

        A.      Section 30109(a)(8)(C) Violates the Take Care Clause. .......................................34

        B.      Section 30109(a)(8)(C) Violates the Appointments Clause. .................................37

        C.      CREW's Effort to Use Section 30109(a)(8)(C) to Penalize AAN for Past
                Conduct Under a New Theory of Liability Violates the Due Process
                Clause.................................................................................................................39

VI.     CREW'S CLAIMS ARE ALSO FORECLOSED BY THE FECA...................................42

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3M Co. v. Browner*,
17 F.3d 1453 (D.C. Cir. 1994) ....................................................................................32

*In re Aiken County*,
725 F.3d 255 (D.C. Cir. 2013) .....................................................................................35

*Alliance for Democracy v. FEC*,
335 F. Supp. 2d 39 (D.D.C. 2004) ...............................................................................17

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) .......................................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................13

*Baker Botts LLP v. ASARCO LLC*,
135 S. Ct. 2158 (2015) .................................................................................................43

*Baldwin County Welcome Center v. Brown*,
466 U.S. 147 (1984) ......................................................................................................24

*Bank of America Corp. v. City of Miami, Florida*,
137 S. Ct. 1296 (2017) .................................................................................................14

*Bregman v. Perles*,
747 F.3d 873 (D.C. Cir. 2014) ................................................................................13, 33

*Buckhannon Board & Care Home, Inc. v. West Virginia*
*Department of Health & Human Resources*,
532 U.S. 598 (2001) ......................................................................................................43

*\*Buckley v. Valeo*,
424 U.S. 1 (1976) .................................................................................................. *passim*

*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142 (2012) ................................................................................................40, 42

*Citizens for Percy '84 v. FEC*,
1:84-cv-2653, 1984 WL 6601 (D.D.C. Nov. 19, 1984) ...............................................33

*Citizens United v. FEC*,
558 U.S. 310 (2010) ......................................................................................................29

*Clark-Cowlitz Joint Operating Agency v. FERC*,
  826 F.2d 1074 (D.C. Cir. 1987) ........................................................................40

*Community for Creative Non-Violence v. Pierce*,
  786 F.2d 1199 (D.C. Cir. 1986) ...................................................................35, 36

*Combat Veterans for Congress Political Action Commission v. FEC*,
  795 F.3d 151 (D.C. Cir. 2015) ..........................................................................19

*\*Common Cause v. FEC*,
  108 F.3d 413 (D.C. Cir. 1997) .....................................................................16, 17

*\*Cope v. Anderson*,
  331 U.S. 461 (1947) ....................................................................................28, 30

*CREW v. FEC*,
  209 F. Supp. 3d 77 (D.D.C. 2016) ............................................................... *passim*

*CREW v. FEC*,
  243 F. Supp. 3d 91 (D.D.C. 2017) .....................................................................20

*CREW v. FEC*,
  236 F. Supp. 3d 378 (D.D.C. 2017) ..............................................................28, 31

*\*CREW v. FEC*,
  267 F. Supp. 3d 50 (D.D.C. 2017) .........................................................14, 16, 17

*CREW v. FEC*,
  299 F. Supp. 3d 83 (D.D.C. 2018) ...................................................................9, 10

*CREW v. FEC*,
  475 F.3d 337 (D.C. Cir. 2007) ..........................................................................14

*CREW v. FEC*,
  799 F. Supp. 2d 78 (D.D.C. 2011) .....................................................................14

*\*CREW v. FEC*,
  892 F.3d 434 (D.C. Cir. 2018) ...................................................................... *passim*

*\*CREW v. FEC*,
  401 F. Supp.2d 115 (D.D.C. 2005) ..........................................................14, 15, 17

*CREW v. FEC*,
  No. 18-5136, 2018 WL 5115542 (D.C. Cir. Sept. 19, 2018) ...............................12

*Demissie v. Starbucks Corporate Office & Headquarters*,
  19 F. Supp. 3d 321 (D.D.C. 2014) .....................................................................13

*Democratic Senatorial Campaign Committee. v. FEC*,
   1:95-cv-349, 1996 WL 34301203 (D.D.C. Apr. 17, 1996) ................................................33

*FCC v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012)............................................................................................................39

*FEC v. Akins*,
   524 U.S. 11 (1998)..............................................................................................................18

*FEC v. Christian Coalition*,
   965 F. Supp. 66 (D.D.C. 1997)..........................................................................................31

*FEC v. Democratic Senatorial Campaign Committee*,
   454 U.S. 27 (1981)..............................................................................................................42

*FEC v. Massachusetts Citizens for Life, Inc.*,
   479 U.S. 238 (1986)....................................................................................................3, 4, 26

*FEC v. National Republican Senatorial Committee*,
   877 F. Supp. 15 (D.D.C. 1995).....................................................................................31, 33

*FEC v. National Republican Senatorial Committee*,
   966 F.2d 1471 (D.C. Cir. 1992)..........................................................................................23

*FEC v. National Right to Work Committee, Inc.*,
   916 F. Supp. 10 (D.D.C. 1996)...........................................................................................31

*FEC v. Williams*,
   104 F.3d 237 (1996).............................................................................................................33

*FEC v. Wisconsin Right to Life, Inc.*,
   551 U.S. 449 (2007)...............................................................................................................3

*FEC v. National Republican Senatorial Committee*,
   966 F.2d 1471 (D.C. Cir. 1992)..........................................................................................23

*In re Federal Election Campaign Act Litigation*,
   474 F. Supp. 1051 (D.D.C. 1979)........................................................................................24

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
   561 U.S. 477 (2010).......................................................................................................34, 38

*Freytag v. CIR*,
   501 U.S. 868 (1991).............................................................................................................38

*Gabelli v. SEC*,
   568 U.S. 442 (2013).......................................................................................................32, 33

*General Electric Co. v. EPA,*
   53 F.3d 1324 (D.C. Cir. 1995) ................................................40, 42

*Gilbert v. City of Cambridge,*
   932 F.2d 51 (1st Cir. 1991) ................................................30

*Greenlaw v. United States,*
   554 U.S. 237 (2008) ................................................35

*Hallstrom v. Tillamook County,*
   493 U.S. 20 (1989) ................................................24

*Jordan v. FEC,*
   68 F.3d 518 (D.C. Cir. 1995) ................................................23

*Judicial Watch, Inc. v. FEC,*
   293 F. Supp. 2d 41 (D.D.C. 2003) ................................................16

*United States ex rel. Kelly v. Boeing Co.,*
   9 F.3d 743 (9th Cir. 1993) ................................................37

*Kokesh v. SEC,*
   137 S.Ct. 1635 (2017) ................................................29, 30, 31

*Lewis v. Marshall,*
   30 U.S. (5 Pet.) 470 (1831) ................................................30

*Long Island Care at Home, Ltd. v. Coke,*
   551 U.S. 158 (2007) ................................................40

*Lucia v. SEC,*
   138 S. Ct. 2044 (2018) ................................................37

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ................................................14, 18

*Marks v. United States,*
   430 U.S. 188 (1977) ................................................39, 40

*McNeil v. United States,*
   508 U.S. 106 (1993) ................................................24

*Nader v. FEC,*
   725 F.3d 226 (D.C. Cir. 2013) ................................................15, 16, 18

*National Coalition Ass'n v. Lujan,*
   979 F.2d 1548 (D.C. Cir. 1992) ................................................20

*National Parks & Conservation Ass'n, Inc. v.*
*Tennessee Valley Authority,*
    502 F.3d 1316 (11th Cir. 2007) .................................................................31, 32

*New Mexico Youth Organized v. Herrera,*
    611 F.3d 669 (10th Cir. 2010) .........................................................................5

*Orloski v. FEC,*
    795 F.2d 156 (D.C. Cir. 1986) ......................................................................44

*Paleteria La Michoacana, Inc. v. Productos Lacteos*
    *Tocumbo S.A. De C.V.,*
    247 F. Supp. 3d 76 (D.D.C. 2017) ................................................................20

*Printz v. United States,*
    521 U.S. 898 (1997)......................................................................................38

*Real Truth About Abortion, Inc. v. FEC,*
    681 F.3d (4th Cir. 2012) ..................................................................................4

*Russell v. Todd,*
    309 U.S. 280 (1940)......................................................................................30

*Satellite Broadcasting Co. v. FCC,*
    824 F.2d 1 (D.C. Cir. 1987)..........................................................................40

*In re Sealed Case,*
    254 F.3d 233 (D.C. Cir. 2001) ......................................................................43

*Shays v. FEC,*
    424 F. Supp. 2d 100 (D.D.C. 2006) ...........................................................5, 41

*Shays v. FEC,*
    511 F. Supp. 2d 19 (D.D.C. 2007) ................................................................45

*\*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ....................................................................... *passim*

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998)........................................................................................14

*United States v. Bajakajian,*
    524 U.S. 321 (1998)......................................................................................30

*United States v. Fokker Services B.V.,*
    818 F.3d 733 (D.C. Cir. 2016) ......................................................................35

*United States v. Luminant Generation Co.*,
    905 F.3d 874 (5th Cir. 2018) ..................................................................30, 31, 32

*United States v. Magnesium Corp. of America*,
    616 F.3d 1129 (10th Cir. 2010) ........................................................................40

*United States ex rel. Kelly v. Boeing Co.*,
    9 F.3d 743 (9th Cir. 1993) ...............................................................................37

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) ..........................................................................................37

*Washington Alliance of Technology Workers v.*
    *United States Department of Homeland Security*,
    892 F.3d 332 (D.C. Cir. 2018) .........................................................................13

*Williams v. Lew*,
    819 F.3d 466 (D.C. Cir. 2016) ...................................................................27, 32

*Wisconsin Right to Life, Inc. v. Barland*,
    751 F.3d 804 (7th Cir. 2014) ..............................................................................4

**Constitution**

U.S. Const. art. II, § 2 ................................................................................................37

U.S. Const. art. II, § 3 ................................................................................................34

**Statutes**

28 U.S.C. § 2412 ........................................................................................................43

28 U.S.C. § 2462 ..................................................................................................28, 32

31 U.S.C. § 3720 ........................................................................................................37

52 U.S.C. § 30101 ......................................................................................3, 4, 26, 27

52 U.S.C. § 30104 ...................................................................................................3, 4

52 U.S.C. § 30109 ............................................................................................. *passim*

52 U.S.C. § 30111 ......................................................................................................41

Pub. L. No. 92-225, 86 Stat. 3 (1972) ......................................................................38

Pub. L. No. 93-443, 88 Stat. 1263 (1974) ................................................................38

Pub. L. No. 94-283, 90 Stat. 475 (1976) ..................................................................38

**Regulations**

11 C.F.R. § 100.16 ................................................................................................3

11 C.F.R. § 111.30 ..............................................................................................20

11 C.F.R. § 111.31 ..............................................................................................19

11 C.F.R. § 111.39 ..............................................................................................20

11 C.F.R. § 111.40 ..............................................................................................20

11 C.F.R. § 111.42 ..............................................................................................20

11 C.F.R. § 111.43 ..............................................................................................20

26 C.F.R. § 1.501 ..................................................................................................6

Administrative Fines, 65 Fed. Reg. 31,787 (May 19, 2000) ...........................19, 20, 31

Political Committee Status, 72 Fed. Reg. 5595 (Feb. 7, 2007)..............................5, 41

**Other Materials**

AAN, *About AAN*, https://americanactionnetwork.org/about .........................................6

AAN's Memorandum of Points & Authorities (1:16-2255 (D.D.C.))............................43

AAN's Motion for Summary Judgment (1:14-1419 (D.D.C.)) ...................................43

Plaintiff's Motion for Summary Judgment (1:14-1419 (D.D.C.))..........................41, 42

Statement on *CREW v. FEC*, No. 16-CV-02255 by Chair Caroline C. Hunter and
    Commissioner Matthew S. Petersen (Apr. 26, 2018) .............................................11

Statement of Reasons of Chairman Lee E. Goodman and Commissioners Caroline
    C. Hunter and Matthew S. Petersen,
    Matter Under Review No. 6589 (July 30, 2014) ....................................................7

Statement of Reasons of Chairman Matthew S. Petersen and Commissioners
    Caroline C. Hunter and Lee E. Goodman,
    Matter Under Review No. 6589 (Oct. 19, 2016) ....................................................9

Statement of Reasons of Vice Chair Caroline C. Hunter and Commissioner Lee E.
    Goodman,
    Matter Under Review No. 6872 (Dec. 20, 2017)....................................................44

Statement of Reasons of Vice Chairman Matthew S. Petersen and Commissioner
    Caroline C. Hunter,
    Matter Under Review 5842 (June 10, 2009) ............................................................ 41

Statement of Reasons of Vice Chairman Matthew S. Petersen and Commissioners
    Caroline C. Hunter and Donald F. McGahn,
    Matter Under Review No. 5541 (Jan. 22, 2009) ...................................................... 41

Statement of Vice Chair Ellen L. Weintraub Regarding *CREW v. FEC &
    American Action Network* (Apr. 19, 2018) ............................................................ 10

Supplemental Statement of Commissioner Lee E. Goodman,
    Matter Under Review Nos. 6391 & 6471 (Mar. 3, 2016) ........................................ 41

# INTRODUCTION

Over six years after first alleging in a Federal Election Commission ("FEC" or "Commission") administrative complaint that the American Action Network ("AAN") was an unregistered political committee between 2009 and 2011, Citizens for Responsibility and Ethics in Washington ("CREW") brings this action pursuant to 52 U.S.C. § 30109(a)(8)(C)—effectively, the first of its kind—seeking to enforce the Federal Election Campaign Act ("FECA" or "Act") directly against AAN. But just because CREW's lawsuit is novel does not mean that it is proper. And here, even if Congress's creation of a limited private right of action in this context were constitutional (it is not), CREW still could not use this vehicle to assume the FEC's prosecutorial role and pursue allegations that the FEC has repeatedly chosen to dismiss.

At the most foundational level, CREW lacks standing to pursue its allegations. CREW claims that AAN's failure to register as a political committee denied voters relevant information about those supporting various candidates in the 2010 mid-term election. But CREW did not and could not vote in that election or in any subsequent one. As a result, even if CREW were correct on the merits of its claim that AAN is a political committee (it is not), CREW cannot identify any individualized private harm that it has suffered from AAN's allegedly insufficient disclosures. CREW's desire to vindicate some public harm is not enough to support its standing, particularly where that alleged harm is also not redressable by the injunctive remedy CREW seeks. The 2010 election is long over and, in any event, injunctive relief requiring AAN to register and make disclosures is not available under the FECA and its implementing regulations.

CREW's lack of standing is just one of many foundational problems with its lawsuit that require its dismissal. Proceeding here would be directly contrary to the D.C. Circuit's recent decision that courts <u>cannot</u> review allegations of FECA violations where the FEC has already chosen to dismiss them out of an exercise of prosecutorial discretion. As this Court has already

recognized, the FEC declined to pursue the allegations in CREW's original administrative complaint over four years ago in reliance on its prosecutorial discretion. CREW cannot use this lawsuit to override that unreviewable agency decision not to pursue these charges.

CREW also cannot expand its prior allegations to include time periods that it never asked the FEC to consider. The FECA expressly limits this Court's jurisdiction to the allegations included in CREW's "original complaint" at the FEC. CREW's original administrative complaint, filed in 2012, made its allegations in the past tense; CREW alleged that "AAN <u>was</u> a political committee between July 23, 2009 through June 30, 2011" and that AAN "<u>failed</u>" to file required reports as a result. Ex. A ¶¶ 19, 30 (emphases added).[1] CREW cannot now pursue unbounded allegations of post-June 2011 FECA violations, and indeed it has not even pled any post-June-2011-facts to support them. CREW's post-June-2011 allegations are not the only ones with additional flaws. Its pre-July-2011 allegations, which relate to conduct that occurred eight years ago, are well beyond the applicable five-year statute of limitations.

There are additional problems with CREW's allegations that require dismissal as a matter of law. Neither the Constitution nor the law permits CREW's effort to usurp Executive enforcement authority to pursue stale and repeatedly dismissed allegations, and to do so based on a legal standard that did not exist when AAN funded its twenty advertisements eight years ago. CREW's Complaint should be dismissed with prejudice.

---

[1] CREW's original administrative complaint is attached as Exhibit A. That complaint, with its supporting exhibits, is also available on the FEC's website. See https://www.fec.gov/files/legal/murs/6589/14044361739.pdf.

# BACKGROUND

## I.      LEGAL BACKGROUND

The FECA governs the financing of federal elections.  Under the Act, the FEC has the authority to promulgate implementing regulations, issue advisory opinions, investigate potential violations of the Act, and bring civil enforcement actions against alleged violators.

Generally, the FECA regulates two types of independent political speech: "independent expenditures" and "electioneering communications."  An "independent expenditure" is an expenditure for a communication "expressly advocating the election or defeat of a clearly identified candidate" that was not made in "concert or cooperation with or at the request of" the candidate.  52 U.S.C. § 30101(17); 11 C.F.R. § 100.16(a).  The Supreme Court has narrowed the scope of this definition's coverage to speech that contains explicit words of express advocacy, such as "vote for," "vote against," "elect," or "defeat." *Buckley v. Valeo*, 424 U.S. 1, 44 n.52, 79–80 (1976).  "Electioneering communications" are not express advocacy, but do refer to a clearly identified federal candidate in a broadcast, cable, or satellite communication that is made within 60 days of a general election or 30 days of a primary election, and that is "targeted to the relevant electorate."  52 U.S.C. § 30104(f)(3)(A)(i).  Electioneering communications may be "genuine issue ads" that "focus on a legislative issue, take a position on the issue, exhort the public to adopt that position, and urge the public to contact public officials with respect to the matter." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 470 (2007).

Eventually, a group's spending on certain campaign-related speech may "become so extensive" that the group qualifies as a political committee. *FEC v. Mass. Citizens for Life, Inc.* ("*MCFL*"), 479 U.S. 238, 262 (1986).  Political committees are subject to a host of burdensome organizational and reporting requirements, including disclosure obligations greater than the one-time event-driven disclosure reports that are required for all independent expenditures and

3

electioneering communications.  52 U.S.C. § 30104(a)(4), (b).

The FECA defines a "political committee" as "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year."  52 U.S.C. § 30101(4).  Recognizing the serious First Amendment implications of requiring any group that reaches the $1,000 threshold to register as a political committee and comply with attendant restrictions, the Supreme Court "construed the words 'political committee' more narrowly" than the statute, holding that the term may "only encompass organizations that are under the control of a candidate or <u>the major purpose of which is the nomination or election of a candidate</u>."  *Buckley*, 424 U.S. at 79 (emphasis added).  The Court concluded that the government's interest in obtaining the detailed information that political committees are required to disclose is "too remote" from the Act's purposes to apply to a group that does not have federal electoral activity as its major purpose.  *Id.* at 79–80; *see also Wis. Right To Life, Inc. v. Barland*, 751 F.3d 804, 841 (7th Cir. 2014) ("For groups that engage in express election advocacy as their major purpose, the PAC regulatory system . . . is a relevantly correlated and reasonably tailored means of achieving the public's informational interest.").  Political committee regulation, as a result, cannot reach any organization whose "central organizational purpose is issue advocacy, although it occasionally engages in activities on behalf of political candidates."  *MCFL*, 479 U.S. at 252 n.6 (plurality).

Although the Supreme Court in *Buckley* "did not mandate a particular methodology for determining an organization's major purpose," *Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544, 556 (4th Cir. 2012), it is typically determined by examining "the organization's central organizational purpose" and by comparing its electoral spending with its overall spending "to determine whether the preponderance of expenditures is for express advocacy or contributions to

candidates," *N.M. Youth Organized v. Herrera*, 611 F.3d 669, 678 (10th Cir. 2010).

The FEC employs a case-by-case approach to determine "political committee" status.  In 2004, the Commission considered adopting a definition by rule, but opted to retain case-by-case determination.  After a court in this District required the Commission to offer a more reasoned explanation for declining to adopt a definition by rule, *see Shays v. FEC*, 424 F. Supp. 2d 100, 117 (D.D.C. 2006), the Commission issued a "Supplemental Explanation and Justification" that asserted that "[a]pplying the major purpose doctrine . . . requires the flexibility of a case-by-case analysis of an organization's conduct that is incompatible with a one-size-fits-all rule."  Political Committee Status, 72 Fed. Reg. 5595, 5601 (Feb. 7, 2007) ("Supplemental E&J").  The Supplemental E&J explained "the framework for establishing political committee status under FECA" and highlighted a number of past enforcement actions to illustrate the Commission's approach.  *Id.* at 5596, 5,03–06.  Under its framework, the FEC considers whether a group has engaged in "sufficiently extensive spending on Federal campaign activity," as well as the group's own materials such as its public statements, publications, and fundraising appeals, to determine whether an organization is a political committee.  *Id.* at 5601.

## II.     PROCEDURAL BACKGROUND

This latest Complaint by CREW arrives before this Court following a long and complex procedural history.  CREW's claims for relief have twice been reviewed both by the Commission and this Court, with the Commission twice rejecting those claims and relying on its unreviewable prosecutorial discretion to dismiss them.  CREW now seeks to directly pursue the allegations that the FEC twice declined to pursue, and to expand them beyond the eight-year-old advertisements that the FEC considered.

### A.      CREW's Original Administrative Complaint

AAN is a not-for-profit corporation located in Washington, D.C., recognized by the IRS as a Section 501(c)(4) social welfare organization—a status that is incompatible with a major purpose to nominate or elect candidates.  *See* 26 C.F.R. § 1.501(c)(4)–1(a)(2)(ii).  As an issue-focused organization, AAN works to encourage and promote "center-right policies based on principles of freedom, limited government, American exceptionalism, and strong national security."  AAN, *About AAN*, https://americanactionnetwork.org/about (last visited Nov. 2, 2018).  Its primary goal is to put "center-right ideas into action by engaging the hearts and minds of the American people and spurring them into active participation in our democracy."  *Id.*

On June 7, 2012, CREW—along with Washington, D.C. resident Melanie Sloan, CREW's then-Executive Director—filed an administrative complaint with the FEC based on AAN's activities between July 23, 2009 and June 30, 2011.  The complaint alleged that "AAN was a political committee from July 23, 2009 through June 30, 2011 but failed to register as one with the FEC" and "failed" to file the reports required of political committees.  *See* Ex. A ¶¶ 19–31.  CREW relied solely on facts about AAN's spending during the 2010 election cycle, alleging that AAN then spent $4,096,010 on independent expenditures and $14,038,625 on electioneering communications.  *Id.* ¶¶ 10, 22.  CREW argued that all of this spending should be considered indicative of a major purpose to nominate or elect candidates, and that it amounted to 66.8% of AAN's total spending during the July 2009 to June 2011 period.  *Id.* ¶ 18.  CREW did not allege any ongoing or continuing violations of the FECA.  *See generally id.*  In its response, AAN asserted that it was not a "political committee" during the 2009 to 2011 time period because its electioneering communications were issue advertisements that were not indicative of a major purpose to nominate or elect candidates and because its organizational documents, other spending,

and activities show that its major purpose during the disputed time period was issue advocacy—and not the nomination or election of federal candidates.

**B.      The FEC's First Dismissal of CREW's Original Complaint**

On June 24, 2014, the Commission took a vote on CREW's administrative complaint.  The result was evenly split.  Three Commissioners voted there was no reason to believe that AAN violated the FECA; three Commissioners voted to proceed.  *See* Statement of Reasons of Chairman Lee E. Goodman and Commissioners Caroline C. Hunter and Matthew S. Petersen, MUR No. 6589 (July 30, 2014).[2]  Because a "reason to believe" finding requires the affirmative vote of four Commissioners to commence an investigation, the Commission dismissed.

The Commissioners who found that there was no reason to believe that AAN violated the FECA (the so-called "controlling Commissioners") issued a Statement of Reasons that serves as the basis for the Commission's action.  In the Statement, they explained that they dismissed the complaint based on precedent and as an exercise of prosecutorial discretion.  In particular, they concluded that AAN did not have the major purpose of nominating or electing federal candidates and was thus not required to register as a political committee.  They found that AAN has an issue-centric organizational purpose and devoted only about 15 percent of its spending during the 2010 election cycle to independent expenditure advertisements that expressly advocated the election or defeat of federal candidates.  The Commission rejected CREW's allegation that all spending on electioneering communications—even genuine issue advertisements—should count toward a major purpose to nominate or elect candidates, pointing to recent decisions from the Supreme Court and federal circuit courts emphasizing the high level of constitutional protection afforded to

---

[2]  The statements of FEC commissioners cited herein are available in the dockets for each Matter Under Review ("MUR").  See https://www.fec.gov/data/legal/search/enforcement/.

issue advocacy.  Finding that all of AAN's electioneering communications during the 2009 to 2011 period were issue advertisements, the Commission concluded that AAN did not have the major purpose of nominating or electing federal candidates.  *See id.*

The Commission further explained that this matter was an appropriate one for an exercise of prosecutorial discretion.  *See, e.g.*, *id.* at 23–24, 27.  It explained, for example, that proceeding would be in direct tension with a recent decision from the Seventh Circuit, which invalidated a law on First Amendment grounds because it imposed similar registration and reporting requirements based on similar advertisements.  *See id.* at 23 (citing *Barland*, 751 F.3d 804).  Adopting a theory broader than existing caselaw in the enforcement context, the Commission explained, would raise "grave constitutional doubt," particularly given the Seventh Circuit's conclusion that such a standard is "'fatally vague and overbroad'" and imposes "'a serious chill on debate about political issues'" to regulate an entity because it has funded advertisements like AAN's.  *Id.* & n.137 (quoting *Barland*, 751 F.3d at 835, 837).  These "constitutional doubts," the Commission concluded, "militate in favor of cautious exercise of our prosecutorial discretion."  *Id.* at 24 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)).

### C.   This Court's Review of the FEC's First Dismissal of CREW's Original Complaint

In August 2014, CREW and Melanie Sloan filed suit in this Court pursuant to the FECA's judicial review provision, 52 U.S.C. § 30109(a)(8)(A), challenging the Commission's dismissal of its administrative complaint before the agency.  On cross-motions for summary judgment, this Court found that the Commission had applied a "bright-line rule" that excluded all electioneering communications from the "major purpose" analysis, and that this bright-line rule—and specifically, "the erroneous understanding that the First Amendment effectively required the agency to exclude from its consideration all non-express advocacy in the context of disclosure"—

was "contrary to law" and required a remand.  *CREW v. FEC*, 209 F. Supp. 3d 77, 93 (D.D.C. 2016) ("*CREW I*").  The Court also found that the Commission erred when it "[l]ook[ed] <u>only</u> at relative spending over an organization's lifetime," without considering whether the organization's purpose changed in more recent years.  *Id.* at 94 (emphasis in original).  The Court then remanded the case to the Commission and ordered it to conform to the Court's declaration within thirty days, directing "the FEC to reconsider its decision without 'exclud[ing] from its [major purpose] consideration all non-express advocacy.'"  *CREW v. FEC*, 299 F. Supp. 3d 83, 92 (D.D.C. 2018) ("*CREW II*").

### D.    The FEC's Second Dismissal of CREW's Original Complaint

On remand in late 2016, the Commission reconsidered the record about AAN's 2009 to 2011 conduct and voted a second time against proceeding with the enforcement matter in a deadlocked vote.  *See* Statement of Reasons of Chairman Matthew S. Petersen and Commissioners Caroline C. Hunter and Lee E. Goodman, MUR No. 6589 (Oct. 19, 2016).  Consistent with this Court's decision, the Commission did not "categorically exclude AAN's electioneering communications from its major-purpose calculation."  *CREW II*, 299 F. Supp. 3d at 90.  Instead, it conducted a fact-specific review of the twenty disputed AAN electioneering communications in a more than nineteen-page single-space analysis that used the Court's new standard, weighed various factors, and recharacterized four electioneering communications as indicative of a major purpose to nominate or elect candidates.  This review, which the Court subsequently acknowledged required the FEC to balance "directives that . . . push[ed] the agency in opposite directions," *id.* at 101, showed that AAN's major purpose was not the nomination or election of candidates.  When the spending on the recharacterized electioneering communications was combined with AAN's spending on express advocacy during the 2009 to 2011 period, AAN still devoted less than 30 percent of its spending on advertisements with a major purpose to nominate or elect candidates.  *Id.*

### E.    This Court's Review of the FEC's Second Dismissal of CREW's Original Complaint

Following the dismissal of CREW's administrative complaint, CREW and Melanie Sloan again sought review in this Court pursuant to Section 30109(a)(8)(A).  In March 2018, this Court again entered summary judgment in favor of CREW and Ms. Sloan.  *CREW II*, 299 F. Supp. 3d 83.  The Court found that the Commission's second dismissal decision was consistent with the Court's prior decision but was "contrary to law" for a new and not-before-articulated reason—*i.e.*, that the Commission had failed to adopt a presumption "that spending on electioneering communications contributes to a 'major purpose' of nominating or electing a candidate for federal office."  *Id.* at 101; *see also id.* at 97 (explaining that "an ad meeting the statutory definition of an electioneering communication generally indicates a purpose of nominating or electing a candidate").  The Court directed the FEC to conform "within 30 days" and stated that "[i]f the FEC does not timely conform with the Court's declaration, CREW may bring 'a civil action to remedy the violation involved in the original complaint.'"  *Id.* at 101 (quoting 52 U.S.C. § 30109(a)(8)(C)).

### F.    CREW's Complaint Against AAN

In April 2018, FEC Vice Chair Ellen L. Weintraub issued a public statement announcing that she had decided to prevent the FEC from conforming with this Court's order so that CREW could sue AAN directly.  *See* Statement of Vice Chair Ellen L. Weintraub Regarding *CREW v. FEC & American Action Network* (Apr. 19, 2018), https://www.fec.gov/resources/cms-content/documents/2018-04-19-ELW-statement.pdf.  Vice Chair Weintraub had voted on each of the prior two occasions to proceed with the enforcement matter but apparently saw an opportunity in the two vacancies now at the Commission:  as one of four sitting Commissioners, she could prevent the FEC from taking further enforcement action by abstaining as that would deprive the Commission of the legally necessary fourth vote to proceed.  *See* 52 U.S.C. § 30109(a)(2).  Vice

Chair Weintraub explained that her decision would bring an end to Commission action and enable CREW to "pursue its complaint directly against [AAN]" "unimpeded by [the] commissioners" who previously had voted to dismiss.  *Id.*[3]  Following Vice Chair Weintraub's invitation and the effective end of further enforcement proceedings at the FEC, CREW filed the instant lawsuit directly against AAN.  Ms. Sloan is not a plaintiff.

In support of CREW's standing, the Complaint states that CREW is an organization that "seeks to ensure that campaign finance laws are properly interpreted, enforced, and implemented" and that it "uses a combination of research, litigation, advocacy, and public education to disseminate information to the public about public officials . . . to educate voters regarding the integrity of public officials, candidates for public office, the electoral process, and our system of government."  Compl. ¶¶ 10, 11.  It also alleges that CREW "publicizes [information about] individuals and entities in the electoral process and the extent to which they have violated federal campaign finance laws."  *Id.* ¶ 12.  And further, "[w]hen groups that are legally obligated to report their activities and contributors do not do so, CREW is deprived of information critical to advancing its ongoing mission of educating the public to ensure the public continues to have a vital voice in our political process and government decisions."  *Id.* ¶ 14.

CREW's Complaint contains two counts.  Count One alleges that AAN failed to register as a political committee, *id.* ¶¶ 74–87, and Count Two alleges that AAN failed to file the requisite reports as a political committee, *id.* ¶¶ 88–92.  But, as detailed further below, CREW did not merely replead the allegations from its original administrative complaint, instead choosing to press

---

[3]  Vice Chair Weintraub's recalcitrance also appears to have prevented the Commission from appealing the district court's decisions.  *See* Statement on *CREW v. FEC*, No. 16-CV-02255 by Chair Caroline C. Hunter and Commissioner Matthew S. Petersen (Apr. 26, 2018), https://www.fec.gov/resources/cms-content/documents/3117_001_v2.pdf.

claims that differ in material respects from those it presented to the FEC.

Shortly after CREW filed suit, the D.C. Circuit held that it is improper to subject alleged FECA violations to judicial review if the FEC dismissed the underlying enforcement matter in reliance on its prosecutorial discretion. *See CREW v. FEC*, 892 F.3d 434, 437 (D.C. Cir. 2018) ("*Comm'n on Hope, Growth, & Opportunity II*"). Because the FEC dismissed the underlying enforcement matter here in reliance on its prosecutorial discretion, AAN asked the D.C. Circuit to vacate this Court's prior decisions. This Court entered a stay to give the D.C. Circuit time to consider AAN's motion. *See* Dkt. No. 16 (Order of July 27, 2018). The D.C. Circuit did not reach the merits of AAN's motion but dismissed the appeal as premature. *See CREW v. FEC*, No. 18-5136, 2018 WL 5115542 (D.C. Cir. Sept. 19, 2018) (per curiam). Shortly thereafter, this Court lifted the stay and set the briefing schedule for this dispositive motion.

## STANDARDS OF REVIEW

### I.      RULE 12(B)(1)

A court may dismiss a case for "lack of subject-matter jurisdiction"—including lack of standing—under Federal Rule of Civil Procedure 12(b)(1). The party invoking federal jurisdiction "bears the burden of invoking the court's subject matter jurisdiction, including establishing the elements of standing." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citation omitted). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted). In determining jurisdiction, courts cannot "accept inferences that are unsupported by the facts," "assume the truth of legal conclusions," or credit "threadbare recitals of the elements of standing." *Arpaio*, 797 F.3d at 19. Where a factual Rule 12(b)(1) challenge is made, a district court "may consider materials outside the pleadings" to determine whether it has jurisdiction. *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II.    RULE 12(B)(6)

"To survive a [Federal Rule of Civil Procedure 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A complaint must provide 'more than labels and conclusions'; although it 'does not need detailed factual allegations,' the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 343 (D.C. Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity." *Demissie v. Starbucks Corporate Office & Headquarters*, 19 F. Supp. 3d 321, 324 (D.D.C. 2014).  A complaint should be dismissed under Rule 12(b)(6) "if the complaint on its face is conclusively time-barred." *Bregman v. Perles*, 747 F.3d 873, 875 (D.C. Cir. 2014) (citation omitted).

## ARGUMENT

This case should be dismissed for at least six reasons:   (1) CREW lacks standing, (2) CREW's allegations are not eligible for judicial review because they were dismissed by the FEC in an exercise of prosecutorial discretion, (3) CREW never exhausted any allegations about post-June-2011 conduct, (4) CREW's claims about earlier conduct (and indeed, CREW's claims for any period more than five years ago) are precluded by the applicable five-year statute of limitations, (5) CREW's suit depends on Section 30109(a)(8)(C), which is unconstitutional on its face and as applied here, and (6) CREW's claims fail as a matter of law under the FECA.

## I.      THIS COURT SHOULD DISMISS THE COMPLAINT BECAUSE CREW LACKS STANDING.

CREW—an organization that does not vote in federal elections—lacks standing to bring its claims against AAN.  Standing is a "threshold jurisdictional question."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998).  The irreducible constitutional minimum of standing is (1) an "injury in fact" that is (2) "fairly traceable" to the defendant's conduct and (3) "likely to be redressed by a favorable judicial decision."  *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  CREW, "as the party invoking federal jurisdiction, bears the burden of establishing these elements" and, at this pleading stage, must "'clearly . . . allege facts demonstrating' each element."  *Spokeo*, 136 S. Ct. at 1547 (citation omitted).

It is "often difficult for organizational plaintiffs like CREW" to establish Article III standing.  *CREW v. FEC*, 401 F. Supp. 2d 115, 120 (D.D.C. 2005) ("*Americans for Tax Reform I*").  And CREW has repeatedly failed to establish its standing in prior FECA enforcement cases.  *See, e.g.*, *CREW v. FEC*, 475 F.3d 337 (D.C. Cir. 2007) ("*Americans for Tax Reform II*"); *CREW v. FEC*, 267 F. Supp. 3d 50 (D.D.C. 2017) ("*Murray Energy Corporation*"); *CREW v. FEC*, 799 F. Supp. 2d 78 (D.D.C. 2011) ("*Peace Through Strength*").  CREW fares no better here.  It has not, and cannot, establish either (A) an injury in fact, or (B) redressability.   Together and separately, these failures require dismissal of this case in its entirety.

### A.      CREW Has Not Adequately Pled an Injury in Fact.

CREW has not alleged an "injury in fact" sufficient to survive a motion to dismiss because it has not pled facts showing "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560; *see also Spokeo*, 136 S. Ct. at 1547–50.

14

*First*, CREW has not alleged an injury that is "particularized," meaning that it "affect[s] the plaintiff in a personal and individual way." *See Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted). Instead, CREW seeks to enforce public rights. CREW claims that it is "harmed by AAN's failure to provide CREW the information to which CREW is legally entitled," Compl. ¶ 13, but it bases that supposed harm entirely on the interests of the voting "public." For example, CREW claims that it lacks information necessary to advance its "mission of educating <u>the public</u> to ensure <u>the public</u> continues to have a vital voice in our political process and government decisions." *Id.* ¶ 14 (emphases added). Similarly, CREW says that it needs the information so that it may "<u>publicize</u>" violations of "federal campaign finance laws" and inform <u>the public</u> about "so-called 'pay-to-play' schemes." *Id.* ¶¶ 12, 15 (emphasis added). But CREW's desire to inform "the public" is not sufficient to show that CREW has suffered a particularized injury because it is not "related to [CREW's] informed participation in the political process." *See Nader v. FEC*, 725 F.3d 226, 230 (D.C. Cir. 2013) (holding political candidate could not show informational injury based on failure to disclose).

The absence of a plaintiff <u>who actually voted in the 2010 election</u> thus dooms this case. It also sets it apart from CREW's two prior actions in this Court, which included as a plaintiff voter Melanie Sloan. Now the only plaintiff before this Court is CREW. But CREW "cannot vote; it has no members who vote; and because it is a § 501(c)(3) corporation under the Internal Revenue Code, it cannot engage in partisan political activity." *Americans for Tax Reform II*, 475 F.3d at 339 (affirming dismissal of CREW complaint for lack of standing). As a result, what "CREW is really asserting" here is "a derivative harm" on behalf of the public—"an alleged inability to help others (participants in the political process) realize that they may have been deprived of

information." *Americans for Tax Reform I*, 401 F. Supp. 2d at 121.  That alleged "injury" is insufficiently particularized "to withstand the rigors of Article III."  *Id.*

*Second*, CREW has not alleged any injury that is "concrete."  "A 'concrete' injury must be 'de facto'; that is, it must actually exist."  *Spokeo*, 136 S. Ct. at 1548.  But CREW claims no harm to its ability to cast an informed vote, as it cannot vote.  Instead, it claims harm to its ability to alert the public to what it thinks are FECA violations, and asserts a general interest in enforcing the FECA.  For example, CREW asserts a harm to its ability to "publiciz[e] the role of . . . individuals and entities in the electoral process and the extent to which they have violated federal campaign finance laws" and to inform the public about "so-called 'pay-to-play' schemes."  Compl. ¶¶ 12, 15.  It also seeks to rectify the Commission's "cho[ice] not to enforce [federal campaign finance] law against AAN."  *Id.* ¶ 3; *see also id.* ¶ 7 ("CREW brings this action to remedy . . . . AAN's violation of the FECA." (internal quotation mark omitted)).  Indeed, CREW says that its overarching intent is to "ensure that campaign finance laws are properly interpreted, enforced, and implemented."  *Id.* ¶ 10.

But CREW's quest to find and eliminate some hypothetical wrong suffered by the public at large does not reveal any concrete injury sufficient to support CREW's standing.  To the contrary, it reveals only a non-justiciable "interest in the enforcement of the law."  *Common Cause v. FEC*, 108 F.3d 413, 418 (D.C. Cir. 1997).  As the D.C. Circuit has repeatedly found, "seeking disclosure to promote law enforcement [is] an injury that is not [sufficient] to confer standing."  *Nader*, 725 F.3d at 230.  Courts in this District have similarly explained that "mere 'injury to the interest in seeing that the law is obeyed . . . deprives the case of the concrete specificity' necessary for constitutional standing in a federal court."  *Murray Energy Corporation*, 267 F. Supp. 3d at 55 (quoting *FEC v. Akins*, 524 U.S. 11, 24 (1998)); *see also Judicial Watch, Inc. v. FEC*, 293 F. Supp.

2d 41, 47 (D.D.C. 2003) ("Mr. Paul's alleged 'informational injury' is not cognizable injury under

FECA" because "Mr. Paul does not have a justiciable interest in the enforcement of the law"); *All.*

*for Democracy v. FEC*, 335 F. Supp. 2d 39, 48 (D.D.C. 2004) (finding no concrete injury where

plaintiff failed to show how information sought would aid "voting in future elections involving

different candidates").

In fact, just last year, a complaint filed by CREW that used language nearly identical to

that employed here was dismissed as inadequate. *See Murray Energy Corporation*, 267 F. Supp.

3d at 55. CREW has also been admonished for making similarly broad allegations—without

providing "concret[e] and direc[t]" examples—to try to claim that a "lack of access to [certain

information actually] impeded its programmatic activities." *Americans for Tax Reform I*, 401 F.

Supp. 2d at 122. CREW's nearly identical and unsubstantiated allegations here should meet the

same fate. *Compare* Compl. ¶ 14 (observing, without providing specifics, that "CREW is further

hindered in carrying out its core programmatic activities when . . . individuals and entities . . . are

able to keep their identities hidden") *with* Compl. ¶ 8, *Americans for Tax Reform I* (1:04-cv-2145)

(claiming that "CREW is hindered in this programmatic activity when those who participate in

campaigns (the candidates and those who contribute money to candidates) do not disclose the

information regarding contributions and donations as required by federal law.").

CREW will undoubtedly assert that it can pursue this case because the FECA allows an

FEC "complainant" to file suit. But the statute does not and cannot eliminate the constitutional

requirement for an injury-in-fact. As the D.C. Circuit has held, the judicial review provision of

the FECA, Section 30109(a), "does not confer standing; it confers a right to sue upon parties who

otherwise already have standing." *Common Cause*, 108 F.3d at 419. As the court explained:

> [A]bsent the ability to demonstrate a "discrete injury" flowing from the alleged
> violation of FECA, [the plaintiff] cannot establish standing merely by asserting that

> the FEC failed to process its complaint in accordance with law.  To hold otherwise
> would be to recognize a justiciable interest in having the Executive Branch act in a
> lawful manner.  This, the Supreme Court held in *Lujan*, is not a legally cognizable
> interest for purposes of standing.

*Id.* (quoting *Lujan*, 504 U.S. at 573).  In other words, CREW still must demonstrate a concrete and

particularized injury.  *See also Nader*, 725 F.3d at 228 (similar); *Spokeo*, 136 S. Ct. at 1547–48

("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue

to a plaintiff who would not otherwise have standing." (citation omitted)).  CREW has not done

so here, and the case should be dismissed.

### B.      CREW Has Also Failed to Plead a Redressable Injury.

CREW has also failed to establish standing because its alleged injury is not likely to be

"redressed by a favorable judicial decision" since the relief it seeks here is not available.  *See*

*Lujan*, 504 U.S. at 560–61.  *First*, CREW is unable to obtain any relief for its claims because they

were previously dismissed by the FEC in an exercise of prosecutorial discretion and are, therefore,

not subject to judicial review.  *See infra*, Section II; *see also Akins*, 524 U.S. at 25 (finding that the

redressability analysis can turn on whether the FEC exercised its prosecutorial discretion to dismiss

the allegations).  And *second*, even if CREW's claims were subject to judicial review, they still

are not redressable.

The heart of CREW's Complaint is its allegation that AAN failed to file reports as a

political committee disclosing the organization's financial supporters.  *See* Compl. ¶¶ 28–29, 89,

91 (citing the reporting requirements in 52 U.S.C. § 30104(a)).  CREW thus asks this Court for an

order requiring "AAN to file corrective disclosure reports with the FEC."  Compl. at 22.  But

CREW cannot obtain broader relief here than the Commission itself could seek and obtain.  And

under the FECA, "the Commission has no authority to order anyone to report anything."

*Americans for Tax Reform II*, 475 F.3d at 340.  While the FEC can attempt to negotiate a

conciliation agreement with a party it believes violated the law, "[n]othing in the [FECA] requires that disclosure of information be part of such an agreement." *Id.* Additionally, if "negotiation proves unsuccessful, the Commission may decide to bring an enforcement action in federal district court." *Id.* But again, there "is no requirement that the Commission seek, or that a court grant, a particular form of redress in such an action," including a mandate that an organization disclose its financial supporters. *Id.*

Indeed, the Commission has determined that the only remedy for third-party complaints alleging a violation of the political committee reporting requirements is monetary, not equitable. In 1999, Congress amended the FECA "to create a special, streamlined set of procedures for efficiently imposing fines on covered persons for routine filing and record-keeping violations." *Combat Veterans for Cong. Political Action Comm. v. FEC*, 795 F.3d 151, 154 (D.C. Cir. 2015). Congress intended this new system to work "much like traffic tickets," *id.* at 154 (citing 145 Cong. Rec. 21,725 (Sept. 15, 1999) (statement of Rep. Maloney)), and specified that "a violation of any requirement of section [30104](a) of the [FECA]"—the principal provision at issue here—was covered by the new law.

Pursuant to this statutory grant of authority, the FEC promulgated a regulation in 2000 creating the "Administrative Fines Program" to "process violations of the reporting requirements of [52 U.S.C. § 30104](a) and assess a civil money penalty based on the schedules of penalties for such violations." Administrative Fines, 65 Fed. Reg. 31,787 (May 19, 2000). The Commission was unequivocal that the administrative fines procedures—*i.e.*, "Subpart B"—"will apply to compliance matters resulting from" a complaint filed by the public when "the complaint alleges a violation of 52 U.S.C. § 30104(a)." 11 C.F.R. § 111.31(b) (emphasis added); *see also* Ex. A ¶¶ 29, 31 (alleging violation of Section 30104(a)). This is the provision CREW alleges that AAN

violated.  All other violations are generally processed through the FEC's traditional enforcement procedures—*i.e.*, in "Subpart A".  *See* 11 C.F.R. §§ 111.30, 111.31(a).

The sanctions available through the Administrative Fines Program are focused on formulaic "civil money penalty" relief—not equitable remedies—for political committees that file their reports either late or not at all.  *See id.* §§ 111.42, 111.43 (providing the specific formulas for calculating a monetary penalty where a report is "not filed"); *see also* Administrative Fines, 65 Fed. Reg. at 31,787 (explaining that the program's purpose was to "assess a civil money penalty").  There is no other relief available for third-party-alleged violations of Section 30104(a).  Neither the Commission, nor anyone standing in its place, can seek equitable relief absent a "[f]ailure to pay the civil money penalty."  11 C.F.R. §§ 111.39(c), 111.40(c).  Therefore, the injunctive relief CREW seeks here is foreclosed.  For this additional reason, CREW lacks standing.[4]

## II.    THIS COURT SHOULD DISMISS THE COMPLAINT BECAUSE THE FEC EXERCISED ITS PROSECUTORIAL DISCRETION TO DISMISS CREW'S CLAIMS.

The Court should also dismiss the Complaint because CREW seeks to pursue allegations that have already been dismissed through an exercise of the FEC's unreviewable prosecutorial discretion.  Earlier this year, the D.C. Circuit held that judicial review is <u>not</u> permitted when the FEC dismisses an administrative complaint in reliance on its prosecutorial discretion.  *See Comm'n on Hope, Growth, & Opportunity II*, 892 F.3d at 441–42.  Judicial review is also not permitted

---

[4]  While this Court previously addressed the redressability prong of CREW's standing in a footnote in its previous decision, *see CREW I*, 209 F. Supp. 3d at 85 n.3, AAN's argument there turned on whether there was an "authoritative policy or rule of the FEC that would bar equitable enforcement."  *See id. But see CREW v. FEC*, 243 F. Supp. 3d 91, 102 n.5 (D.D.C. 2017) (reaching opposite conclusion).  Moreover, as explained *supra*, CREW's last complaint before this Court included an individual, voting plaintiff.  In any event, "because standing is a jurisdictional requirement, it "remains open to review at all stages of litigation." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 247 F. Supp. 3d 76, 97 (D.D.C. 2017); *Nat'l Coal Ass'n v. Lujan*, 979 F.2d 1548, 1551 n.3 (D.C. Cir. 1992) (same).

where, as here, the FEC paired its exercise of prosecutorial discretion with a substantive reason for dismissing the matter. *Id.* at 442. Unless the FEC failed to pursue the allegations "based entirely on its interpretation of the statute," there "can be no judicial review for abuse of discretion, or otherwise." *Id.* at 441 & n.11 (emphasis added).

The D.C. Circuit's decision eliminates the foundation for this lawsuit and precludes judicial review of the allegations in this lawsuit. It is undisputed that, in 2014, the FEC relied on its prosecutorial discretion when it elected not to pursue CREW's allegations against AAN. *See CREW I*, 209 F. Supp. 3d at 88 n.7. At that time, this Court found that it could review the FEC's dismissal decision because the "FECA's express provision for the judicial review of the FEC's dismissal decisions" is "a rebuttal" of the presumption against judicial review of a dismissal on prosecutorial discretion grounds. *Id.* The D.C. Circuit has now rejected that approach, finding that "[n]othing in [FECA] overcomes the presumption against judicial review" expressed in *Heckler v. Chaney. Comm'n on Hope, Growth, & Opportunity II*, 892 F.3d at 439.

It is now controlling precedent that there can be no judicial review of the allegations in CREW's Complaint—either for "abuse of discretion" in a case against the FEC "or otherwise," such as in this lawsuit. *See id.* at 441. Indeed, if this Court did not have authority to review the FEC's first dismissal decision, then it also did not have authority to find the dismissal "contrary to law," to require additional agency proceedings, to review the FEC's second dismissal decision, to find it "contrary to law," or to authorize the filing of this citizen suit. *See id.* at 439–40. Because the FEC relied on its prosecutorial discretion when dismissing the allegations against AAN, "CREW [was never] entitled to have the court evaluate . . . the individual considerations the controlling Commissioners gave in support of their vote not to initiate enforcement proceedings." *Id*. at 441. Therefore, there is no basis for this lawsuit.

Importantly, the D.C. Circuit's decision spoke to the issue now before this Court.  CREW argued to the D.C. Circuit that the FEC's reliance on prosecutorial discretion should "trigge[r] FECA's 'citizen suit' provision, which entitles a private entity to bring an enforcement action when the Commission has declined to do so." *Id*. at 440 (citing 52 U.S.C. § 30109(a)(8)(C)).  The D.C. Circuit rejected CREW's argument, finding it incompatible with the FEC's absolute prosecutorial discretion. *Id.*  The law simply does not allow CREW to take on the role of enforcer when the agency with actual enforcement authority exercised its prerogative to drop the allegations. *Id.*  CREW's Complaint should be dismissed.

## III.   THIS COURT SHOULD DISMISS CREW'S CLAIMS THAT AAN VIOLATED THE FECA AFTER JUNE 30, 2011.

Even if CREW were able to bring this case, this Court should dismiss CREW's post-June-2011 claims. *See* Compl. ¶ 64.  This Court (A) lacks subject matter jurisdiction over those claims because CREW's "original complaint" did not "involv[e]" any alleged FECA "violation" after June 30, 2011. *See* 52 U.S.C. § 30109(a)(8)(C).  And (B) CREW has failed to state a claim for a FECA violation after June 30, 2011, because it has failed to allege any facts supporting its contention that AAN was a "political committee" after that date.

### A.   This Court Lacks Subject Matter Jurisdiction Over CREW's Post-June-2011 Claims.

The FECA specifies that the scope of a "citizen suit" like the one brought here is limited to the four corners of the plaintiff's "original complaint" with the Commission.  Section 30109(a)(1) provides that "[a]ny person who believes a violation of [the FECA] . . . has occurred, may file a <u>complaint</u> with the Commission."   52 U.S.C. § 30109(a)(1) (emphasis added). Subsection (a)(8)(A) grants this Court jurisdiction to review a Commission dismissal of (or failure to act with respect to) such a complaint:

> Any party aggrieved by an order of the Commission dismissing a <u>complaint filed by such party under paragraph (1)</u>, or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia.

*Id.* § 30109(a)(8)(A) (emphasis added).  And then, only if the Commission refuses to act on an order by this Court finding that the Commission has acted "contrary to law," may "the complainant" bring suit based on the "original complaint."  Section 30109(a)(8)(C) states in full:

> In any proceeding under this paragraph the court may declare that the dismissal of the complaint or the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days, failing which the <u>complainant</u> may bring, in the name of such complainant, a civil action to <u>remedy the violation involved in the original complaint</u>."

*Id.* § 30109(a)(8)(C) (emphases added).

In other words, this Court only has subject matter jurisdiction over CREW's claims to the extent they were raised in the "original complaint."  *See id.*; *see also FEC v. Nat'l Republican Senatorial Comm.*, 966 F.2d 1471, 1474 (D.C. Cir. 1992) (describing Section 30109(a)(8) as "a provision entitling a complainant to judicial review of a Commission decision not to pursue <u>a complaint</u>" (emphasis added)).  Indeed, CREW concedes as much, basing this Court's subject matter jurisdiction on the fact that it first pursued its allegations at the FEC.  *See* Compl. ¶ 8 (alleging that "[t]his Court has subject matter jurisdiction over this action pursuant to 52 U.S.C. § 30109(a)(8)(C) and 28 U.S.C. §§ 1331, 2201(a), 2202"); *see also, e.g.*, Compl. ¶¶ 66–73 (alleging "exhaustion of administrative remedies").

This Court, therefore, must dismiss any facts or claims that were not first presented to the FEC in CREW's "original complaint" for lack of subject matter jurisdiction.  *See Jordan v. FEC*, 68 F.3d 518, 518–19 (D.C. Cir. 1995) (holding that "a petitioner's failure to comply with the 60-day limit in § [30109](a)(8)(B) divests the district court of jurisdiction" (citing *National Rifle Ass'n*

*of America v. FEC*, 854 F.2d 1330, 1334 (D.C. Cir. 1988)); *In re Fed. Election Campaign Act Litig.*, 474 F. Supp. 1051, 1053 (D.D.C. 1979) (holding that Section 30109(a) is jurisdictional). For where, as here, a statute grants a private right of action, the statute defines the scope of the court's subject matter jurisdiction. *Cf. McNeil v. United States*, 508 U.S. 106, 107, 113 (1993) (affirming dismissal where statute required exhaustion of administrative remedies and the plaintiff failed "to heed that clear statutory command"); *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 31 (1989) (stating the "general rule" that "if an action is barred by the terms of a statute, it must be dismissed" and affirming dismissal of case for lack of subject matter jurisdiction where petitioner did not comply with a statutory notice provision); *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (holding that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. . . . '[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law'" (citation omitted)).

CREW's "original complaint" only alleged FECA violations between July 23, 2009 and June 30, 2011. *See generally* Ex. A. This Court recognized that limitation, describing "mid-2009 through mid-2011" as "the period in question." *See CREW I*, 209 F. Supp. 3d at 83; *see also id.* ("In June 2012, CREW filed a complaint with the FEC against AAN, similarly alleging that its predominantly campaign-related spending <u>between 2009 and 2011</u> made it an unregistered political committee." (emphasis added)). Indeed, the two counts in CREW's June 2012 administrative complaint were expressly backward-looking. In Count I, CREW alleged that "AAN <u>was</u> a political committee <u>between July 23, 2009 through June 30, 2011</u>, but failed to register as one with the FEC." Ex. A ¶ 19 (emphases added). In Count II, CREW alleged that "AAN

_failed_"—past tense—"to file any [required] reports with the FEC." *See id.* ¶ 30 (emphasis added). This is noteworthy given that the original complaint was filed on June 6, 2012—nearly one year after the end-point of CREW's allegations—and did not allege any ongoing or continuing FECA violations. *See generally id.*

The two counts in CREW's current Complaint are materially different.  In Count One, CREW abandons the end-point for its prior allegations and now alleges that "AAN was a political committee as early as July 23, 2009 and no later than May 6, 2010." Compl. ¶ 75.  CREW similarly seeks to expand its prior allegations in Count Two, now claiming that "[b]eginning no later than 2010 and continuing to present, AAN has failed to file any of these [required] reports with the FEC." *Id.* ¶ 90.  This Court lacks subject matter jurisdiction to consider these expanded claims for purported continuing violations after June 30, 2011.  *See also, e.g.*, *id.* ¶¶ 87, 92 (alleging continuing violations of the FECA).  They were not raised in CREW's "original complaint."  The FEC has never had an opportunity to consider them.  They are, therefore, outside the scope of this Court's judicial review authority under Section 30109(a)(8)(C), and must be dismissed.[5]

### B.    CREW Failed to State a Claim for Violations of the FECA After June 2011.

CREW's post-June-2011 claims should also be dismissed for failure to state a claim because CREW has not alleged any post-June-2011 facts to support its claim that AAN failed to register as a political committee and failed to comply with its reporting obligations as a political committee during that time period.  Instead, the sole facts relied upon by CREW relate to the 2010

---

[5]  Even if the Court were to find that CREW's failure to include claims in its "original complaint" is not a jurisdictional defect (it is), the Court would still need to dismiss the claims that CREW did not include in that "original complaint."  To state a claim under Section 30109(a)(8)(C), CREW must have presented the claim in its "original complaint."  Because CREW did not include any post-June-2011 violations in its "original complaint," it has failed to state a claim regarding the post-June-2011 violations for this reason also.

election cycle that concluded nearly eight years ago.  *See* Compl. ¶¶ 37–59 (describing AAN spending during the 2009 to 2011 timeframe).

As this Court recognized, an entity need not register as a political committee unless "it satisfies two separate conditions."  *See CREW I*, 209 F. Supp. 3d at 82.  The first is a statutory condition: it must "receiv[e] contributions aggregating in excess of $1,000 during a calendar year" or "mak[e] expenditures aggregating in excess of $1,000 during a calendar year."  52 U.S.C. § 30101(4)(A).  The second condition is constitutional:  it must be "under the control of a candidate or the major purpose of [the entity] is the nomination or election of a candidate."  *Buckley*, 424 U.S. at 79; *see also MCFL*, 479 U.S. at 252 n.6 (plurality) (same).

For reasons detailed below in Section VI, CREW has not properly pled that AAN is a political committee for any time period because, even assuming the truth of the facts alleged in CREW's Complaint, they do not establish that AAN has ever had a major purpose to nominate or elect candidates.  CREW's failure is particularly apparent with respect to the post-June-2011 claims because CREW has not alleged <u>any</u> post-June 2011 facts to support its claim that AAN qualified as a political committee <u>after June 2011</u>.  CREW's Complaint is devoid of a single allegation that AAN "contribute[d] or expend[ed] more than $1,000 in a calendar year for the purpose of influencing a federal election" after June 2011, *CREW I*, 209 F. Supp. 3d at 82, and is absent any specific allegations about AAN's spending or conduct after June 2011 to support its claim that AAN's "major purpose" at any point since June 2011 was "the nomination or election of a candidate," *id.* (quoting *Buckley*, 424 U.S. at 79).  Instead, CREW offers only the vague and conclusory allegations that AAN's "major purpose . . . continues to be to nominate or elect federal candidates," Compl. ¶ 60, AAN's "organizational purpose . . . continues to be to nominate or elect federal candidates," *id.* ¶ 62, and that AAN "has continued to make campaign-related expenditures

in each federal election cycle since 2010," *id.* ¶ 63.   These allegations are plainly deficient, as courts "do not assume the truth of legal conclusions" and do not "accept 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'"  *See Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (quoting *Ashcroft*, 556 U.S. at 663).

It is not enough, as CREW suggests, to allege that AAN was a political committee as of 2010, and that because AAN has never registered or filed a termination report since then, AAN's FECA violations are ongoing.  *See* Compl. ¶ 64.  CREW argued against such an approach in an earlier stage of these proceedings, claiming that the Commission erred in determining AAN's "major purpose" by considering AAN's "relative spending over the course of [AAN's] lifetime[,] as opposed to within the most recent calendar year."  *CREW I*, 209 F. Supp. 3d at 84; *see also* Compl. ¶ 42, *CREW II* (1:16-cv-2255) (alleging that "[t]he proper time period for comparing AAN's political activity to its overall spending is the 2010 calendar year"); 52 U.S.C. § 30101(4)(A) (defining a political committee as an entity that makes contributions or expenditures in excess of $1,000 "during a calendar year").  This Court agreed that "[l]ooking <u>only</u> at relative spending over an organization's lifetime runs the risk of ignoring the not unlikely possibility, contemplated by the Supreme Court, that an organization's major purpose can <u>change</u>."  *CREW I*, 209 F. Supp. 3d at 94 (emphasis in original) (citing *MCFL*, 479 U.S. at 262 (recognizing that a group's "spending [may] <u>become</u> so extensive that the organization's major purpose may be regarded as campaign activity [such that] the corporation would be classified as a political committee." (emphasis added by this Court))).  In other words, for CREW to demonstrate that AAN was a "political committee" at any time after June 2011, CREW needed to allege facts demonstrating whether or not AAN's status "change[d]" from prior time periods.  *See id.*  Because CREW failed to do so, its post-June-2011 claims should be dismissed.

27

## IV.   THIS COURT SHOULD DISMISS CREW'S PRE-JULY-2011 CLAIMS AS TIME-BARRED.

CREW's earlier claims (the "pre-July-2011 claims") should also be dismissed because they are precluded by the statute of limitations.   "The statute of limitations for FECA actions is five years." *CREW v. FEC*, 236 F. Supp. 3d 378, 392 (D.D.C. 2017) ("*Comm'n on Hope, Growth & Opportunity I*") (citing 28 U.S.C. § 2462).   By its terms, the statute applies to any "action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise." 28 U.S.C. § 2462.   And, under longstanding Supreme Court precedent, the statute applies to claims for injunctive relief where a legal remedy was available.   *See, e.g.*, *Cope v. Anderson*, 331 U.S. 461, 464 (1947) ("equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy").

This five-year statute of limitations bars CREW's pre-July-2011 claims.[6]   First, (A) the declaratory and injunctive relief sought by CREW is a "penalty" within the meaning of Section 2462.   Second, (B) even if the relief sought by CREW is not a penalty, Section 2462 applies pursuant to the Supreme Court's concurrent-remedies doctrine.   Thus, (C) because CREW's pre-July-2011 claims accrued more than five years before this lawsuit was brought, CREW's claims are barred by the statute of limitations.

### A.   The Five-Year Statute of Limitations Bars CREW's Claims Because CREW Seeks to Impose a Penalty on AAN.

Although CREW labels the relief it seeks as "injunctive" and "declaratory," such labels are not dispositive as to whether an action is one "for the enforcement of any civil . . . penalty" covered

---

[6]  The statute of limitations also bars any claim in CREW's Complaint that accrued more than five years ago but, for the reasons described above in Section III, CREW has not properly pled any post-June-2011 claims and the Court lacks jurisdiction over those claims.  If the Court concludes that it has jurisdiction and that the claims are properly pled, it should dismiss any claim that accrued more than five years ago.

by the five-year statute of limitations in 28 U.S.C. § 2462.  Instead, the "hallmarks" of a action for a "penalty" that is covered by Section 2462 are allegations of (1) a violation "committed against the United States rather than an aggrieved individual" and (2) a remedy that is "punitive" rather than "compensatory" in nature.  *Kokesh v. SEC*, 137 S. Ct. 1635, 1643–45 (2017) (holding SEC disgorgement is a Section 2462 penalty).  CREW's action is both.  So its pre-July-2011 claims are time-barred.

*First*, CREW seeks to enforce public rights, rather than to remedy harm inflicted on any particular individual.  According to CREW, the FECA's registration and reporting requirements "educat[e] the public" at large so the public can engage in "our political process."  Compl. ¶ 14. Courts agree.  *See Citizens United v. FEC*, 558 U.S. 310, 367 (2010) (FECA disclosures "'provid[e] the electorate with information'" (citation omitted)); *Buckley*, 424 U.S. at 140 (FECA establishes "public rights").  CREW's alleged violations of the FECA are therefore alleged violations of "public laws" that if committed, are "committed against the United States rather than an aggrieved individual."  *See Kokesh*, 137 S. Ct. at 1643 (quotation marks omitted).

*Second*, CREW seeks a punitive backward-looking remedy to punish AAN for alleged past wrongs.  Specifically, CREW asks the Court to "[d]eclare that AAN was a political committee on July 23, 2009 or, alternatively, no later than May 6, 2010" and to order AAN to disclose "the identities of all of AAN's contributors who contributed to the organization at any time."  Compl. at 21.  The Court has no authority to grant this relief.  *See* Section I.B.  But even if it could, the relief would be purely punitive.  CREW seeks information about past elections in which CREW did not vote.  Obtaining such information through this lawsuit may satisfy CREW's curiosity, but it cannot compensate CREW for any injury previously suffered.

Indeed, CREW has long acknowledged that the relief it seeks has nothing to do with any

current election or current injury—but instead is designed to publicize "campaign finance violators" with a view toward "deterring future violations of campaign finance law." Ex. A ¶ 3; *accord* Compl. ¶¶ 9–12. CREW's goal may or may not be laudable, but there is no doubt that it is punitive. "Sanctions imposed for the purpose of deterring infractions of public laws are inherently punitive because 'deterrence [is] not [a] legitimate nonpunitive governmental objectiv[e].'" *Kokesh*, 137 S. Ct. at 1643 (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n. 20 (1979)); *see also United States v. Bajakajian*, 524 U.S. 321, 329 (1998) ("Deterrence . . . has traditionally been viewed as a goal of punishment"). Thus, CREW seeks punitive relief that falls squarely within the five-year statute of limitations imposed by Section 2462.

## B. The Five-Year Statute of Limitations Also Bars CREW's Claims Because CREW Seeks a Concurrent Remedy.

Even if CREW's claims for relief were not considered a "penalty" under Section 2462, the five-year statute of limitations would still bar its pre-July-2011 claims. Under the concurrent-remedies doctrine, the Supreme Court has long held that "equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy." *Cope*, 331 U.S. at 464; *see Russell v. Todd*, 309 U.S. 280, 289 (1940) ("when the jurisdiction of the federal court is concurrent with that of law, or the suit is brought in aid of a legal right, equity will withhold its remedy if the legal right is barred"); *Lewis v. Marshall*, 30 U.S. (5 Pet.) 470, 477 (1831) ("That a statute of limitations may be set up in defence in equity, as well as at law, is a principle well settled."). Today, this concurrent-remedies doctrine remains "alive, well, and strong." *United States v. Luminant Generation Co.*, 905 F.3d 874, 886 (5th Cir. 2018). It prevents plaintiffs "from making a mockery of the statute of limitations" by styling in equity a claim time-barred at law. *Gilbert v. City of Cambridge*, 932 F.2d 51, 57 (1st Cir. 1991).

The relief sought by CREW is concurrent with legal remedies established by the FECA. An equitable remedy is concurrent with a legal remedy when "an action at law or equity could be brought on the same facts." *Nat'l Parks & Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 502 F.3d 1316, 1327 (11th Cir. 2007) (quoting *United States v. Telluride Co.*, 146 F.3d 1241, 1248 n. 12 (10th Cir. 1998)). Here, to the extent the Complaint adequately states a claim, there is no doubt that an action at law could have been pursued. CREW alleges that AAN failed to register and report contributions as required by the FECA, Compl. ¶¶ 85–86, 89–90, and under the Commission's rules, "violations of the [FECA's] reporting requirements" are punishable by "a civil money penalty," Administrative Fines, 65 Fed. Reg. at 31,787. Fines, of course, are classic legal remedies. *See Kokesh*, 137 S. Ct. at 1642. Because legal remedies are available on the facts CREW alleges, CREW's action for injunctive and declaratory relief necessarily seeks concurrent remedies. Section 2462 therefore applies to bar CREW's claims.

A few courts have recognized a narrow exception to the concurrent-remedies doctrine that is not relevant here. That exception is said to apply in the "very narrow set of circumstances" where "the sovereign acting in its sovereign capacity" seeks an equitable remedy. *Luminant Generation*, 905 F.3d at 885–86; *see also FEC v. Nat'l Republican Senatorial Comm.*, 877 F. Supp. 15, 21 (D.D.C. 1995) ("the FEC's claim for injunctive and declaratory relief will be allowed to proceed" (emphasis added)); *FEC v. Christian Coal.*, 965 F. Supp. 66, 71 (D.D.C. 1997) (similar). Other courts have declined to recognize a "sovereign" or "governmental" exception. *See, e.g.*, *FEC v. Williams*, 104 F.3d 237, 240 (1996) (holding FEC suit for injunctive relief time barred); *FEC v. Nat'l Right to Work Comm.*, Inc., 916 F. Supp. 10, 14–15 (D.D.C. 1996) (same); *see also Comm'n on Hope, Growth & Opportunity I*, 236 F. Supp. 3d at 392 (recognizing "split of authority"). But this Court need not resolve that dispute. This case was brought by CREW, not

the FEC.  Even in circuits that recognize an exception, there is "no authority" for expanding it to preclude application of the concurrent-remedies doctrine in suits "filed by private parties where the government has declined to act."  *Nat'l Parks*, 502 F.3d at 1327; *see also Luminant Generation*, 905 F.3d at 885–87 (allowing government to proceed but dismissing private litigant as time barred).  There is consensus, therefore, that the concurrent-remedies doctrine applies here.  It bars CREW's pre-July-2011 claims.

## C.    CREW's Claims Are Untimely.

CREW's pre-July-2011 claims must be dismissed as untimely.  The statutory limitations period runs "from the date when the claim first accrued."  28 U.S.C. § 2462.  A claim first accrues on the date that the alleged violation first occurs.  *See Gabelli v. SEC*, 568 U.S. 442, 448–54 (2013) (holding "standard rule" applies to Section 2462); *3M Co. v. Browner*, 17 F.3d 1453, 1462 (D.C. Cir. 1994) ("an action, suit or proceeding to assess or impose a civil penalty must be commenced within five years of the date of the violation giving rise to the penalty").

Here, CREW asserts two FECA violations.  Count One alleges that AAN was obligated to register as a political committee "no later" than May 16, 2010.  *See* Compl. ¶¶ 75, 84.  Count Two alleges that AAN was obligated to file reports as a political committee "no later than [December 31,] 2010."  *Id.* ¶ 90.  Both counts assert that AAN violated the FECA when AAN failed to act by the supposed deadlines that expired approximately eight years ago.  *Id.* ¶¶ 86, 91.  The alleged violations were therefore "complete" on the dates when AAN "missed" the 2010 deadlines.  *See Gabelli*, 568 U.S. at 448.[7]  Because the claim alleged in Count One first accrued "no later" than

---

[7]  Count Two does assert that AAN's failure to file reports as a political committee is a violation "continuing to present."  Compl. ¶ 90.  However, as explained *supra*, CREW has failed to allege <u>any</u> facts after June 2011 supporting an alleged FECA violation by AAN.  Thus, to the extent the complaint purports to assert a "continuing" violation, that conclusory allegation does not render CREW's claims timely.  *See Williams*, 819 F.3d at 472.

May 16, 2010, the five-year limitations period ran as to that claim on May 16, 2015.  Similarly, because the claim alleged in Count Two first accrued "no later" than December 31, 2010, the limitations period ran as to that claim on December 31, 2015.  CREW did not file this suit until April 2018.

Nor is there any basis for tolling.  It is well settled that instigation of "the FEC administrative process" will not toll the running of the statute of limitations.  *Nat'l Republican Senatorial Comm.*, 877 F. Supp. at 19; *see also Nat'l Right to Work Comm.*, 916 F. Supp. at 13–14; *Williams*, 104 F.3d at 237–41.  And the Supreme Court has squarely rejected the contention that Section 2462 contains a "discovery rule."  *Gabelli*, 568 U.S. at 454.  Indeed, if a complainant believes that the FEC administrative process is too slow, the FECA provides a remedy.  Beginning 120 days after an administrative complaint is filed, a complainant may sue to challenge the delay.  *See* 52 U.S.C. § 30109(a)(8)(A).  The complainant thus has a mechanism "to prod the FEC" along and ensure that the statute of limitations does not run.  *See Democratic Senatorial Campaign Comm. v. FEC*, 1:95-cv-349, 1996 WL 34301203, at *8 (D.D.C. Apr. 17, 1996) (recognizing "approaching statute of limitations" and holding 600-day delay unlawful); *Citizens for Percy '84 v. FEC*, 1:84-cv-2653, 1984 WL 6601, at *4 (D.D.C. Nov. 19, 1984) (holding 124-day delay unlawful).  Thus, if CREW had concerns about delay, it could have filed an action to force a decision.  CREW did not take advantage of that opportunity and has never raised any concerns about delay or otherwise encouraged the FEC to seek a tolling agreement.

In short, the statute of limitations ran in 2015 as to both of CREW's claims.  This lawsuit was not filed until April 23, 2018.  Thus, both of CREW's claims are barred by the statute of limitations, and this Court should dismiss them as untimely.  *See Bregman*, 747 F.3d at 875.

## V.   THIS   COURT   SHOULD   DISMISS   THE   COMPLAINT   BECAUSE SECTION 30109(A)(8)(C)   AND   ITS   APPLICATION   HERE   ARE UNCONSTITUIONAL.

Even if CREW had somehow avoided all the legal pitfalls described above—and it has not—the Court should still dismiss this case because the citizen suit provision of Section 30109(a)(8)(C) and its application here are unconstitutional.   First,  (A) Section 30109(a)(8)(C) violates the Take Care Clause because it assigns to a private party the Executive Branch's obligation to enforce the FECA.   Second, (B) Section 30109(a)(8)(C) violates the Appointments Clause, because it permits the plaintiff to perform duties the Constitution assigns to "Officers of the United States."  And third, (C) CREW's attempt here to enforce the FECA against AAN violates the Due Process Clause because when AAN engaged in its core political speech starting nearly a decade ago, it did not have fair notice that, many years later, the FECA would be expanded   through   judicial   action   to   presumptively   count   issue   advocacy   electioneering communications   as   indicative   of   a   major   purpose   to   nominate   or   elect   candidates.   These constitutional claims are particularly important to consider where, as here, this is effectively the first time the statute has been utilized.  Each provides an independent reason to dismiss.

### A.   Section 30109(a)(8)(C) Violates the Take Care Clause.

Foremost,  Section  30109(a)(8)(C)  is  unconstitutional  because  it  usurps  Executive authority.  The Constitution vests in the President alone the authority and responsibility to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3; *see Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 499 (2010) ("The Constitution requires that a President chosen by the entire Nation oversee the execution of the laws.").  The cause of action invoked in the Complaint—Section 30109(a)(8)(C) of the FECA—infringes on the President's "take Care" power both on its face and as applied to this litigation.

First, it interferes with prosecutorial discretion.  The Take Care Clause ensures that "the

Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." *Greenlaw v. United States*, 554 U.S. 237, 246 (2008) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)). "The power to decide when to investigate, and when to prosecute, lies at the core of the Executive's duty to see to the faithful execution of the laws." *Cmty. for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986); *accord Buckley*, 424 U.S. at 138 (recognizing Take Care Clause entrusts "discretionary" invocation of the "Commission's enforcement power . . . to the President" (citing U.S. Const. art. 2 § 3)). Thus, "Congress may not mandate that the President prosecute a certain kind of offense or offender" and "the President may decline to follow a law that purports to require the Executive Branch to prosecute certain offenses or offenders." *In re Aiken Cty.*, 725 F.3d 255, 263 & 266 n.11 (D.C. Cir. 2013) (opinion of Kavanaugh, J.). Section 30109(a)(8)(C) is inconsistent with the Take Care Clause's reservation of absolute prosecutorial discretion to the Executive because it authorizes private citizens to institute civil enforcement proceedings after the Commission "dismisses" an administrative complaint. 47 U.S.C. § 30109(a)(8)(C).

Second, Section 30109(a)(8)(C) interferes with the Executive's exclusive control over civil litigation that affects the interests of the United States. In *Buckley*, the Supreme Court held that only "Officers of the United States" within the Executive Branch may conduct "civil litigation in the courts of the United States for vindicating public rights." 424 U.S. at 140 (citation omitted). That affords the Executive Branch an opportunity to craft litigation strategy that considers governmental interests, including "the strength of the case, the prosecution's general deterrence value, the [g]overnment's enforcement priorities, and the case's relationship to the [g]overnment's overall enforcement plan." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)); *see also Comm'n on Hope, Growth,*

& *Opportunity II*, 892 F.3d at 439 n.7, 441 (holding in dismissing a case in part on prosecutorial discretion grounds, that "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise," is "unreviewable," and is "not subject to judicial review for abuse of discretion" (quoting *Chaney*, 470 U.S. at 831–32)).  Section 30109(a)(8)(C) therefore usurps Executive authority by placing into private hands the "power to seek judicial relief" vindicating the interests of the United States.  *Buckley*, 424 U.S. at 138.

Both flaws are manifest in this case.  This action purports to rectify the Commission's "cho[ice] not to enforce [federal campaign finance] law against AAN."  Compl. ¶ 3; *see also id.* ¶ 7 ("CREW brings this action to remedy . . . AAN's violation of the FECA." (internal quotation mark omitted)).  Indeed, CREW initiated the present action after the Commission exercised its prosecutorial discretion to dismiss and then twice expressly stated that it was not going to act on the allegations in CREW's administrative complaint.  Allowing CREW to proceed here is a direct infringement on the Executive's unreviewable authority to decline to prosecute a particular infringer for an alleged violation of a particular law.  *See Pierce*, 786 F.2d at 1201.

In addition, CREW insists that this action is necessary to protect the rights of "the public" and to help CREW maintain "the integrity of public officials, candidates for public office, the electoral process, and our system of government."  Compl. ¶¶ 11, 14.  But such statements, sprinkled throughout the Complaint, reveal that this action would also violate the Executive's exclusive control over civil litigation seeking to vindicate the interests of the United States.  *See Buckley*, 424 U.S. at 140.  Here, the Executive Branch has chosen not to proceed; CREW cannot constitutionally override that decision.

It is no answer to say that some *qui tam* actions may exhibit similar traits.  Section 30109(a)(8)(C) lacks the statutory mechanisms of government control and historical pedigree that

some courts have thought sufficient to prevent *qui tam* actions from violating Article II. *See, e.g.*, *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 757 (9th Cir. 1993). *But see Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 778 n.8 (2000) (reserving "the question whether *qui tam* suits violate Article II, in particular the Appointments Clause of § 2 and the 'take Care' Clause of § 3"). Unlike *qui tam* actions—which "appear to have originated around the end of the 13th century," *Stevens*, 529 U.S. at 774—Section 30109(a)(8)(C) is modern innovation that lacks sufficient government control. By contrast, the *qui tam* provision in the False Claims Act, for example, includes express mechanisms for the government to assert "primary responsibility for prosecuting the action"; to "dismiss" or "settle" the action "notwithstanding the objections of the person initiating the action"; to seek "limitations" on the participation of the person initiating the action; to seek a stay of the action; and to pursue alternative remedies. *See* 31 U.S.C. § 3720(c); *Kelly*, 9 F.3d at 753 (finding these mechanisms sufficient to show "the Executive Branch can control a qui tam relator's exercise of prosecutorial powers"). Section 30109(a)(8)(C), by contrast, contains no such express provisions for government control, and is thus unconstitutional.

**B.    Section 30109(a)(8)(C) Violates the Appointments Clause.**

Section 30109(a)(8)(C) is also unconstitutional because it violates the Appointments Clause. The Appointments Clause prescribes the exclusive means of appointing "Officers of the United States." *See* U.S. Const. art. II, § 2, cl. 2. "Only the President, a court of law, or a head of department can do so." *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (citing U.S. Const. art. II, § 2). Congress cannot appoint such "Officers" by enacting a statute like Section 30109(a)(8)(C).

This is important because the Supreme Court has held that only "Officers of the United States" within the Executive Branch—that is, individuals appointed by the President or head of department pursuant to the strictures of the Appointments Clause—may conduct "civil litigation in the courts of the United States for vindicating [the] public rights" created by the FECA. *See*

*Buckley*, 424 U.S. at 140 (citing U.S. Const. art. II, § 2, cl. 2).  It is unconstitutional, therefore, for actions like this to be pursued by private individuals under Section 30109(a)(8)(C).[8]

This case, like *Buckley*, involves an attempt by Congress to assign Executive enforcement authority away from the Executive Branch.  To be sure, in *Buckley* the unconstitutional statutory provision assigned the enforcement power to an officer of Congress, rather than to a private individual.  But this is a distinction without a difference because congressional aggrandizement is not a necessary feature of a constitutional violation.  Rather, the "Appointment Clause prevents Congress from dispensing power too freely."  *Freytag v. CIR*, 501 U.S. 868, 880 (1991).  As a result, even when Congress "does not arrogate power to itself, . . . it must not impair another [branch] in the performance of its constitutional duties."  *Free Enter. Fund*, 561 U.S. at 500 (internal quotation marks omitted) (holding dual for-cause limitations on removal violated the separation of powers).  Thus, the Supreme Court held unconstitutional a federal statute that would have transferred from the Executive to the States the authority to conduct background checks on prospective handgun purchasers.  *Printz v. United States*, 521 U.S. 898, 922–23 (1997).  Although Congress had not sought to arrogate power to itself, the Court recognized that "the power of the President would be subject to reduction" if Congress could have its laws enforced "as effectively without the President as with him."  *Id.* at 923.  That was sufficient to violate the Constitution.  So too here.  The entire point of Section 30109(a)(8)(C) is to facilitate the enforcement of the FECA

---

[8]  The *Buckley* Court did not have the opportunity to address directly the constitutionality of Section 30109(a)(8)(C) because Congress first inserted a predecessor provision after the Court had decided *Buckley*.  *Compare* Federal Election Campaign Act Amendments of 1976, Pub. L. No. 94-283, § 313(a)(9)(C), 90 Stat. 475, 485 (1976) (authorizing "a civil action to remedy the violation involved in the original complaint") *with* Federal Election Campaign Act of 1971, Pub. L. No. 92-225, 86 Stat. 3, 18 (1972) (containing no such provision) *and* Federal Election Campaign Act Amendments of 1974, Pub. L. No. 93-443, 88 Stat. 1263, 1284–87 (1974) (same).

without the involvement of the Executive Branch.  Section 30109(a)(8)(C) thus violates Article II

by placing into the hands of private individuals the authority to enforce public rights.

**C.     CREW's Effort to Use Section 30109(a)(8)(C) to Penalize AAN for Past Conduct Under a New Theory of Liability Violates the Due Process Clause.**

Even if Section 30109(a)(8)(C) is not *per se* unconstitutional, it is unconstitutional here as

applied.  With this lawsuit, CREW seeks to step in the shoes of the FEC to penalize AAN for

conduct the FEC exercised its discretion not to pursue, and does so based on an interpretation of

"political committee" about which AAN had no notice during the 2010 election cycle.  To the

extent CREW can, without violating Article II, assume the FEC's prosecutorial authority, CREW's

effort to enforce a new interpretation violates AAN's due process rights.

A "fundamental principle in our legal system is that laws which regulate persons or entities

must give fair notice of conduct that is forbidden or required."  *FCC v. Fox Television Stations,

Inc.*, 567 U.S. 239, 253 (2012).  This "requirement of clarity in regulation is essential to the

protections provided by the Due Process Clause of the Fifth Amendment," and nowhere more so

than where "regulations that touch upon 'sensitive areas of basic First Amendment freedoms.'" *Id.*

at 253–54 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964)).  In these areas, "precision and

guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory

way" and that any "ambiguity does not chill protected speech."  *Id.*; *see also Buckley*, 424 U.S.

at 77 (applying these principles specifically to statutory language currently codified at 52 U.S.C.

§ 30104).  Indeed, the Supreme Court has underscored that courts must take "special care to insist

on fair warning when a statute regulates expression and implicates First Amendment values."

*Marks v. United States*, 430 U.S. 188, 196 (1977).

These principles have particular force in the administrative context, where "[t]radional

concepts of due process incorporated into administrative law preclude an agency from penalizing

a private party for violating a rule without first providing adequate notice of the substance of the rule." *Satellite Broad. Co. v. FCC*, 824 F.2d 1, 3–4 (D.C. Cir. 1987); *see also United States v. Magnesium Corp. of Am.*, 616 F.3d 1129, 1144 (10th Cir. 2010) (Gorsuch, J.) (explaining the "Due Process Clauses of the Fifth and Fourteenth Amendments . . . prohibit the imposition of penalties without fair notice . . . in the course of a civil enforcement action").

Indeed, it is "basic hornbook law in the administrative context" that "elementary fairness compels clarity in the statements and regulations setting forth the actions with which the agency expects the public to comply." *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1328–29 (D.C. Cir. 1995) (internal quotation marks omitted); *see also Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170–71 (2007) (warning against "unfair surprise"); *Satellite Broad. Co.*, 824 F.2d at 3–4 (explaining that a party must have "full notice" of agency's interpretation before rights can be curtailed).  For example, the Supreme Court has criticized an agency's attempt to "change an interpretation in an adjudicative proceeding where doing so would impose 'new liability . . . on individuals for past actions which were taken in good-faith reliance on [agency] pronouncements" or in a case involving 'fines or damages.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 157 (2012); *see also Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1084–85 (D.C. Cir. 1987); *see also Marks*, 430 U.S. at 191–97 (barring punishment where a judicial interpretation expanded scope of First Amendment activity that could be regulated after the conduct occurred).  But that is precisely what is happening here.

Groups like "[AAN], among others, were never afforded clear notice as to the legal criteria that the Commission would apply to them in order to subject them to the significant regulatory burdens applicable to 'political committees.'"  Supplemental Statement of Commissioner Lee E. Goodman, MUR Nos. 6391 & 6471, at 4 (Mar. 3, 2016).  In fact, just months before the date that

CREW claims AAN became a political committee, the Commission—acting through three commissioners—proclaimed that there was "serious doubt on the validity of examining anything other than the amount of express advocacy in the major purpose test analysis."  Statement of Reasons of Vice Chairman Matthew S. Petersen and Commissioners Caroline C. Hunter and Donald F. McGahn, MUR No. 5541, at 4 (Jan. 22, 2009); *see also* Statement of Reasons of Vice Chairman Matthew S. Petersen and Commissioner Caroline C. Hunter, MUR No. 5842 (June 10, 2009) (explaining that references to candidates in an organization's communications, short of express advocacy, did not support a finding that the organization's "major purpose" was to influence elections); Political Committee Status, 72 Fed. Reg. at 5600 ("Congress determined that [electioneering] communications [did not] constitut[e] expenditures that required registration as a political committee[.]").[9]

For its part, and despite the weight of these authorities, the FEC's Office of General Counsel has advanced different theories at different times as to the status of the law in this area, further underscoring AAN's lack of fair notice.  *See, e.g.*, Supplemental Statement of Commissioner Lee E. Goodman, MUR Nos. 6391 & 6471 (Mar. 3, 2016) (explaining how the FEC's professional staff advanced multiple theories for determining an organization's "major purpose").  CREW itself advanced its own theory of what the law required that was different than the rule this Court ultimately formulated.  *See, e.g.,* Pls.' Mot. Summ. J. at 25–30, *CREW I* (1:14cv1419).  And, respectfully, this Court did not fully articulate its position that the FEC must "presume that spending on electioneering communications contributes to a 'major purpose' of

---

[9]  Notably, AAN is entitled to rely upon this rulemaking as a defense against any sanction under the FECA.  *See* 52 U.S.C. § 30111(e) (establishing a person's right to rely upon FEC rules); *Shays v. FEC*, 424 F. Supp. 2d 100, 115 (D.D.C. 2006) (signaling that the Commission's political committee statement is subject to this statutory reliance provision).

nominating or electing a candidate for federal office" until the second time that this case came before it. *CREW II*, 299 F. Supp. 3d at 101; *see also CREW I*, 209 F. Supp. 3d at 93 (not requiring such a presumption).

The strength of the authorities supporting AAN's position, combined with the varying standards articulated by others, illustrates precisely why CREW's efforts here to enforce a legal theory that was far from clear back in 2009 to 2011 violates AAN's due process rights. To be sure, the Court's existing rulings would carry weight prospectively. But rather than permit the imposition of "liability on [AAN] for conduct that occurred well before that interpretation was announced," *Christopher*, 567 U.S. at 155–57, the proper remedy is to dismiss this case. *See also id.* at 156 n.15 (recognizing that "the application of a regulation in a particular situation may be challenged on the ground that it does not give fair warning that the allegedly violative conduct was prohibited"). Indeed, this Circuit has held that a regulated party "may not be punished" nor held "responsible in any way" by an agency where, *inter alia*, the respondent's "interpretation is reasonabl[e] and where the agency itself struggles to provide a definitive reading of the regulatory requirements." *Gen. Elec. Co.*, 53 F.3d at 1333–34. That is precisely the case here.

## VI.   CREW'S CLAIMS ARE ALSO FORECLOSED BY THE FECA.

For at least six additional reasons, CREW's Complaint is substantively deficient, particularly considering the strong deference owed to the Commission's original decisions interpreting the FECA. *See, e.g.*, *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981) (explaining that the FEC "is precisely the type of agency to which deference [interpreting the FECA] should presumptively be afforded"). *First*, CREW changed its legal theory and added new allegations to support its claim that AAN qualifies as a political committee. For example, CREW now relies on the fact that AAN accepted contributions, *see* Compl. ¶¶ 38– 39, when it previously relied solely on AAN's spending to support its allegations of political

committee status, *see* Ex. A ¶¶ 10, 22.  The Court has no authority to consider these updated facts and legal theories, as they were not part of the "original complaint" that CREW filed with the FEC. *See* Section III.A.

      *Second*, CREW seeks attorneys' fees where there is no authority for such an award.  *See* Compl. at 22.  Under the "American Rule," courts cannot award attorneys' fees "absent explicit statutory authority."  *Baker Botts LLP v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (citation omitted); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001) ("Congress ha[s] not 'extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted.'").  The FECA does not provide any statutory authority for awarding attorneys' fees.  Nor does the Equal Access to Justice Act, 28 U.S.C. § 2412, a fee-shifting statute that is applicable only in litigation against the United States.  *See* 28 U.S.C. § 2412(d)(1); *In re Sealed Case*, 254 F.3d 233, 236 (D.C. Cir. 2001).  The Court should thus dismiss CREW's demand for attorneys' fees.

      *Third*, CREW's allegations depend on counting amounts that AAN spent on both independent expenditures and electioneering communications toward a finding that an organization is a political committee.  *See* Compl. ¶ 23.  For reasons that AAN has detailed at length and incorporates here, AAN disagrees that electioneering communications—and issue advocacy electioneering communications in particular—can be considered indicative of a major purpose to nominate or elect candidates.  *See, e.g.*, AAN's Mot. Summ. J. at 17–26, 30–33, *CREW I* (1:14-cv-1419); AAN's Mem. P. & A. at 11–26, *CREW II* (1:16-cv-2255).  The Supreme Court has cautioned that political committee burdens cannot lawfully be imposed on issue advocacy organizations.  *See Buckley*, 424 U.S. 44 n.52, 79–80.  The Commission was thus correct as a matter of law to limit its analysis of relevant spending to those amounts spent on express advocacy

for or against federal candidates, or the functional equivalent.  Because CREW's case depends on counting AAN's issue advertisements as evidence of a major purpose to nominate or elect candidates, it cannot state a claim as a matter of law.

*Fourth*, CREW claims that an organization's political committee status must be determined based solely on its activities in a single calendar year.  *See* Compl. ¶¶ 82–83.  CREW thus seeks to go further than this Court's holding that it was "arbitrary" and contrary to "what Congress contemplated in defining 'political committee'" for FEC commissioners to focus their review on the entirely of an organization's lifetime and to not "give any weight whatsoever to an organizations' relative spending in the most recent calendar year."  *CREW I*, 209 F. Supp. 3d at 94.  Even this standard is more restrictive than the one that should apply, for reasons that AAN previously argued and incorporates here.  *See also* Statement of Reasons of Vice Chair Caroline C. Hunter and Commissioner Lee E. Goodman, MUR No. 6872, at 24 & n.1 (Dec. 20, 2017) (collecting authority that an organization should have its political committee status determined with reference to the organization's activities over its lifetime).

*Fifth*, CREW's lawsuit depends on the validity of this Court's prior remand orders, *see* 52 U.S.C. § 30109(a)(8)(C), (a)(9), and AAN respectfully disagrees that there was any valid basis to twice remand this matter to the Commission.  The Commission's prior dismissal decisions were due deference under an "extremely deferential" standard, *Orloski v. FEC*, 795 F.2d 156, 167 (D.C. Cir. 1986), and should have been affirmed because they were neither contrary to law nor arbitrary and capricious.  AAN reserves the right to present these arguments and challenge the Court's contrary conclusions in its September 2016 and March 2018 decisions should there be an appeal from a decision in this case.  AAN, accordingly, incorporates its prior pleadings in the prior cases by reference.  *See CREW I* (1:14-cv-1419); *CREW II* (1:16-cv-2255).

*Finally*, while acknowledging that a group's organizational purpose "may be demonstrated by, *inter alia*, its "public statements," *see* Compl. ¶ 21, CREW's Complaint effectively ignores that component of the political committee test and focuses solely on AAN's spending.  Such a narrow focus, however, contrasts with prior precedent that evaluating whether an organization qualifies as a political committee involves "a fact-intensive analysis of an organization's '<u>overall conduct</u>,'" *CREW I*, 209 F. Supp. 3d at 82 (emphasis added), and "a very close examination of various activities <u>and</u> statements," *Shays v. FEC*, 511 F. Supp. 2d 19, 31 (D.D.C. 2007).  CREW's failure to address the second half of the relevant test is fatal to its claim that AAN is a political committee and ignores the significant evidence supporting the FEC's conclusion that AAN—a social welfare issue advocacy group—never had as its major purpose the nomination or election of candidates.

## <u>CONCLUSION</u>

For the reasons stated herein, and the reasons articulated by AAN before the Commission and this Court in CREW's related actions, the Complaint should be dismissed with prejudice.

Respectfully submitted,

By: s/ Claire J. Evans
Caleb P. Burns (D.C. Bar No. 474923)
Claire J. Evans (D.C. Bar No. 992271)
Stephen Obermeier (D.C. Bar No. 979667)
Jeremy J. Broggi (D.C. Bar No. 1191522)
**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-7000
cevans@wileyrein.com

Dated: November 2, 2018                    *Counsel for Defendant*