**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br>                           Plaintiff, <br><br>       v. <br><br> AMERICAN ACTION NETWORK, <br><br>                         Defendant. | Civil Action No. 18-cv-945 (CRC) |

**PLAINTIFF CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON'S
OPPOSITION TO AMERICAN ACTION NETWORK'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ............................................................................... ii

**TABLE OF AUTHORITIES** ......................................................................... iv

**FACTUAL BACKGROUND** ......................................................................... 1

    A.   AAN's Political Activities. ............................................................... 2

    B.   AAN's Injury to CREW. ................................................................... 3

    C.   CREW's Exhaustion of Administrative Remedies. ........................... 4

**ARGUMENT** ................................................................................................. 5

**I.**    **STANDARD OF REVIEW** ................................................................... 5

**II.**   **CREW HAS STANDING HERE** .......................................................... 6

    A.   Because CREW is Entitled, by Law, to Information Regarding AAN's
          Donors and Activities, the Deprivation of That Information Constitutes
          an Injury-in-Fact. ........................................................................... 6

    B.   AAN's Harm to CREW's Programmatic Activities Is an Independent Injury. ................ 11

    C.   CREW's Injuries May be Redressed by this Court. ......................... 13

**III.**  **THE COURT HAD JURISDICTION TO HOLD THE PRIOR DISMISSALS
       WERE CONTRARY TO LAW** ............................................................ 16

    A.   The Dismissals Rested on Legal Conclusions. ................................ 17

    B.   To the Extent Prosecutorial Discretion Played Any Role, it was Based
          Solely on the Controlling Commissioners' Interpretations of Law and
          Thus Still Reviewable. .................................................................... 20

    C.   The FEC's Abdication of Enforcement of the FECA's Political Committee
          Law also Justified Judicial Review. ................................................ 22

**IV.**  **CREW'S CLAIMS ARE PROPERLY BEFORE THIS COURT** ............ 23

    A.   CREW's Claims are Not Time-Barred. ......................................... 25

        1.   *AAN's Violations are Continuous.* ....................................... 26

        2.   *CREW's Claims Could Not Accrue Before April 19, 2018.* ......... 27

        3.   *The Statute of Limitations Would Not Bar Equitable Relief.* ........ 29

B.   CREW Is Not Limited to Facts Presented to the FEC. ...................................... 31

   1.   *This Case Concerns the "Violation Involved in the Original Complaint."* ................. 32

   2.   *CREW is Not Limited to the Facts It Had When It Filed its Administrative Complaint.* ........................................................................................ 34

**V.   AAN'S REMAINING ARGUMENTS ARE MERITLESS** ........................................... 36

A.   AAN's Constitutional Attack on § 30109(a)(8)(C) is Frivolous. ..................................... 36

B.   This Action Does Not Violate AAN's Due Process Rights. ............................................... 39

C.   AAN Provides No Reason for This Court to Revisit its Prior Judgments. ....................... 42

**CONCLUSION** ......................................................................................... 45

# TABLE OF AUTHORITIES

**Cases**

*3M Co. v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994) ................................................................. 29

*Action Alliance of Senior Citizens of Greater Phila. v. Heckler*,
789 F.2d 931 (D.C. Cir. 1986) ........................................................................................... 12

*Akins v. FEC*, 101 F.3d 731 (D.C. Cir. 1996) (*en banc*) ...................................................... 9, 43

*Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343 (D.C. Cir. 2014) ................................................ 19

*Antosh v. FEC*, 599 F. Supp. 850 (D.D.C. 1984) .................................................................... 19

*Ashbourne v. Hansberry*, 302 F. Supp. 3d 338 (D.D.C. 2018) ................................................ 25

*Baggett v. Bullitt*, 377 U.S. 360 (1964) .................................................................................. 39

*Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147 (1984) ..................................................... 33

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*,
522 U.S. 192 (1997) ........................................................................................................... 28

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 5

*Buckley v. Valeo*, 424 U.S. 1 (1976) ......................................................................... 10, 34, 37, 41

*Chamber of Commerce of the U.S. v. FEC*, 69 F.3d 600 (D.C. Cir. 1995) ................................ 17

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) ............................................. 40

*Ciralsky v. C.I.A.*, 689 F. Supp. 2d 141 (D.D.C. 2010) ............................................................ 23

*Citizens United v. FEC*, 558 U.S. 310 (2010) .......................................................................... 42

*CityFed Fin. Corp. v. Office of Thrift Supervision*, 919 F. Supp. 1 (D.D.C. 1994) .................... 27

*Clark v. Iowa City*, 20 Wall. 583 (1874) ................................................................................. 28

*Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074 (D.C. Cir. 1987) .................... 39

*CLC v. FEC*, 245 F. Supp. 3d 119 (D.D.C. 2017) ...................................................................... 7

*Cmty. for Creative Non-Violence v. Pierce*, 786 F.2d 1199 (D.C. Cir. 1986) ............................ 37

*Combat Veterans for Cong. Political Action Committee v. FEC*,
795 F.3d 151 (D.C. Cir. 2015) ........................................................................................... 15

*Common Cause v. FEC*, 108 F.3d 413 (D.C. Cir. 1997) ............................................................ 11

*Common Cause v. FEC*, 842 F.2d 436 (D.C. Cir. 1988) ............................................................ 41

*Cope v. Anderson*, 331 U.S. 461 (1947) .................................................................................... 31

*Covad Comm. Co. v. Bell Atlantic Corp.*, 407 F.3d 1220 (D.C. Cir. 2005) .......................... 3, 23

*CREW v. FEC*, 209 F. Supp. 3d 77 (D.D.C. 2016) ("*CREW I*") ......................................... passim

*CREW v. FEC*, 236 F. Supp. 3d 378 (D.D.C. 2017) ............................................................. 18, 26

*CREW v. FEC*, 243 F. Supp. 3d 91 (D.D.C. 2017) ("*Crossroads GPS*") ...................... 6, 7, 12, 13

*CREW v. FEC*, 267 F. Supp. 3d 50 (D.D.C. 2017) ..................................................................... 11

*CREW v. FEC*, 299 F. Supp. 3d 83 (D.D.C. 2018) ("*CREW II*") ...................................... passim

*CREW v. FEC*, 401 F. Supp. 2d 115 (D.D.C. 2005) ................................................................... 10

*CREW v. FEC*, 475 F.3d 337 (D.C. Cir. 2007) ("*Am. for Tax Reform*") ......................... 9, 10, 14

*CREW v. FEC*, 799 F. Supp. 2d 78 (D.D.C. 2011) .................................................................... 11

*CREW v. FEC*, 892 F.3d 434 (D.C. Cir. 2018) ("*CHGO*") .............................................. passim

*Ctr. For Indiv. Freedom v. Van Hollen*, 694 F.3d 108 (D.C. Cir. 2012) (Mem.) ........................ 7

*Democratic Cong. Campaign Comm. v. FEC*, 831 F.2d 1131 (D.C. Cir. 1987) ........................ 17

*Earle v. D.C.*, 707 F.3d 299 (D.C. Cir. 2012) ........................................................................... 26

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..................................................................................... 5

*Erie Basin Metal Prods., Inc. v. United States*, 138 Ct. Cl. 67 (1957) ..................................... 25

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) ........................................................ 39

*FEC v. Akins*, 524 U.S. 11 (1998) ..................................................................................... 7, 8, 9, 10

*FEC v. Christian Coalition*, 965 F. Supp. 66 (D.D.C. 1997) ......................................... 29, 30, 31

*FEC v. Club for Growth*, 432 F. Supp. 2d 87 (D.D.C. 2006) ..................................................... 27

*FEC v. Comm. Of 100 Democrats*, 844 F. Supp. 1 (D.D.C. 1993) ............................................ 14

*FEC v. Craig for U.S. Senate*, 816 F.3d 829 (D.C. Cir. 2016) ................................................. 14

*FEC v. Malenick*, 310 F. Supp. 2d 230 (D.D.C. 2004) .............................................................. 44

*FEC v. Mass. Citizens for Life, Inc. ("MCFL")*, 479 U.S. 238 (1986) .................................. 41, 44

*FEC v. Nat'l Republican Senatorial Comm.*, 877 F. Supp. 15 (D.D.C. 1995 ...................... 28, 29

*FEC v. Nat'l Republican Senatorial Comm.*, 966 F.2d 1471 (D.C. Cir. 1992)............................ 33

*FEC v. Nat'l Right to Work Comm., Inc.*, 916 F. Supp. 10 (D.D.C. 1996)...................... 25, 28, 29

*FEC v. Williams*, 104 F.3d 237 (9th Cir. 1996)........................................................... 28, 29

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010)....................... 37

*Free Speech v. FEC*, 720 F.3d 788 (10th Cir. 2013) ..................................................... 44

*Freytag v. Comm'r*, 501 U.S. 868 (1991) .............................................................. 37

*Friends of Animals v. Jewell*, 828 F.3d 989 (D.C. Cir. 2016) ...................................... 6, 8

*FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015)........................................ 40, 41

*Gabelli v. S.E.C.*, 568 U.S. 442 (2013)........................................................ 27, 28, 29

*GE v. EPA*, 53 F.3d 1324 (D.C. Cir. 1995)............................................................. 39

*Greenlaw v. United States*, 554 U.S. 237 (2008)...................................................... 37

*Hallstrom v. Tillamook Cty.*, 493 U.S. 20 (1989) ................................................ 32, 33

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ................................................ 11

*Heckler v. Chaney*, 470 U.S. 821 (1985) ....................................................... 16, 20, 21

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ......................................... 39, 42

*Holmberg v. Armbrecht*, 327 U.S. 392 (1946)......................................................... 29

*In re Aiken Cty.,* 725 F.3d 255 (D.C. Cir. 2013)..................................................... 37

*In re Fed. Election Campaign Act Litig.*, 474 F. Supp. 1051 (D.D.C. 1979) ........................... 33

*In re Interbank Funding Corp. Sec. Litig.*, 668 F.Supp.2d 44 (D.D.C. 2009).......................... 5

*In re Nat'l Cong. Club*, Nos. 84-5701, 84-5719, 1984 WL 148396
   (D.C. Cir. Oct. 24, 1984) (per curiam) ........................................................ 29

*Info. Handling Serv., Inc. v. Def. Automated Printing Serv.*,
   338 F.3d 1024 (D.C. Cir. 2003)................................................................. 5

*Jordan v. FEC*, 68 F.3d 518 (D.C. Cir. 1995) ........................................................ 33

*Kokesh v. SEC*, 137 S. Ct. 1635 (2017) ............................................................. 30

*Larson v. Valente*, 456 U.S. 228 (1982) ............................................................. 13

*LaShawn A. by Moore v. Barry*, 144 F.3d 847 (D.C. Cir. 1998) ................................... 13

*Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ........................ 7

*Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007) .................................. 39

*Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018) ........................................................... 37

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .................................................. 6

*Marks v. United States*, 430 U.S. 188 (1977) ..................................................... 39

*Mass. v. EPA*, 549 U.S. 497 (2007) ................................................................ 13

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) .................................... 23

*McConnell v. FEC*, 540 U.S. 93 (2003) ........................................................ 18, 41

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .......................................... 35

*McNeil v. United States*, 508 U.S. 106 (1993) .................................................... 33

*Meeker v. Lehigh Valley R. Co.*, 236 U.S. 412 (1915) ............................................ 30

*NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018) .............................................. 21

*Nader v. FEC*, 725 F.3d 226 (D.C. Cir. 2013) ................................................ 10, 11

*Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*,
   590 F.2d 1171 (D.C. Cir. 1978) ................................................................. 44

*Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423 (D.C. Cir. 1996) .................. 12

*Parker v. D.C.*, 478 F.3d 370 (D.C. Cir. 2007) .................................................... 7

*PETA v. U.S. Dep't of Ag.*, 797 F.3d 1087 (D.C Cir. 2015) ....................................... 12

*Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370 (D.C. Cir. 1980) .......................... 27

*Powell v. Ryan*, 855 F.3d 899 (8th Cir. 2017) .................................................... 39

*Printz v. United States*, 521 U.S. 898 (1997) .................................................... 37

*Pub. Citizen v. Burke*, 843 F.2d 1473 (D.C. Cir. 1988) ........................................... 21

*Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989) ...................................................... 6

*Regents of the U. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018) ........... 21

*Robertson v. FEC*, 45 F.3d 486 (D.C. Cir. 1995) ...................................................... 19

*Russell v. Todd*, 309 U.S. 280 (1940) ...................................................... 31

*Satellite Broad. Co. v. FCC*, 824 F.2d 1 (D.C. Cir. 1987) ...................................................... 39

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ...................................................... 5

*SEC v. e-Smart Techs., Inc.*, 31 F. Supp. 3d 69 (D.D.C. 2014) ...................................................... 27

*Shays v. FEC*, 528 F.3d 914 (D.C. Cir. 2008) ...................................................... 6, 7

*Sherley v. Sebelius*, 610 F.3d 69 (D.C. Cir. 2010) ...................................................... 12

*Sierra Club v. Jackson*, 648 F.3d 848 (D.C. Cir. 2011) ...................................................... 17

*Spann v. Colonial Village, Inc.*, 899 F.2d 24 (D.C. Cir. 1990) ...................................................... 12, 37, 38

*SpeechNow.org v. FEC*, 599 F.3d 686 (D.C. Cir. 2010) ...................................................... 27

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ...................................................... 6, 8

*Stockman v. FEC*, 138 F.3d 144 (5th Cir. 1998) ...................................................... 28

*Sturm, Ruger & Co. v. Chao*, 300 F.3d 867 (D.C. Cir. 2002) ...................................................... 5

*The Real Truth About Abortion, Inc. ("RTAA") v. FEC*,
    681 F.3d 544 (4th Cir. 2012) ...................................................... 40, 41, 44

*Throckmorton v. Nat'l Transp. Safety Bd.*, 963 F.2d 441 (D.C.Cir.1992) ...................................................... 42

*United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993) ...................................................... 37

*United States v. Fokker Servs. B.V.,* 818 F.3d 733 (D.C. Cir. 2016) ...................................................... 37

*United States v. Lindsay*, 346 U.S. 568 (1954) ...................................................... 27

*United States v. Magnesium Corp. of Am.*, 616 F.3d 1129 (10th Cir. 2010) ...................................................... 39

*United States v. Thomas*, 864 F.2d 188 (D.C. Cir. 1988) ...................................................... 42

*Wallace v. Kato*, 549 U.S. 384 (2007) ...................................................... 26, 28

*Warth v. Seldin*, 422 U.S. 490 (1975) ...................................................... 5

*Willy v. Coastal Corp.*, 503 U.S. 131 (1992) ............................................................. 16

*Zivotofsky ex rel. Ari Z. v. Secretary of State*; 444 F.3d 614 (D.C. Cir. 2006) .......................... 6, 8

**Statutes**

28 U.S.C. § 2462 ........................................................................................ passim

52 U.S.C. § 10310 ........................................................................................ 44

52 U.S.C. § 30101(4) ........................................................................ 3, 24, 35

52 U.S.C. § 30103 ........................................................................................ passim

52 U.S.C. § 30103(d) ........................................................................ 26, 34

52 U.S.C. § 30104 ........................................................................ 24, 26, 32

52 U.S.C. § 30104(a) ........................................................................ 15, 16

52 U.S.C. § 30104(b) ........................................................................ 15, 16

52 U.S.C. § 30109 ........................................................................................ 29

52 U.S.C. § 30109(a)(2) ........................................................................ 35

52 U.S.C. § 30109(a)(6) ........................................................................ 14

52 U.S.C. § 30109(a)(8)(A) ........................................................................ 21

52 U.S.C. § 30109(a)(8)(C) ........................................................................ passim

**Other Authorities**

FEC, AO 1999-33 (MediaOne PAC) (Jan. 28, 2000) ........................................ 26

FEC, Administrative Fines, 65 Fed. Reg. 31787 (May 19, 2000) ........................ 15

FEC, Filing Amendments, https://bit.ly/2EbVUkU (last visited Dec. 5, 2018) .......... 26

FEC, *Official Results for United States House of Representatives* 145 (2011),
https://bit.ly/2Pk2iYF ........................................................................................ 2

FEC, Political Committee Status, 72 Fed. Reg. 5595 (Feb. 7, 2007)
("Supplemental E&J") ........................................................................ 34, 36, 42

*Outside Spending by Nondisclosing Groups, Cycle Totals, Excluding Party Committees*,
OPENSECRETS.ORG, https://bit.ly/2EcD0dz (last visited Dec. 5, 2018) .................. 22

*The Restriction of Political Campaign Intervention by Section 501(c)(3) Tax-Exempt Organizations*, IRS, https://bit.ly/2zHHw07 ........................................................ 10

United States House of Representatives, *Directory of Representatives*, U.S.H.R. https://bit.ly/2BOyX4Z ........................................................................................ 3

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 5

**Regulations**

11 C.F.R. § 111.31(a) .............................................................................................. 15

11 C.F.R. § 111.31(b) .............................................................................................. 15

**Constitutional Provisions**

Appointments Clause, U.S. Const., Art II, § 2, cl. 2 ............................................... 36

Take Care Clause, U.S. Const. Art. II, § 3 ............................................................. 36

By this action, plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") seeks to finally recover what American Action Network ("AAN") has long unlawfully withheld: information about AAN that the Federal Election Campaign Act ("FECA") mandates be provided and to which CREW is legally entitled. While the posture of this action is relatively unique—only a single prior case has been brought under 52 U.S.C. § 30109(a)(8)(C)—the fundamentals are not. CREW, a private litigant, has filed a civil suit in this Court to seek redress for its injury arising out of AAN's violation of federal law.

Unable to identify any particular legal infirmity warranting dismissal, AAN instead throws up a litany of meritless arguments that attempt to portray this action as something that it is not. Contrary to AAN's suggestions, CREW is not criminally prosecuting AAN. Nor is CREW stepping into the shoes of the government. CREW provided the Federal Election Commission (the "FEC" or "Commission") an opportunity to remedy this violation but the FEC (twice) dismissed CREW's complaint contrary to law. *See CREW v. FEC*, 299 F. Supp. 3d 83 (D.D.C. 2018) ("*CREW II*"); *CREW v. FEC*, 209 F. Supp. 3d 77 (D.D.C. 2016) ("*CREW I*"). CREW therefore now, and only now, can bring this case in its own name, 52 U.S.C. § 300109(a)(8)(C), to seek what it is lawfully owed:  knowledge of AAN's funders and activities because AAN qualifies as a political committee under the FECA.

## FACTUAL BACKGROUND

This Court is familiar with the factual background here. *See CREW I*, 209 F. Supp. 3d at 80 (discussing factual background of AAN's campaign related expenditures in 2009 to 2010); *CREW II*, 299 F. Supp. 3d at 88 (same). CREW nonetheless provides a brief description, including allegations that are germane now that the procedural posture of this case is no longer a challenge to FEC inaction but rather an action to remedy AAN's violation of the FECA.

1

A.      **AAN's Political Activities.**

AAN was incorporated on July 23, 2009. Compl. ¶ 16, ECF 1. Immediately upon its creation, AAN spent heavily to influence the 2010 federal elections. *Id.* ¶ 37. To fund those operations, AAN accepted at least $1,000 in contributions on or around July 23, 2009. *Id.* ¶ 39. Between May 6, 2010 and June 30, 2011, AAN spent $4,096,909 on independent expenditures and $14,038,625 on electioneering communications. *Id.* ¶ 40.

AAN's earliest reported expenditure was $29,000 spent on May 6, 2010 to support the election of Tim Burns, the Republican candidate in a special election for a House seat in Pennsylvania. *Id.* ¶ 41. AAN spent significantly on other independent expenditures between then and the 2010 election expressly advocating for candidates' election or defeat. *Id.* ¶¶ 40–42.

AAN's electioneering communications during the period were of a similar nature. For example, beginning October 22, 2010, AAN spent $725,000 to broadcast an advertisement accusing an incumbent Congressman up for election of giving "Viagra" to "convicted rapists." *Id.* ¶ 45; *see also CREW I*, 209 F. Supp. 3d at 80 (quoting text of AAN's advertisement). AAN told viewers to register their displeasure "in November," an appeal to take action in the upcoming election. Compl. ¶ 46. AAN's other electioneering communications were of a similar nature. They criticized or praised candidates' records, referred to upcoming elections, ran shortly before those elections, and targeted the candidates' electorates. *Id.* ¶¶ 47–50.

One of AAN's 2010 electioneering communications attacked the Democratic candidate for a West Virginia House seat, Mike Olivero, Compl. ¶ 49, whose opponent at the time was David McKinley. *See* FEC, *Official Results for United States House of Representatives* 145 (2011), https://bit.ly/2Pk2iYF (showing race between Mike Oliverio and David McKinley was won by Mr. McKinley). AAN's spending was therefore to Mr. McKinley's benefit. David

McKinley still serves as a representative from West Virginia today. *See* United States House of Representatives, *Directory of Representatives*, U.S.H.R. https://bit.ly/2BOyX4Z (last visited Dec. 5, 2018).[1]

Combined, AAN's independent expenditures and electioneering communications comprised no less than approximately 70.4 percent of AAN's total spending between July 1, 2010 and June 30, 2011, its fiscal year overlapping the 2010 election. Compl. ¶ 51. Even that amount omits an additional $998,966 AAN spent to influence federal elections but did not report to the FEC, which would bring AAN's share up to 74.2 percent. *Id.* ¶¶ 52–54. Looking to AAN's first two years of existence, its independent expenditures and electioneering communications comprised 66.8 percent of its total spending, or 71.0 percent including sums AAN spent to influence elections but did not report to the FEC. *Id.* ¶¶ 55–59.

AAN's activities made it a political committee under the FECA because those activities exceeded the statutory threshold in 52 U.S.C. § 30101(4) and demonstrated AAN's major purpose at the time was to elect or defeat federal candidates. Compl. ¶ 60. Accordingly, AAN qualifies as a political committee, and it has never taken the steps to legally terminate that status. *Id.* ¶ 64. Indeed, AAN could not qualify for termination under the statute, as it has continued to make campaign-related expenditures and accept contributions in each two-year federal election cycle since 2010. *Id.* ¶¶ 62–64. To this day, AAN has never registered as a political committee or filed any required committee disclosure report. *Id.* ¶ 64.

**B.    AAN's Injury to CREW.**

AAN's refusal to comply with the FECA has deprived CREW of the knowledge of

---

[1] The Court may take judicial notice of these public records. *Covad Comm. Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (court may take "judicial notice of facts on the public record").

AAN's contributors and the recipients of its disbursements, which CREW is entitled to by law. Compl. ¶ 65. CREW's mission is to "protec[t] our political system against corruption and reduc[e] the influence of money in politics," and to "ensure the public continues to have a vital voice in our political process and government decisions." *Id.* ¶¶ 10, 14. To advance that mission "CREW monitors the activities of those who run for federal office as well as those groups financially supporting candidates for office or advocating for or against their election." *Id.* ¶ 12. By failing to register and report as a political committee, AAN hindered and continues to hinder CREW "in carrying out its core programmatic activities when those individuals and entities that attempt to influence elections and elected officials are able to keep their identities hidden." *Id.* ¶ 14.

### C.    CREW's Exhaustion of Administrative Remedies.

Seeking to remedy this harm, CREW filed an administrative complaint with the FEC on June 7, 2012. Compl. ¶ 66. The complaint alleged that AAN had become a political committee and that it had failed to register and report as one as required by law. *Id.* Despite a recommendation from the FEC's Office of General Counsel ("OGC") to investigate CREW's claims, *id.* ¶ 67, the Commission split three-to-three and dismissed, *id.* ¶ 68. CREW sought judicial review of the dismissal pursuant to 52 U.S.C. § 30109(a)(8)(C), and on September 19, 2016, this Court found the reasons given by the three controlling commissioners relied on impermissible interpretations of law. *Id.* ¶ 69. Accordingly, the Court declared the dismissal contrary to law and remanded the action for further agency proceedings. *Id.*

On October 19, 2016, the FEC again notified CREW that it had deadlocked on its allegations and dismissed. Compl. ¶ 70. CREW once again sought judicial review, and on March 20, 2018, this Court again declared the dismissal was contrary to law. *Id.* Accordingly, the Court

remanded the action back to the agency with an order to conform, stating that the FEC's failure

to "timely conform with the Court's declaration" would mean "CREW may bring a civil action

to remedy the violation involved in the original complaint." *Id.* ¶ 71 (internal quotation marks

omitted). The deadline for the FEC to conform was April 19, 2018, but the FEC failed to

conform by that time. *Id.* ¶¶ 72–73.

Having exhausted all of its administrative remedies, CREW brought the instant action

four days later, on April 23, 2018.

**ARGUMENT**

## I. Standard of Review

In deciding a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the

Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56

(2007)). Any ambiguities must be viewed in a light most favorable to the plaintiff, giving them

the benefit of every reasonable inference drawn from the facts and allegations in the complaint

to state a plausible claim for relief. *In re Interbank Funding Corp. Sec. Litig.*, 668 F.Supp.2d 44,

47 (D.D.C. 2009) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Similarly, in evaluating a defendant's motion to dismiss under Rule 12(b)(1) of the

Federal Rules of Civil Procedure, the court "'must accept the factual allegations in the

complaint as true'" and "'must assume that [plaintiffs] state[] a valid legal claim.'" *Info.*

*Handling Serv., Inc. v. Def. Automated Printing Serv.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003)

(quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867,

871 (D.C. Cir. 2002)). "At the pleading stage, general factual allegations of injury resulting

from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that

5

general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted).

## II.     CREW Has Standing Here

CREW has Article III standing. It has suffered injury from AAN's failure to provide information to which CREW is legally entitled; AAN's failure has impaired CREW's programmatic activities; and this Court has the power to directly redress the injury CREW has suffered. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).[2]

### A.     Because CREW is Entitled, by Law, to Information Regarding AAN's Donors and Activities, the Deprivation of That Information Constitutes an Injury-in-Fact.

"'The denial of information [a plaintiff] believes that the law entitles him to' constitutes an injury in fact." *CREW v. FEC*, 243 F. Supp. 3d 91, 101 (D.D.C. 2017) ("*Crossroads GPS*") (*quoting Shays v. FEC*, 528 F.3d 914, 923 (D.C. Cir. 2008)); *accord Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016); *see also Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989) (defendant's "refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue"); *Zivotofsky ex rel. Ari Z. v. Secretary of State*; 444 F.3d 614, 619 (D.C. Cir. 2006) (denial of specific information is a concrete and particularized injury). Because CREW has been "denied access to information to which [it is, under CREW's theory,] lawfully entitled," CREW has standing. *Crossroads GPS*, 243 F. Supp. 3d at 101; Compl. ¶¶ 2, 10-16.[3]

---

[2] Article III standing also requires that the harm be traceable to the defendant's conduct. AAN does not challenge the traceability prong of CREW's standing. Nor does AAN challenge any aspect of the Court's jurisdiction other than injury-in-fact and redressability. *See* Compl. ¶ 8.

[3] Although *Jewell* would require a plaintiff to also establish that "it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure" as part of the standing inquiry, 828 F.3d at 170, such inquiry is one of "prudential standing," not Article III standing, *see FEC v. Akins*, 524 U.S. 11, 19 (1998); *see also Lexmark Int'l v. Static*

Denial of access to information mandated under the FECA is a cognizable injury sufficient to provide Article III standing. In *FEC v. Akins*, 524 U.S. 11 (1998), the Supreme Court found "injury in fact" due to the respondents' "inability to obtain information" that the statute required a political committee make public. *Id.* at 21. Similarly, in *Shays*, the D.C. Circuit Court of Appeals found a member of Congress had standing to challenge an FEC regulation that conflicted with a statute entitling him to information about candidates for president. 528 F.3d at 923. The D.C. Circuit found that Shays' "injury in fact is the denial of information he believes the law entitles him to" and observed that "after some prodding at oral argument, FEC counsel virtually conceded" the standing question. *Id.*; *see also Ctr. For Indiv. Freedom v. Van Hollen*, 694 F.3d 108, 109 (D.C. Cir. 2012) (Mem.) ("Appellee easily satisfied the requirements of § 702 and demonstrated his Article III standing [to challenge an FEC regulation] by showing that he would be unable to obtain disclosure of information" he was statutorily entitled to due to the FEC regulation); *Crossroads GPS*, 243 F. Supp. 3d at 102 n.5 (holding CREW has standing to assert informational injury claim under FECA); *CLC v. FEC*, 245 F. Supp. 3d 119, 126 (D.D.C. 2017) (holding two organizations, similar to CREW, suffered "informational injuries" from the lack of disclosure of political committee contributions sufficient to confer standing).

CREW's informational injury is beyond dispute at the pleadings stage. Assuming, as the Court must, *Parker v. D.C.*, 478 F.3d 370, 377 (D.C. Cir. 2007), that AAN was legally required to register as a political committee and make commensurate disclosures, then "AAN is withholding from CREW information about AAN's activities and contributors to which CREW

---

*Control Components, Inc.*, 572 U.S. 118, 127 (2014). A plaintiff satisfies prudential standing so long as its injury "arguably falls within the zone of interests protected or regulated by the statute." *Akins*, 524 U.S. at 20. CREW easily surpasses that standard, even if it must also allege that injury to demonstrate Article III standing. *See infra* pp. 8–10.

is legally entitled and which CREW needs for its organizational work." Compl. ¶ 2. That alone is sufficient to establish injury-in-fact here.

To avoid this conclusion, AAN contends that CREW's status as a non-voter prevents it from establishing injury-in-fact because CREW does not additionally suffer a "harm to its ability to cast an informed vote." AAN Mem. in Supp. of Mot. to Dismiss 16, ECF No. 24-1 ("AAN Mem."). Yet "a plaintiff seeking to demonstrate that it has informational standing generally 'need not allege any additional harm beyond the one Congress has identified.'" *Jewell*, 828 F.3d at 992 (citing *Spokeo*, 136 S. Ct. at 1549); *Zivotofsky*, 444 F.3d at 617 ("[W]hy [plaintiff] wants the information, what he plans to do with it, what harm he suffered from the failure to disclose— are irrelevant to his standing."). CREW need not therefore establish a separate impairment of the right to vote.

Indeed, the very judicial authority on which AAN's arguments rests, *Akins*, expressly states that standing does not hinge on any impact to a plaintiff's franchise. In addressing the prudential standing of a number of voters, the Supreme Court noted that political committee disclosures—the same information at issue here—not only aid plaintiffs' efforts "to evaluate candidates for public office . . . and to evaluate the role that [the political committee]'s financial assistance might play in a specific election," but also helps "others to whom [the plaintiffs] would communicate [that information]." *Akins*, 524 U.S. at 21. In other words, the Court expressly acknowledged injury to the plaintiffs' ability to receive information *for the purposes of sharing it with others* is the "type of harm Congress sought to prevent." *Jewell*, 828 F.3d at 170.

The Court's statement was no meaningless aside. Rather, it rejected a holding of the D.C. Circuit below that would have limited the plaintiffs' injuries to only the denial of information useful to each plaintiff in voting. *See Akins v. FEC*, 101 F.3d 731, 737 (D.C. Cir. 1996) (*en*

*banc*), *vacated by* 524 U.S. 11. The D.C. Circuit had concluded that "it would not be enough for standing in this case for [plaintiffs] to assert only that they were voters, for [plaintiffs] would not be injured as voters if [the defendant's] activities were unrelated to any election in which they voted." *Akins*, 101 F.3d at 737. Rather, the D.C. Circuit required plaintiffs to have "vote[d] in various federal elections in which [the defendant] allegedly made contributions that qualified it as a political committee." *Id.* at 738.

Rejecting this limitation, the Supreme Court concluded *all* plaintiffs, regardless of whether they were voters in the elections impacted by the defendant, had standing. *Akins*, 524 U.S. at 21. The Court did not suggest any plaintiff needed to show a "harm to [their] ability to cast an informed vote." AAN Mem. 16. Rather, it determined all plaintiffs were injured by the deprivation of information, either because they could not then use it themselves or because they could not communicate it to others. The Court then formulated the requisite injury without reference to voting, stating that "[t]he injury of which [plaintiffs] complain—their failure to obtain relevant information—is injury of a kind that FECA seeks to address." *Akins*, 524 U.S. at 20. Indeed, recognizing that this would mean all persons suffer injury from lack of disclosure, the Court noted the fact that informational injury under the FECA "is widely shared does not" render it inactionable. *Id.* at 25.

For that reason, the dicta in *CREW v. FEC*, 475 F.3d 337 (D.C. Cir. 2007) ("*Am. for Tax Reform*"), suggesting CREW cannot suffer an injury from nondisclosure is inapplicable here. Though CREW "cannot vote," *id.*, at 339, it can and does communicate with voters, Compl. ¶¶ 11–15, and there is no dispute that the information CREW seeks is of the type that would aid voters. Further, such communications are not "partisan political activity," *cf. Am. For Tax Reform* at 339, and CREW's § 501(c)(3) tax-exempt status does not prevent CREW from sharing

information required under the FECA, *The Restriction of Political Campaign Intervention by Section 501(c)(3) Tax-Exempt Organizations*, IRS, https://bit.ly/2zHHw07 (last visited Dec. 5, 2018) (confirming that § 501(c)(3) organization may engage in non-partisan voter education, among other activities). Indeed, utilizing that information to "evaluate candidates for public office" is only one of the purposes contemplated by Congress in enacting the FECA, *Akins*, 524 U.S. at 21, which also sought sharing of information to "deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the *light of publicity*," and to provide information "to detect violations of" other portions of the FECA, *Buckley v. Valeo*, 424 U.S. 1, 67–68 (1976) (emphasis added); *see also Akins*, 524 U.S. at 20 (relying on *Buckley* to establish FECA's zone of interest).[4] Requiring disclosure from AAN here would serve all of these purposes, and CREW's ability to carry out these functions is harmed by AAN's violation. For the same reason, CREW's injury is not "derivative," *cf. CREW v. FEC*, 401 F. Supp. 2d 115, 121 (D.D.C. 2005); CREW is personally prevented from carrying out *its own* work of communicating with others, *see* Compl. ¶¶ 11–15.

Nor are the other cases AAN's relies on instructive. In *Nader v. FEC*, 725 F.3d 226 (D.C. Cir. 2013), the D.C. Circuit found a plaintiff lacked informational injury where he did not seek information to which he was entitled under the FECA or show the information he sought would be useful for any purpose contemplated by the FECA, but only sought the disclosure of the fact that certain entities violated the law, *id.* at 230 (plaintiff sought to compel disclosure of the fact that entities "violated the prohibitions on undisclosed 'contributions' and 'expenditures'"). The

---

[4] Further, the portion of *Americans for Tax Reform* on which AAN relies is dicta. 475 F.3d at 339 (only asking "[o]ne might wonder" about CREW's standing, rather than so holding). The actual holding concerned the question of injury given the information in question was already publicly available. *Id.*

plaintiff's injury, therefore, was only to his desire to "get the bad guys," which was insufficient. *Id.*; *see also CREW v. FEC*, 799 F. Supp. 2d 78, 88–89 (D.D.C. 2011) (finding no standing where information sought was "publicly available" and plaintiffs "do not really seek additional facts but only the legal determination that certain transactions constitute [illegal] in-kind contributions" (internal quotation marks omitted)). In contrast, CREW here seeks from AAN information that must be disclosed under the FECA for the very purposes contemplated by the Act: to review, analyze, and communicate with the public, including voters. Compl. ¶¶ 10–12. Similarly, in *CREW v. FEC*, 267 F. Supp. 3d 50 (D.D.C. 2017), the court denied CREW standing because it construed CREW's claim as not seeking information to which it was entitled under the Act, *id.* at 54 (asserting "there is no serious argument that the provision of FECA that plaintiffs invoked . . . entitles them to information in any reasonably direct way"). By contrast, this case concerns the very provision of law at issue in *Akins* and which the Supreme Court recognizes confers a legal right to information, the deprivation of which is a cognizable injury.

**B.     AAN's Harm to CREW's Programmatic Activities Is an Independent Injury.**

In addition to and independent of CREW's informational injury, AAN has further caused CREW injury because its "discrete programmatic concerns are being directly and adversely affected by the challenged action." *Common Cause v. FEC*, 108 F.3d 413, 417 (D.C. Cir. 1997) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (stating there "can be no question that the organization has suffered injury in fact" where there is "perceptibl[e] impair[ment]" of organization's activities). While the denial of information can cause this injury, *see Havens*, 455 U.S. at 369 (injury caused by withholding information about apartment availability), there is no need to demonstrate a legal right to that information to establish standing under this alternative basis, *id.* at 378 (finding defendant's actions caused injury without

11

inquiring whether plaintiff had legal right to information); *PETA v. U.S. Dep't of Ag.*, 797 F.3d 1087, 1095 (D.C Cir. 2015) (same); *Action Alliance of Senior Citizens of Greater Phila. v. Heckler*, 789 F.2d 931, 938 (D.C. Cir. 1986) (same). Indeed, the impairment of programmatic activity is not limited to cases where the defendant deprives the plaintiff of information. *See, e.g.*, *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (defendant's advertising injured plaintiff's "interest in encouraging open housing"). So long as the defendant's action is "at a loggerheads with the stated mission of the plaintiff," and the action makes "the organization's activities more difficult," then the plaintiff suffers a cognizable injury. *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1429–30 (D.C. Cir. 1996); *see also Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010) (defendant's activities rendering plaintiff's business activities more difficult constitute injury-in-fact).

Here, AAN's withholding of campaign information required to be disclosed by the FECA is directly at "a loggerheads" with CREW's mission to "protec[t] our political system against corruption and reduc[e] the influence of money in politics." Compl. ¶ 10; *accord id.* ¶14. AAN's actions make CREW's activities of "disseminat[ing] information to the public about public officials and their actions, and the outside influences that have been brought to bear on those actions" more difficult. *Id.* ¶¶ 10–14. The "denial of access to . . . information" used by CREW to further its mission is "concrete and specific to the work in which [CREW is] engaged." *PETA*, 797 F.3d at 1095 (D.C. Cir. 2015).

Indeed, another judge of this district has upheld CREW's standing to bring suit based on an injury from unlawfully withheld information that should have been disclosed under the FECA. *See Crossroads GPS*, 243 F. Supp. 3d at 102 n.5. There, the court found, on final judgment, that CREW's asserted injuries—the same as alleged here—are sufficient to show

CREW's "discrete programmatic concerns are being directly and adversely affected" by the failure to disclose. *Id.*[5]

Accordingly, even assuming CREW does not suffer a cognizable informational injury, AAN's impairment of CREW's activities alone satisfies Article III.[6]

### C.   CREW's Injuries May be Redressed by this Court.

This Court has the power to, *inter alia*, declare that AAN is a political committee and has been since no later than 2010; order AAN to register as a political committee; and order AAN to disclose to CREW the information it was required to disclose. *See* Compl. at pp. 21-22; *see also LaShawn A. by Moore v. Barry*, 144 F.3d 847, 853 (D.C. Cir. 1998) ("[A] federal court has broad equitable powers."). There is no dispute that "a favorable decision [here] will relieve a discrete injury to [CREW]" by providing CREW with information currently withheld. *Mass. v. EPA*, 549 U.S. 497, 525–26 (2007) (noting remedy need not "relieve his every injury," so long as it reduces injury "to some extent") (quoting *Larson v. Valente*, 456 U.S. 228, 244 n.15 (1982)). Thus, CREW's injuries are redressable. AAN's arguments to the contrary misrepresent the nature of this action and misstate the law.

First, all of AAN's arguments rest on its assertion, without citation, that "CREW cannot obtain broader relief here than the Commission itself could seek and obtain." AAN Mem. at 18. That misapprehends the nature of this suit, however—CREW, and not the FEC, is the plaintiff here, and CREW is not standing in the shoes of the FEC. CREW brought this suit pursuant to 52

---

[5] Though the defendant in the action was the FEC, not the non-disclosing entity, *id.*, the nature of the defendant is immaterial with respect to whether CREW suffered and suffers an injury-in-fact. Indeed, CREW's claim can only be stronger where the defendant is the non-disclosing entity itself.

[6] For the reasons stated above, *supra* pp. 8–10, CREW's activities are indisputably within the zone of interest of the FECA.

U.S.C. § 30109(a)(8)(C), a statutory cause of action that provides, following exhaustion of the requirement that the FEC fail to conform with a court order, that "the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint." AAN Mem. at 23. CREW is not asking the Court to order the FEC to return to its enforcement proceedings. *Cf. id.* at 19 (noting FEC on remand may or may not seek court order of disclosure). Rather, CREW is itself seeking relief against AAN from this Court for a violation of federal law, much like any other civil plaintiff in federal court. Thus, there is no basis for AAN's assertion that CREW's remedies are anything other than the ordinary remedies available in civil suits under the Federal Rules of Civil Procedure. AAN offers no authority for its proposal that CREW's remedies in this civil action are constrained by the remedies available to the FEC had it chosen to enforce the FECA.

Second, even if AAN were correct that CREW is limited to the remedies available to the FEC, the FEC could, contrary to AAN's assertion, obtain relief that would redress CREW's injuries. The FECA authorizes the Commission to seek in a civil action any relief, "including a permanent or temporary injunction, restraining order, or any other appropriate order (including an order for a civil penalty[)]." 52 U.S.C. § 30109(a)(6)(A), (B). Such authority encompasses an order to disclose unlawfully withheld information. *FEC v. Craig for U.S. Senate*, 816 F.3d 829, 847 (D.C. Cir. 2016) (upholding award of equitable relief in suit brought by FEC); *FEC v. Comm. Of 100 Democrats*, 844 F. Supp. 1, 8 (D.D.C. 1993) (granting FEC's motion for an injunction requiring defendants to, *inter alia*, comply with conciliation agreement by "filing scheduled reports disclosing all contributions received"). AAN's assertion that "'the Commission has no authority to order anyone to report anything,'" AAN Mem. 18 (quoting *Am. for Tax Reform*, 475 F.3d at 340), does nothing to further its argument because it has no bearing

14

on what relief the FEC could obtain *from a court*. Thus, the FECA provides the FEC the ability

to obtain *in court* the same types of relief that CREW seeks here, from this *Court*, in redress of

its injuries.

Nor does the existence of the FEC's administrative fine program foreclose relief in this

case. This action is not even a candidate for the FEC's administrative fine program as it concerns

violations of 52 U.S.C. §§ 30103 and 30104(b), *see* Compl. ¶¶ 84, 91, which are not subject to

that program, *see* 11 C.F.R. § 111.31(b) (only allegations of violation of 52 U.S.C. § 30104(a)

may be considered in administrative fine program, all others are subject to regular administrative

enforcement proceedings). The case does not concern "routine filing and record-keeping

violations" like a "late filing[]" that are subject to that summary adjudication. *Combat Veterans*

*for Cong. Political Action Committee v. FEC*, 795 F.3d 151, 154 (D.C. Cir. 2015) (describing

actions subject to administrative fines); *see also* FEC, Administrative Fines, 65 Fed. Reg. 31787,

31787 (May 19, 2000) (noting program was designed to process political committees' "failures

to file the reports in a timely manner"). Even as to 52 U.S.C. § 30104(a) allegations, the

administrative fine procedures are *permissive*, not mandatory. *See* 11 C.F.R. § 111.31(a)

(Commission may refer to administrative fine procedures if it "determines that the compliance

matter should be subject to" them); Administrative Fines, 65 Fed. Reg. at 31788 (noting rules

"*permit* the Commission to process complaint-generated matters that alleged violations of [52

U.S.C. § 30104(a)] under the administrative fines program" (emphasis added)); *id.* ("[T]he

Commission has *discretion* to apply either the administrative fines procedures or the current

enforcement procedures . . . to violations of the reporting requirements of [52 U.S.C.

§ 30104(a)]." (emphasis added)). Nothing prevents the Commission then from subjecting an

allegation of a violation of 52 U.S.C. § 30104(a) to its regular enforcement procedures and

15

seeking equitable relief in a civil action where, for example, there are numerous violations in addition to late-filing. Thus, AAN is incorrect that the FEC could not obtain an order of disclosure like that sought by CREW here for even AAN's § 30104(a) violations, never mind its § 30103 and § 30104(b) violations—and putting aside that this program has no bearing on the relief available to CREW here.

## III.    The Court Had Jurisdiction to Hold the Prior Dismissals Were Contrary to Law

In its prior judgments finding the FEC's two dismissals were contrary to law, this Court identified the grounds for dismissal as the controlling commissioners (mis)interpretations of law: that, respectively, their "'major purpose' inquiry [excluded] *all* of . . . AAN's spending on electioneering communications," *CREW I*, 209 F. Supp. 3d at 84, and that they "used a multifactor test that started from a blank slate in considering the content of each ad, with no apparent regard for the highly relevant fact that each ad fell cleanly within Congress's definition of an 'electioneering communication,'" *CREW II*, 299 F. Supp. 3d at 93. Finding "law to apply," *cf. Heckler v. Chaney*, 470 U.S. 821, 834 (1985), the Court found the dismissals were contrary to it.

Paradoxically, AAN now asserts that there was no law to apply to the prior dismissals, and that they were instead unreviewable acts of discretion, relying on the recent decision of *CREW v. FEC*, 892 F.3d 434 (D.C. Cir. 2018) ("*CHGO*"), *pet. for reh'g en banc filed*, *CREW v. FEC*, No. 17-5049 (D.C. Cir. July 7, 2018), that held a dismissal based "squarely on the grounds of prosecutorial discretion" was unreviewable, *id.* at 439.[7] The record here belies any conclusion

---

[7] AAN asserts this conclusion "eliminates the foundation for this lawsuit and precludes judicial review of the allegations in this lawsuit." AAN Mem. 21. AAN cites nothing to support this assertion, and it is undermined by the fact that the FECA requires only that the FEC fail to conform with a declaration to authorize a citizen suit, *see* 52 U.S.C. § 30109(a)(8)(C), not that the declarations themselves were free of error, *see also Willy v. Coastal Corp.*, 503 U.S. 131,

the dismissal here was based on such discretion, as it demonstrates both dismissals rested on the

controlling commissioners' erroneous conclusions of law, subjecting each to judicial review even

under *CHGO. See CHGO*, 892 F.3d at 441, n.11 ("[I]f the Commission declines to bring an

enforcement action on the basis of its interpretation of [the law], the Commission's decision is

subject to judicial review."). Further, even if prosecutorial discretion had been among the reasons

to dismiss, review would *still* have been appropriate because the exercise of that discretion

nevertheless rested on reviewable legal interpretations, and because the FEC has abandoned

enforcement of federal political committee laws.[8]

### A.    The Dismissals Rested on Legal Conclusions.

As noted, this Court found that the reasons the controlling commissioners gave to twice

dismiss CREW's complaint against AAN rested on impermissible interpretations of law. The

Court was correct:  any reading of the two statements of reasons shows the commissioners

interpreted law, applied them to fact, and reached firm conclusions on the merits. Accordingly,

they are still subject to review, notwithstanding *CHGO*. 892 F.3d at 441 n.11.

In the first statement, the controlling commissioners wrote,

Since AAN's central organizational purpose is not the nomination or election of a
federal candidate and its independent spending to support the nomination or
election of a federal candidate is not so extensive that its major purpose may be

_____

138–39 (1992) (consequences for ignoring court order do not turn on propriety of initial order).
Moreover, if the prior orders were erroneous, as AAN asserts, the FEC was free to seek appellate
review. It did not, and its failure to conform with the Court's declarations satisfies all
preconditions for a suit here.
[8] Additionally, the panel's *CHGO* decision conflicts with earlier precedent that held that a
discretionary dismissal by the Commission was *per se* contrary to law. *See Chamber of
Commerce of the U.S. v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995) (holding the agency's "refusal
to enforce" based only on "the Commission's unwillingness to enforce its own rule" is an "easy"
case of a "contrary to law" action); *see also Democratic Cong. Campaign Comm. v. FEC*, 831
F.2d 1131, 1134–35 & n.5 (D.C. Cir. 1987) (holding purpose of § 30109(a)(8)(C) review is to
check an "unwilling" agency). As the earlier decision, *Chamber of Commerce* controls. *Sierra
Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011).

regarded as campaign activity, AAN's major purpose is not the nomination or election of a federal candidate. Accordingly, AAN is not a political committee.

*Statement of Reasons of Chairman Lee E. Goodman and Comm'rs Caroline C. Hunter and Matthew S. Petersen* 21, MUR 6589 (July 30, 2014), https://bit.ly/2FZyL7b ("AAN SoR I"); *see also id.* at 1. They reached that firm conclusion in the course of a thirty-four-page statement, containing fifteen pages of factual and legal analysis, discussing dozens of judicial precedents, statutes, and regulations. *Id.* at 2–16; *see also CREW I*, 209 F. Supp. 3d at 84 ("To reach those conclusions [about the political committee allegations], the Commissioners made two key analytical decisions."); *cf. CREW v. FEC*, 236 F. Supp. 3d 378, 389 (D.D.C. 2017) (underlying *CHGO* decision, recognizing three commissioners "did not resolve the political committee issue"). Those statements leave no room for any discretion: dismissal turned entirely on their legal conclusions concerning AAN's status as a political committee.

Similarly, the second statement of reasons "conclude[d] that AAN was not a political committee under the Act and Commission regulations because it did not have as its major purpose the nomination or election of candidates." *Statement of Reasons of Chairman Matthew S. Petersen and Comm'rs Caroline C. Hunter and Lee E. Goodman* 2, MUR 6589R (Oct. 19, 2014), https://bit.ly/2FZzmpr ("AAN SoR II"); *accord id.* at 18. Once again, this is a legal conclusion that the commissioners reached based on their interpretation of governing legal authority as applied to the facts, *see id.* at 6 n.23 (interpreting *McConnell v. FEC*, 540 U.S. 93 (2003)). Far from having to "teas[e] out" some legal interpretation from a discretionary decision, the controlling commissioners' legal interpretations are front and center. *Cf. CHGO*, 892 F.3d at 442.

Despite this, AAN insists that all of this discussion and analysis was merely dicta, asserting that the *real* reason for dismissal is found in a footnote in the first statement of reasons:

18

a single sentence referencing prosecutorial discretion. *See* AAN SoR I at 24 n.137. This thin

reed—a passing reference so inconsequential as not to be repeated in the second statement of

reasons, *see generally* AAN SoR II—simply cannot bear the weight AAN places on it.[9] First, as

noted, given the controlling commissioners' firm conclusion on the merits questions, there was

simply no role discretion could play in resolving the matter. Second, the referenced statement

only noted that the controlling commissioners' constitutional doubts "militate in favor of a

cautious exercise of prosecutorial discretion," AAN SoR I 24 n.137, which at most indicates that

prosecutorial discretion could *conceivably* warrant dismissal, not that the controlling

commissioners' were invoking it to it to justify their actions. Third, this "terse" reference fails to

"meet the standard of reasoned agency decision-making" needed even to invoke prosecutorial

discretion. *Robertson v. FEC*, 45 F.3d 486, 493 (D.C. Cir. 1995); *see also Antosh v. FEC*, 599 F.

Supp. 850, 853 (D.D.C. 1984) (holding "meekly" asserted grounds do not adequately explain

agency action).[10]

　　　AAN similarly misconstrues another footnote in which this Court discussed the FEC's

prosecutorial discretion in *CREW I*. AAN Mem. 21. Rather than suggesting the FEC's dismissal

---

[9] This fact alone precludes AAN's argument, as AAN cannot obtain review of a superseded agency statement. *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1353 (D.C. Cir. 2014). Moreover, it was a declaration concerning the second statement of reasons with which the FEC failed to conform, giving rise to this citizen suit, and thus the first statement is irrelevant.
[10] While the second statement purported to "incorporate by reference" that first statement "on all points except for aspects deemed contrary to law," AAN SoR II at 2, that would not work to incorporate the reference to discretion. As explained herein, the only stated possible basis for that discretion was the commissioners' "constitutional doubt" about treating AAN's electioneering communications as intending to influence elections. AAN SoR I at 24 n.137. This Court held however, that those constitutional doubts rested on impermissible interpretations of law, and thus found those doubts were contrary to law. *CREW I*, 209 F. Supp. 3d at 90 (finding commissioners' constitutional concerns "inapposite in the disclosure context"). Consequently, as the basis for this purported discretion was contrary to law, the second statement of reasons did not incorporate it by its own terms.

was an exercise of prosecutorial discretion, this Court rejected the FEC's argument that its prosecutorial discretion justified dismissal—regardless of the reasons actually given. *See CREW I*, 209 F. Supp. 3d at 88 n.7 (addressing FEC's "assert[ion] that 'the challenged dismissal decisions are independently justified by the Commission's broad prosecutorial discretion'"). This Court appropriately concluded that prosecutorial discretion deserved only this brief reference; the Court's decisions addressed the actual basis for dismissal—the Commissions' legal conclusions—in the substance of its two thorough analyses.

In sum, as this Court twice previously recognized, and as any faithful reading of the statements of reasons shows, the controlling commissioners "declin[ed] to bring an enforcement action on the basis of [their] interpretation of [the law]." *CHGO*, 892 F.3d at 441 n.11. As such, the statements of reasons were appropriate subjects of judicial review.

### B. To the Extent Prosecutorial Discretion Played Any Role, it was Based Solely on the Controlling Commissioners' Interpretations of Law and Thus Still Reviewable.

Even assuming prosecutorial discretion played any role in the dismissal, that discretion was not premised on unreviewable prudential concerns, but rather on a legal interpretation. Accordingly, the dismissals, even if discretionary, were properly subject to review.

In *Chaney*, the Supreme Court explained the type of discretionary judgments that preclude judicial review:  those involving a "balancing of a number of factors which are peculiarly within [an agency's] expertise," such as whether "resources are best spent on this violation or another" or whether "enforcement action requested best fits the agency's overall policies." *Chaney*, 470 U.S. at 831; *accord CHGO*, 892 F.3d at 439 n.7. These types of analyses leave courts without "'judicially manageable standards'" to apply. *Chaney*, 470 U.S. at 830; *accord CHGO*, 892 F.3d at 441.

20

In contrast, where a purported prudential concern supporting discretion is "not independent of an on-the-merits assessment," courts treat the decision as one involving reviewable law. *Regents of the U. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 495–500 & n.14 (9th Cir. 2018). "[B]ecause such an assertion would depend (at least in part) on the correctness of the agency's view of [the law], it would be unlike the independent discretionary ground that triggered the presumption of unreviewability in *Chaney* itself." *NAACP v. Trump*, 298 F. Supp. 3d 209, 233 (D.D.C. 2018). Thus, "the *Chaney* presumption [of nonreviewability of nonenforcement actions] does not apply" where the purportedly discretionary action is based on an interpretation of law. *Regents*, 908 F.3d at 499.[11]

Here, the only basis for "prosecutorial discretion" provided was the commissioners' "constitutional doubts." AAN SoR I 24 n.137. Rather than a "facto[r] which [is] peculiarly within [the FEC's] expertise," *cf. Chaney*, 470 U.S. at 831, the Constitution is well within the expertise of the judiciary, *Pub. Citizen v. Burke*, 843 F.2d 1473, 1478 (D.C. Cir. 1988), and interpretations of it are reviewable "interpretation[s] of [law]," *CHGO*, 892 F.3d at 441 n.11; *see also CREW I*, 209 F. Supp. 3d at 90 (reviewing commissioners' constitutional doubts and finding them erroneous). Thus, even assuming prosecutorial discretion played any role in the dismissal, it rested on interpretations of law and were thus reviewable. *CHGO*, 892 F.3d at 441 n.11.

---

[11] Although a court may not "teas[e] out" a reviewable legal ruling from a statement resting "squarely on the ground of prosecutorial discretion," *CHGO*, 892 F.3d at 439, 442, a court equally does not ignore a statement squarely resting on reviewable legal judgments merely because they are couched in the language of prosecutorial discretion. Further, while *Regents* and *NAACP* considered a general agency policy rather than "single-shot nonenforcement decisions," for which *Chaney* typically bars review, *see, e.g.*, *Regents*, 908 F.3d at 499 n.13; *NAACP*, 298 F. Supp. 3d at 229, here, the single shot nonenforcement decision is expressly made reviewable by the FECA. 52 U.S.C. § 30109(a)(8)(A). Rather, what makes a particular nonenforcement decision unreviewable under *CHGO* is only the reason given for that nonenforcement decision. *CHGO*, 892 F.3d at 441 n.11. *Regents* and *NAACP* demonstrate that a given reason is still reviewable, even if couched in terms of discretion.

C.      **The FEC's Abdication of Enforcement of the FECA's Political Committee
        Law also Justified Judicial Review.**

Finally, even assuming, despite all evidence to the contrary, that prosecutorial discretion

played a material role, and further assuming that it rested on nonreviewable prudential judgments

rather than reviewable legal interpretations, judicial review of the prior two dismissals was

nonetheless appropriate because the FEC has abdicated enforcement of the FECA's political

committee status laws. *CHGO*, 892 F.3d at 440 n.9 (permitting review of wholly discretionary

nonenforcement decision if it is part of agency's general abdication of enforcement). Since 2012,

non-reporting entities have spent more $870 million to influence federal elections. *See Outside

Spending by Nondisclosing Groups, Cycle Totals, Excluding Party Committees*,

OPENSECRETS.ORG, https://bit.ly/2EcD0dz (last visited Dec. 5, 2018). Nonetheless, during that

time, the Commission did not find a single group that should have registered as a political

committee, even among the approximately sixty-four cases before the agency pressing the

issue.[12]

The FEC has achieved this remarkable ineffectuality because the controlling

commissioners have "consciously and expressly adopted a general policy" not to enforce the

FECA's political committee requirements, *CHGO*, 892 F.3d at 440 n.9, but rather to impose an

impermissibly narrow interpretation that effectively ensures the FEC never finds an organization

is a political committee if it chooses not to register as one, *see, e.g.*, AAN SoR I (considering

only independent expenditures to exclusion of all other political activities, imposing a lifetime of

spending test). This policy "amount[s] to an abdication of [the controlling commissioners']

---

[12] FEC matters may be reviewed on the FEC's website at https://bit.ly/2BQmtK3. Matters
concerning political committee allegations may be found by searching for matters involving 52
U.S.C. § 30103.

statutory responsibilities." *CHGO*, 892 F.3d at 440 n.9. Consequently, their failure to enforce the

FECA's political committee rules are reviewable, even if any single dismissal is purportedly

based on discretionary factors.

## IV.    CREW's Claims Are Properly Before This Court

CREW's allegations here are straightforward:  that AAN became a political committee

"as early as July 23, 2009 and no later than May 6, 2010," and yet, since that time, has "failed to

register as one with the FEC" and "has failed to file any of [the required disclosure] reports with

the FEC." Compl. ¶¶ 75, 90. That is the same violation involved in the original complaint CREW

brought to the FEC. Compl. ¶ 66. In support of that allegation, CREW includes extensive factual

allegations detailing AAN's reported spending on express advocacy and electioneering

communications, and that AAN's continued behavior demonstrating AAN's violation continues

to this day. *See* Compl. ¶¶ 36–65.[13]

Directing the Court's attention from the totality CREW's of allegations, and ignoring the

rule that a plaintiff's complaint is to be viewed as a "whole," *Matrixx Initiatives, Inc. v.

Siracusano*, 563 U.S. 27, 47 (2011), AAN creates a false dichotomy between what occurred

before June 2011 and what occurred after June 2011. *See also Ciralsky v. C.I.A.*, 689 F. Supp. 2d

141, 159 (D.D.C. 2010) ("After review and consideration, the Court concludes that Claims XV

and XVI rest upon inferences that plausibly flow from the factual allegations laid out in the

---

[13] Though AAN faults CREW for not laying out with specificity its post 2010 campaign-related expenditures, such specificity is not required. AAN's making campaign-related expenditures is a factual allegation, not a legal one. *Cf.* AAN Mem. 27 (asserting courts "do not assume the truth of legal conclusions"). If any additional specific is required, the court may take judicial notice of AAN's public filings, which show AAN's continued work to influence federal elections. FEC, *Independent Expenditures, American Action Network*, https://bit.ly/2UblDil (last visited Dec. 5, 2018); *see Covad Comm. Co.*, 407 F.3d at 1222 (court may take "judicial notice of facts on the public record").

claims themselves as well as the complaint as a whole. Whether those inferences may turn out to be unfounded is irrelevant at this stage; what matters is only that Plaintiff has pled those claims sufficiently."). AAN bifurcates the complaint, misconstruing CREW's allegations to suggest temporally distinct claims about AAN's political committee status before June 2011 that AAN claims are time-barred and after June 2011 that AAN claims are unexhausted. But AAN's arguments rest on a false premise—that its violation of the FECA, starting as early as 2009 when it first failed to register and report as a political committee, is a different claim from its continuing and current violation of those same provisions.

The violation here is singular. AAN's actions caused AAN to become a political committee no later than 2010 when it surpassed the statutory threshold. Compl. ¶¶ 39, 41; 52 U.S.C. § 30101(4). AAN was not excused from reporting because, by devoting most of its funds that year to electioneering, its actions demonstrate its major purpose at that time was to elect or defeat federal candidates. Compl. ¶¶ 51–60; *CREW II*, 299 F. Supp. 3d. at 96–97 (stating proper interpretation of major purpose test treats electioneering communications like AAN's as indicative of a purpose to elect or defeat federal candidates); *CREW I*, 209 F. Supp. 3d at 94 (group's "extensive" spending may prove its major purpose is to elect or defeat candidates). Thus, AAN was and is subject to continuing registration and reporting obligations, which would continue until such time as it ceased making campaign-related expenditures and accepting contributions, and it terminates its status with the FEC. 52 U.S.C. §§ 30103(d)(1), 30104. AAN did not (and could not) terminate its status and thus remains subject to those continuing obligations, but it has never complied with them. Compl. ¶¶ 61–64. CREW's claim as to that single unlawful course of conduct is timely, it is the same violation CREW put to the FEC, and the claim is properly before this Court.

24

AAN also ignores a glaring practical concern. The time gap between (1) the filing of a complaint before the FEC and (2) the statutory entitlement to file a civil suit, where a court has declared that the FEC has acted contrary to law, will always be significant. Congress could not have intended, by providing a statutory private right of action, to hinder civil plaintiffs from advancing FECA claims that include the defendant's continuing violations in the interim. And CREW could not have filed suit before April 2018 given the requirements of the statute.

### A.    CREW's Claims are Not Time-Barred.

AAN asserts that any allegations related to AAN's conduct prior to June 2011 are time-barred by the FECA's five-year statute of limitations for government enforcement, 28 U.S.C. § 2462. AAN's argument suffers from a number of flaws, however, and it fails to meet its "'heavy burden' to show that the complaint is time-barred." *Ashbourne v. Hansberry*, 302 F. Supp. 3d 338, 348 (D.D.C. 2018). As a preliminary matter, AAN's argument assumes, without citation to authority, that the governing statute of limitations is 28 U.S.C. § 2462. But that statute applies only to "*governmental* actions for the assessment of 'civil penalties.'" *FEC v. Nat'l Right to Work Comm., Inc.*, 916 F. Supp. 10, 13 (D.D.C. 1996) (emphasis added); *Erie Basin Metal Prods., Inc. v. United States*, 138 Ct. Cl. 67, 75 (1957) ("The limitation of section 2462 applies only to actions instituted by the Government."). This, however, is not a governmental action. As AAN bears the burden on this point, its failure to identify an applicable statute of limitations dooms its argument before it even starts.

Even were § 2462 applicable, CREW's claims did not accrue more than five years ago because: (1) AAN's violations are continuing and thus no statute of limitations has begun to run on them, and (2) any statute of limitations as to CREW, rather than the FEC, could only have begun to run when CREW had "a complete and present cause of action," *Wallace v. Kato*, 549

U.S. 384, 388 (2007), which occurred no earlier than April 19, 2018, when the FEC failed to

conform with the Court's order in *CREW II*. Finally, even had CREW's claim accrued more than

five years ago, AAN fails to show the equitable relief CREW seeks would be barred.

### 1.     AAN's Violations are Continuous.

AAN's status as a political committee began as early "as early as July 23, 2009 and no

later than May 6, 2010," Compl. ¶ 75, and once it became a political committee, its status cannot

legally change unless it complies with the termination provisions of the FECA, 52 U.S.C.

§ 30103(d). Its continuing political committee status obligated AAN to file continuous disclosure

reports, and supplement or correct any missing or erroneous prior reports. *Id.* at § 30104; FEC,

Filing Amendments, https://bit.ly/2EbVUkU (last visited Dec. 5, 2018) ("The committee must

file an amended report if it: [d]iscovers that an earlier report contained erroneous information,

[or] [d]oes not obtain all of the required information concerning a particular transaction"); *see

also* FEC, AO 1999-33 at 3 (MediaOne PAC) (Jan. 28, 2000) (political committee "must amend"

prior erroneous reports that omitted contributor information). AAN's obligation to do so also

continues until it lawfully terminates. 52 U.S.C. § 30103(d).

Where a party's obligation is continuing, "a party can continue to violate it until that

obligation is satisfied and the statute of limitations will not begin to run until it does." *Earle v.

D.C.*, 707 F.3d 299, 307 (D.C. Cir. 2012) (a continuing obligation exists where "the text of the

pertinent law imposes a continuing obligation to act or refrain from acting"). A violation of the

FECA's political committee registration and reporting obligations is a continuing one. *See

CREW*, 236 F. Supp. 3d at 391–92 (recognizing expiration of time for pursuing one-time

"expenditure-based violations" for failure to file independent expenditure and electioneering

communication reports did not apply to "[t]he remaining political-committee claim"); *FEC v.*

*Club for Growth*, 432 F. Supp. 2d 87 (D.D.C. 2006) (considering lawsuit brought in September 2005 for failure to register as political committee in August 2000[14]); *see also SpeechNow.org v. FEC*, 599 F.3d 686, 691 (D.C. Cir. 2010) (political committee obligations are "continuous"); *CREW I*, 209 F. Supp. 3d at 91 (same).[15]

Accordingly, an applicable statute of limitations cannot run on AAN's political committee violations until AAN ceases to violate the FECA by either fulfilling its past obligations and reporting, or ceasing its political activities and terminating its status. Because AAN has done neither, *see* Compl. ¶¶ 85, 90, no statute of limitations has begun to run on CREW's claims against AAN.[16]

### 2. CREW's Claims Could Not Accrue Before April 19, 2018.

Under the FECA, CREW only obtained the right to sue AAN on April 19, 2018, when the FEC failed to conform with this Court's declaration in *CREW II*, 299 F. Supp. 3d at 101, within thirty days of the Court's order. 52 U.S.C. § 30109(a)(8)(C). Accordingly, any statute of limitations that might run on CREW's claim did not begin to run until April 19, 2018 at the earliest. CREW filed the instant suit four days later, on April 23, 2018. *See* Compl.

"In common parlance a right accrues when it comes into existence." *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013) (*quoting United States v. Lindsay*, 346 U.S. 568, 569 (1954)). "Thus

---

[14] *See* Consent Judgment ¶ 2, *FEC v. Citizens Club for Growth, Inc.*, No. 1:05-cv-01851-RLW (D.D.C. Sept. 6, 2007).

[15] *Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370, 1380 (D.C. Cir. 1980) ("[A] nondisclosure violation is continuing one."); *CityFed Fin. Corp. v. Office of Thrift Supervision*, 919 F. Supp. 1, 6 (D.D.C. 1994).

[16] Even assuming the obligations are iterative, rather than continuing, that would not bar CREW from seeking relief from AAN's failure to file required reports within the applicable statutory time-frame. *SEC v. e-Smart Techs., Inc.*, 31 F. Supp. 3d 69, 88 (D.D.C. 2014) ("Each time e-Smart and Defendants filed a new 10–KSB, they made their misrepresentations anew, violated the statute anew, and exposed themselves to liability anew.").

the 'standard rule' is that a claim accrues 'when the plaintiff has a complete and present cause of action.'" *Id.* (quoting *Wallace*, 549 U.S. at 388); *see also, e.g.*, *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997); *Clark v. Iowa City*, 20 Wall. 583, 589 (1874). "[T]hat is when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 549 U.S. at 388.

CREW could not have filed suit against AAN until such time as it exhausted its administrative remedies; the FEC declined enforcement; CREW sought judicial review and won; and the FEC failed to conform with the Court's judgment. 52 U.S.C. § 30109(a)(8)(C). Any suit brought before that time would have been dismissed as outside the jurisdiction of the courts. *See Stockman v. FEC*, 138 F.3d 144, 153 (5th Cir. 1998) (dismissing on jurisdictional grounds suit brought before exhaustion of provisions of § 30109). In other words, the only time at which CREW could "file suit and obtain relief" was on or after April 19, 2018. *Wallace*, 549 U.S. at 388.

AAN provides no reason to conclude CREW had a legal right to sue and obtain relief prior to April of this year. Rather, AAN argues that FEC administrative proceedings do not toll the statute of limitations. AAN Mem. 33. Yet AAN cites only authority discussing the effect of the FEC's administrative proceedings on the deadline for the *FEC* to file suit. It cites *FEC v. Nat'l Republican Senatorial Comm.*, 877 F. Supp. 15 (D.D.C. 1995), but there the court was discussing whether 28 U.S.C. § 2462 applies to FEC enforcement actions, *id.* at 18–19. Similarly, *National Right to Work Committee* considered the application of the statute of limitations to an FEC enforcement action. 916 F. Supp. at 14. *FEC v. Williams*, 104 F.3d 237 (9th Cir. 1996), as its title suggests, is the same, *id.* at 239. Of course, the FEC can sue and obtain relief "[i]mmediately upon the violation," *3M Co. v. Browner*, 17 F.3d 1453, 1460 (D.C.

Cir. 1994), or at least after following the "minimal time periods statutorily imposed for review and conciliation" by 52 U.S.C. § 30109, *Nat'l Republican Senatorial Comm.*, 877 F. Supp. at 20. In contrast, CREW could not sue before the FEC failed to conform, and the "duration of the administrative efforts" before that period were not "entirely within the control" of CREW. *Cf. Nat'l Right to Work Comm., Inc.*, 916 F. Supp. at 14.[17] Rather than just toll CREW's time to file suit, the administrative proceedings must occur in their entirety before CREW's right to bring suit accrues.[18]

### 3. The Statute of Limitations Would Not Bar Equitable Relief.

Lastly, AAN asserts that § 2462 blocks the equitable relief CREW seeks here, notwithstanding the fact that "statutes of limitations are not controlling measures of equitable relief." *FEC v. Christian Coalition*, 965 F. Supp. 66, 71 (D.D.C. 1997) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)). AAN argues that the relief CREW seeks is not equitable,

---

[17] While CREW could pursue a failure-to-act suit if the Commission failed to proceed expeditiously, *see* 52 U.S.C. § 30109(a)(8)(C), the right to such suit hardly makes the speed of administrative proceedings within CREW's control. The suit does not impose any particular time limit on Commission action, and merely requires the Commission proceed with reasonable speed. *In re Nat'l Cong. Club*, Nos. 84-5701, 84-5719, 1984 WL 148396, at *1 (D.C. Cir. Oct. 24, 1984) (per curiam) (considering whether agency's delay is "unreasonable").

[18] Nor is AAN's discussion of the "discovery rule" applicable. Under the discovery rule, "accrual is delayed until the plaintiff has discovered his cause of action." *Gabelli*, 568 U.S. at 449 (internal quotation marks omitted). While AAN may be correct that the discovery rule does not toll the statute of limitations on FEC enforcement, *but see Williams*, 104 F.3d at 241 (finding only that "elements [of discovery rule were] not met" in FEC enforcement case), that would be because the discovery rule does not generally apply to "Government enforcement actions for civil penalties," *Gabelli*, 568 U.S. at 450. The purpose of government agencies like the FEC is to "root [violations] out, and [they] ha[ve] many legal tools at hand to aid in that pursuit." *Id.* at 451; *see also Williams*, 104 F.3d at 241 (noting FEC reporting obligations are "sufficient to give FEC notice of facts that, if investigated, would indicate the elements of a cause of action" (internal quotation marks omitted)). CREW, however, is in no similar position, and thus as a private litigant enjoys any benefits of the discovery rule. *Gabelli*, 548 U.S. at 450 (distinguishing action brought by government as sovereign, where discovery rule does not apply, and action brought by private parties). Of course, as CREW's claim did not even accrue until April 19, 2018, there is no need to toll any applicable statute of limitations.

but rather punitive, and that even if it is not a penalty, the doctrine of concurrent-jurisdiction would block review. Even assuming § 2462 applied (which it does not), and assuming CREW's claim accrued sometime before its five-year statute of limitations, AAN fails to show that the relief CREW seeks is blocked.

First, CREW is not seeking a "penalty." CREW is seeking to obtain the information that it is owed—a classic equitable remedy that "compensat[es] a victim for [its] loss." *Kokesh v. SEC*, 137 S. Ct. 1635, 1642 (2017); *Meeker v. Lehigh Valley R. Co.*, 236 U.S. 412, 423 (1915) (penalty "do[es] not include a liability imposed for the purpose of redressing a private injury"). Indeed, providing CREW with the information will not "deprive [AAN] of [its] ill-gotten gains," *Kokesh*, 137 S. Ct. at 1643 (discussing disgorgement and why it is a penalty); AAN will lose nothing when it provides to CREW what it is legally entitled. Nonetheless, AAN argues that it is a penalty because the effect of a judgment against it will be to "dete[r] future violators of campaign finance laws." AAN Mem. 30 (internal quotation marks omitted). Yet it is absurd to argue that every form of relief that has a deterrent effect is thereby converted into a punitive penalty: every case where a litigant is successful will have that effect. AAN cites *Kokesh* for this absurdity, but the Court there said nothing of the sort—it recognized that deterrence may be an "incidental effect" of the remedy, and only those remedies where the "*primary* purpose . . . is to deter violations" are punitive. 137 S. Ct. at 1643 (emphasis added). AAN fails to show that the primary purpose of CREW's requested relief is punitive, rather than merely an incidental effect of civil enforcement.

Second, AAN is incorrect that the concurrent-jurisdiction doctrine would bar equitable relief. As a court in this district held, § 2462 "provides no [] shield from declaratory or injunctive relief." *Christian Coalition*, 965 F. Supp. at 71. Further, *Christian Coalition* recognized that

concurrent jurisdiction would not block equitable relief, as that doctrine limits only the "scope of

[equitable] relief sought" when it is "invoked to enforce [a] legal obligation," and does not limit

"a remedy that [is] within the exclusive jurisdiction (i.e., an injunction)." *Id.* at 72. Discussing

*Cope v. Anderson*, 331 U.S. 461 (1947), the court recognized that concurrent-jurisdiction

blocked the equitable power to bring additional defendants into an action for a legal remedy. *Id.*

That is wholly apart from the relief CREW seeks here to redress AAN's injurious actions.[19] *See*

*Russell v. Todd*, 309 U.S. 280, 293 (1940) (permitting plaintiff to seek equitable remedy though

statute of limitations barred legal remedy for same cause). AAN simply cites no authority to

show that CREW is blocked from seeking equitable relief merely because a government agency

may not be able to seek a civil penalty.[20]

In short, AAN cannot show CREW's claim is time-barred. CREW's claim could not have

accrued before April 19, 2018, and AAN's continuing violation of the FECA prevents a statute

of limitations from even running on that date. Finally, even if AAN identified the correct statute

of limitations, and even if it had run, CREW could still obtain equitable relief. Accordingly,

CREW's claims are timely.

### B.   CREW Is Not Limited to Facts Presented to the FEC.

Unable to strike CREW's pre-2011 allegations, AAN argues that this Court may

---

[19] AAN further seeks to cabin the availability of equity to only cases brought by the government. AAN Mem. 31. Of course, § 2462 only applies to actions brought by the government as sovereign, so by assuming it applies here, AAN must assume its exceptions apply equally.

[20] AAN also argues that any sanction is punitive because it seeks to protect "public rights," which once again mistakes the nature of this action. *See supra* Part II.A., B.; *see also infra* pp. 36–38. AAN also asserts the action is punitive because it is backwards-looking and cannot compensate CREW for past injury because CREW did not vote, and thus suffered no injury. For the reasons stated above, that misconceives the nature of CREW's injury, which is cognizable here, and which also seeks a forward-looking remedy. *See supra* Part II.C. Indeed, even disclosure of AAN's 2010 activity has forward looking benefits—beneficiaries of AAN's 2010 spending remain in office and continue to run. *See supra* p. 3.

nevertheless not consider any allegations or facts related to AAN's post-June-2011 conduct, asserting that CREW is limited wholly to litigating the allegations in its "original complaint" to the FEC. AAN Mem. 25 n.5. It argues CREW is stuck with the facts as it knew them in *2012*. *Id.* AAN's arguments are meritless. First, CREW allegations all relate to the "violation involved in the original complaint," 52 U.S.C. § 30109(a)(8)(C), namely AAN's continuing failure to register and report as a political committee, Compl. ¶ 66. Second, AAN cites no authority to support its absurd conclusion that CREW is limited to the *facts* it possessed at the time of its complaint to the FEC, prior to any discovery or judicial action, to support its claim here.

### 1.    This Case Concerns the "Violation Involved in the Original Complaint."

AAN first attempts to argue that the Court must ignore all post-2011 conduct because, it asserts, CREW must only litigate on the basis of its "original complaint." AAN strips these two words of context. The relevant portion of § 30109(a)(8)(C) reads, "the complainant may bring, in the name of such complainant, a civil action to remedy *the violation involved in the original complaint*." 52 U.S.C. § 30109(a)(8)(C) (emphasis added). As a plain reading of § 30109(a)(8)(C) makes obvious, a private complainant is not limited to the exact words of the original complaint, but rather to the legal violation alleged. *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 25 (1989) ("[T]he starting point for interpreting a statute is the language of the statute itself"). The "violation" alleged here of § 30103 and § 30104, and the accompanying FEC regulations, are the same as alleged in CREW's original complaint. Accordingly, they are properly before this Court.

In an attempt to avoid this, AAN cites various authorities that make the unremarkable— and irrelevant—point that a party must exhaust administrative remedies and follow statutory

procedures before a court may entertain its claims.[21] CREW has done that. *See CREW II*, 299 F.

Supp. 3d at 101 ("If the FEC does not timely conform with the Court's declaration, CREW may

bring 'a civil action to remedy the violation involved in the original complaint.'" (citing 52

U.S.C. § 30109(a)(8)(C))).

AAN nonetheless asserts that the only violation alleged before the FEC was a violation

between July 23, 2009 and June 30, 2011. AAN Mem. 24. Yet AAN again ignores the nature of

the claim. CREW alleged AAN violated the FECA because it qualified as a political committee

and yet failed to fulfill its obligations. In support of the claim, CREW pointed to facts in the

public record that show that, no later than sometime between July 23, 2009 and June 30, 2011,

AAN *became* a political committee. AAN Mem. Ex. A ¶¶ 9–18. If AAN "*was* a political

committee between July 23, 2009 through June 30, 2011," AAN Mem. 24 (quoting

administrative complaint, AAN Mem. Ex. A ¶¶ 19, 30), then by operation of law it *is and*

*remains* one after that point unless it qualifies for termination and takes affirmative acts to

terminate. CREW did not allege that AAN terminated its status or that AAN's obligations

ceased; rather CREW's administrative complaint, like the complaint here, necessarily stated a

continuing violation because that is the nature of a political committee violation.

Nor must CREW allege any facts showing AAN became a political committee after June

---

[21] *See* AAN Mem. 23–24 (citing *McNeil v. United States*, 508 U.S. 106, 112 (1993) (interpreting FTCA to "require complete exhaustion of Executive remedies before invocation of the judicial process"); *Hallstrom*, 493 U.S. at 31 (dismissal where failure to comply with statutory notice provision); *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (filing "right to sue" letter than complaint insufficient); *Jordan v. FEC*, 68 F.3d 518, 519 (D.C. Cir. 1995) (failure to file suit within statutory deadline deprived court of jurisdiction); *FEC v. Nat'l Republican Senatorial Comm.*, 966 F.2d 1471, 1474 (D.C. Cir. 1992) (discussing issue court considers in judicial review of FEC action, not FECA citizen suit); *In re Fed. Election Campaign Act Litig.*, 474 F. Supp. 1051, 1053 (D.D.C. 1979) (failure of complainant to follow FECA deprives court of subject matter jurisdiction)).

2011. *Cf.* AAN Mem. 27. AAN's arguments on this point border on incoherent. CREW need not allege AAN is constantly becoming a political committee, or that its major purpose has or has not changed from that point. *Cf. id.* If, as CREW alleges, AAN satisfied the statutory criteria between 2009 to 2010, and AAN had the major purpose at the time to elect federal candidates at that moment, then AAN became a political committee and remains one to this day regardless of its major purpose after 2010. The major purpose test is a limitation on when an organization *becomes* a political committee. *See Buckley*, 424 U.S. at 66; FEC, Political Committee Status, 72 Fed. Reg. 5595, 5601 (Feb. 7, 2007) ("Supplemental E&J") ("[T]he major purpose test serves as an additional hurdle to *establishing* political committee status." (emphasis added)). The FECA, on the other hand, provides the sole means by which an organization, once qualified as a political committee, may then cease to be one. *See* 52 U.S.C. § 30103(d). The Act requires the organization to cease making all expenditures and accepting contributions intended to influence elections, and to file proper paperwork with the FEC. *Id.* Just as in CREW's administrative complaint, CREW does not allege AAN has followed those statutory proceedings.

Because this action concerns the same continuing "violation involved in the original complaint," 52 U.S.C. § 30109(a)(8)(C), it is properly before this Court.

### 2.    CREW is Not Limited to the Facts It Had When It Filed its Administrative Complaint.

Much of AAN's argument boils down to its desire to avoid any additional discovery:  that "[t]his Court . . . must dismiss any *facts* . . . that were not first presented to the FEC." AAN Mem. 23 (emphasis added). AAN cites nothing for this remarkable conclusion. Its theory of the law would deprive civil plaintiffs seeking to protect their rights under the FECA of the traditional tools of discovery by which a plaintiff may develop facts to support its claim. AAN's argument must be rejected.

34

Nothing in the FECA's procedures limit a plaintiff to only the facts that the plaintiff submitted to the FEC, where the civil action seeks to remedy the "violation involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C). As is typical in civil litigation, the plaintiff may use discovery to develop additional facts that support its allegation that a violation occurred. Similarly, the FEC is free (and expected) to conduct an investigation after a complaint into the violation that may, and likely will, turn up additional facts not presented to the agency—the respondent has no right to defend only against the facts alleged in the administrative complaint. *See, e.g., CHGO*, 892 F.3d at 447 (Pillard, J., dissenting) (recounting FEC's investigation into CREW's complaint which revealed further evidence in support of violations, including previously undiscovered statements of purpose). It would severely prejudice a plaintiff to limit them in a civil litigation—where they bear a burden to prove a claim by a preponderance of the evidence—to facts submitted to the FEC to initiate an investigation that only requires establishing a "reason to believe" a violation occurred, *see* 52 U.S.C. § 30109(a)(2), and which requires no showing of injury, exhaustion, or timeliness. That is why courts permit discovery even in actions that require administrative exhaustion. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 n.19 (1973) (noting discovery in aide of Title VII claim subject to exhaustion).

Here, the alleged violation is AAN's failure to register and report as a political committee. CREW is free to litigate that alleged violation based on any facts—whether known to it previously or that may be revealed through the course of discovery—that tend to prove that claim and that would defeat any defense of AAN. Fed. R. Civ. P. 26(b). AAN could qualify as a political committee either because of its expenditures or contributions, 52 U.S.C. § 30101(4), and its major purpose may be established through a wide range facts including but not limited to its

35

expenditures, its solicitations, and its public and private statements of purpose, Supplemental

E&J, 72 Fed. Reg. at 5601–02 (discussing facts that may be relevant, including "spending,"

"public statements," non-public statements "characterize[ing] its activities and purposes" and

"fundraising appeals"). CREW is free to allege, and conduct discovery into, any facts that would

tend to prove the "violation involved in [CREW's] original complaint," 52 U.S.C.

§ 30109(a)(8)(C), even if CREW was not previously aware of them to bring them to the FEC's

attention. CREW's post-2011 allegations go towards showing the violation alleged in CREW's

original complaint is continuing, that its injuries are continuous, and that it has exhausted its

remedies. AAN identifies no basis to dismiss those allegations.

## V.      AAN's Remaining Arguments are Meritless

The remainder of AAN's motion throws the kitchen sink at this action; none of these

arguments have merit either. The long-standing citizen suit provision in the FECA is not

unconstitutional, this action does not create due process concerns, and AAN provides no reason

to revisit the Court's prior judgments.

### A.      AAN's Constitutional Attack on § 30109(a)(8)(C) is Frivolous.

Grasping at straws, AAN attacks the constitutionality of the FECA's 40-year-old citizen-

suit provision, employing novel arguments that it admits have been entirely unsuccessful in other

relevant contexts. AAN asserts that § 30109(a)(8)(C) violates the Constitution's Take Care

Clause, U.S. Const. Art. II, § 3, and the Appointments Clause, U.S. Const., Art II, § 2, cl. 2. Yet,

as with AAN's arguments over redressability, AAN's arguments rest on its fundamental

misunderstanding about the nature of this action:  AAN is being sued by CREW, not the FEC,

and CREW brings this action in its own name, 52 U.S.C. § 30109(a)(8)(C), not as a stand-in for

the FEC (or, for that matter, the United States).

The entire premise of both of AAN's Article II constitutional challenges is that, by reason of this suit, CREW is now an officer of the United States and, further, that CREW is effectively prosecuting a criminal action against AAN. AAN cites only authority addressing the propriety of such situations. For example, AAN cites authority discussing the power to appoint officers of the United States,[22] and authority stating that Congress may not mandate criminal prosecution or place the power to criminally prosecute in the hands other than the executive.[23] But CREW is neither an officer of the United States—it holds no "office established by law" and exercises no final authority, *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2053 (2018)—nor does it seek to criminally prosecute AAN or even to exercise the government's authority to bring civil enforcement actions. Rather, CREW is bringing a suit in its own name to obtain relief for its own injury, just as millions of civil litigants have done before. "Plaintiffs are private actors suing other private actors, traditional grist for the judicial mill." *Spann*, 899 F.2d at 30.

AAN's sole basis for treating CREW otherwise is its insistence that CREW is seeking "to protect the rights of 'the public.'" AAN Mem. 36, *accord id.* at 39. AAN concedes by its silence that CREW is not seeking relief belonging to the United States, *cf. United States ex rel. Kelly v.*

---

[22] AAN Mem. 37–38 (*Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018) (finding SEC judges are officers who must be appointed); *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 485 (2010) (considering congressional power to insulate inferior officers from President); *Printz v. United States*, 521 U.S. 898, 925 (1997) (power to commandeer state officers); *Freytag v. Comm'r*, 501 U.S. 868, 870 (1991) (considering appointment of special trial judges); *Buckley*, 424 U.S. at 126 (Congress could not appoint officers of FEC)).

[23] AAN Mem. 34–35 (*Free Enter. Fund*, 561 U.S. at 485 (officers had power to unilaterally issue "severe sanctions"); *Greenlaw v. United States*, 554 U.S. 237, 246 (2008) (concerning a circuit court's authority to enhance a criminal sentence in the absence of a cross-appeal); *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (acknowledging the "Executive's primacy in criminal charging decisions"); *In re Aiken Cty.*, 725 F.3d 255, 263 (D.C. Cir. 2013) ("[T]he President has clear constitutional authority to exercise prosecutorial discretion to decline to *prosecute* violators" (emphasis added)); *Cmty. for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986) (concerning allegations against federal prosecutors over their decision not to investigate or prosecute certain criminal behavior)).

*Boeing Co.*, 9 F.3d 743, 757 (9th Cir. 1993) (discussing qui tam actions), and instead notes its constitutional concerns derive from the fact that this matter is of public interest and the public may benefit from enforcement. The implications of AAN's arguments are boundless—it would render *all* private civil litigation unconstitutional where the conduct alleged might also give rise to U.S. criminal or civil enforcement sanction—or otherwise "affect[] the interests of the Untied States." AAN Mem. 35. The absurdity of AAN's argument, which would doom, *e.g.*, a wide range of antitrust, securities, and civil-rights cases brought by private plaintiffs, explains its unprecedent nature.

The mere fact that both a governmental agency and a private party litigate a violation of federal law does not render the private party an officer of the United States, even where the government chooses to forgo its own enforcement opportunity in an exercise of prosecutorial discretion, and even where the government enforcement is given preference. Indeed, even where plaintiffs do step into the government's shoes, "[e]nforcement by private attorneys general has become a feature of many modern legislative programs." *Spann*, 899 F.2d at 30. "Congress has recognized the usefulness and the courts have acknowledged the propriety of reliance on an individual or group actually injured, or threatened with injury, to vindicate the public interest." *Id.* "Indeed, such individuals and groups may assert the public interest even when their own interests do not precisely coincide." *Id.*

CREW does not ask to wield some power of government. Rather it seeks relief no different than any other civil litigant: to bring a suit in its own name to remedy a violation of federal law that has caused it injury. The FEC's decision not to seek enforcement does not extinguish CREW's right to protect itself. AAN's assertion that this private litigation is unconstitutional is frivolous.

### B.     This Action Does Not Violate AAN's Due Process Rights.

AAN's other constitutional challenge is also meritless as this action does not violate AAN's due process rights. First, the due process right to fair notice is not implicated by a judicial construction like *Buckley*'s major purpose test. Second, even if it were required, it is easily met here.

As an initial matter, AAN cites no authority for its argument that its lack of fair notice prevents this Court from bringing it into compliance with the law *now* and finally providing CREW what it is owed. *Powell v. Ryan*, 855 F.3d 899, 904 (8th Cir. 2017) (party's lack of fair notice does not immunize them from complying with law in the future). CREW is not asking for any "punishment," *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012): in fact, ordering AAN to correct its (lack of) disclosure deprives it of nothing.[24]

Assuming CREW's requested relief triggers fair notice concerns, AAN also fails to identify any regulation or statute that it purports to be so vague as to fail to "provid[e] person of ordinary intelligence fair notice of what is" required, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010), even though the entirety of its cited authority discusses only notice of such law.[25] Rather, AAN's purported confusion lies with a *judicial* construction: the "major purpose test analysis." *See* AAN Mem. 41. Putting aside the fact that *Buckley* created this analysis to *cure*

---

[24] Further, it is at least questionable whether fair notice applies in any "non-penal context" like this. *GE v. EPA*, 53 F.3d 1324, 1329–31 (D.C. Cir. 1995) (agency could mandate compliance even without fair notice).

[25] *Cf. Fox*, 567 U.S. at 246–48, 254, 257 (agency regulation); *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170 (2007) (agency regulation); *Marks v. United States*, 430 U.S. 188, 196 (1977) (federal statute); *Baggett v. Bullitt*, 377 U.S. 360, 362 (1964) (state statute); *Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1084–85 (D.C. Cir. 1987) (agency regulation); *Satellite Broad. Co. v. FCC*, 824 F.2d 1, 3–4 (D.C. Cir. 1987) (agency regulation); *United States v. Magnesium Corp. of Am.*, 616 F.3d 1129, 1144 (10th Cir. 2010) (agency regulation).

potential vagueness issues in the statute decades ago, *see The Real Truth About Abortion, Inc.* (*"RTAA"*) *v. FEC*, 681 F.3d 544, 555 (4th Cir. 2012) (noting *Buckley* crafted the major purpose test to cure vague statute), AAN cites nothing for its rather novel proposition that a judicial decision can be unconstitutionally vague.

Indeed, on this point, one of AAN's authorities, *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012), is informative, and it demonstrates that AAN's due process rights are not implicated here. In *Christopher*, private litigants sued their employer for back pay. *Id.* at at 151. The plaintiffs sought to rely on a Department of Labor regulation interpreting the law, and as to that regulation the Court found that defendants had not received fair notice. *Id.* But the Court did not thereby dismiss the plaintiffs' suit, as AAN seeks here, but rather it only considered the lack of fair notice in deciding whether to afford the regulation deference. *Id.* at 156. Finding deference was not appropriate, the Court then went on to interpret the statute *itself* without worrying whether the defendant had fair notice of *that* interpretation. *Id.* at 161. In other words, the Court in *Christopher* recognized no due process arose from its judicial interpretation of the statute, whether favorable to the defendants or not.

In contrast, AAN demands here *a priori* notice of this Court's final interpretation of judicial authority. Unlike agency interpretations, however, courts' judicial decisions do not generally raise fair notice concerns because "[i]n resolving ambiguity in statutes or regulations, courts generally adopt the *best* or *most reasonable* interpretation." *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 252 (3d Cir. 2015) (distinguishing between judicial and agency interpretation for due process purposes; stating "[f]air notice is satisfied here as long as the company can reasonably foresee that a court could construe its conduct as falling within the meaning of the statute"). In other words, through the process of this litigation, as well as the two

prior decisions in *CREW I* and *CREW II*, this Court will answer the question about what AAN could have "reliably predict[ed]." *Id.* ("Private parties can reliably predict the court's interpretation by applying the same methods [as courts do].").

Of course, assuming AAN has any right to fair notice about the scope of *Buckley*'s major purpose test, AAN has more than adequate notice of the application of that test to groups like it who devote the majority of their efforts to electing or defeating federal candidates through express advocacy and electioneering communications. AAN has had notice for at least forty years, since *Buckley*, that if its major purpose included "the nomination or election of a candidate," it would be subject to disclosure. 424 U.S. at 79. The requirement was further clarified in 1986, when the Supreme Court stated that an organization may demonstrate its "major purpose" through its actions, and that extensive spending on campaign activity may warrant classification as a political committee. *See FEC v. Mass. Citizens for Life, Inc. ("MCFL")*, 479 U.S. 238, 262 (1986). AAN also knew no later than 2003 that, at least, "the vast majority of [electioneering communications] clearly" have an "electioneering purpose" and the FECA's disclosure rules "apply in full . . . to the entire range of 'electioneering communications.'" *McConnell*, 540 U.S. at 206; *see also RTAA*, 681 F.3d at 557–58 (holding the flexible major purpose test was not unconstitutionally vague under the First Amendment).

In response, AAN only cites the statements of a minority of the Commission, including the members whose statements were found contrary to law in *CREW I* and *CREW II*. AAN Mem. 41. Those statements, however, are "not law" and provide no "binding legal precedent or authority" to guide future cases upon which a party could reasonably rely, *Common Cause v. FEC*, 842 F.2d 436, 450, 449 n.32 (D.C. Cir. 1988). AAN cites nothing to show that it could reasonably rely on the idiosyncratic views of individual commissioners who did not represent the

FEC and whose analysis "blinks reality." *CREW I*, 209 F. Supp. 3d at 93.[26]

AAN easily had sufficient notice of what the courts required. Indeed, the notice to AAN easily surpasses the legal requirements necessary even for *criminal* statutes that curtail First Amendment rights:  that the rules provide "reasonable specificity." *United States v. Thomas*, 864 F.2d 188, 195 (D.C. Cir. 1988) (holding that, even in criminal context for First Amendment activities, "a person contemplating a course of behavior [need not] know with certainty whether his or her act will be found to violate the proscription"); *see also Holder*, 561 U.S. at 18–19 (law need only "provid[e] person of ordinary intelligence fair notice of what is" required). Of course, here, AAN is not being criminally prosecuted, and the disclosure rules "do not prevent [AAN] from speaking," *Citizens United v. FEC*, 558 U.S. 310, 366 (2010), so AAN has no right to even that level of specific notice.

AAN had more than fair notice that its decision to spend millions to influence the 2010 elections through a mixture of express advocacy and electioneering communications would subject it to disclosure. AAN "deliberately [went] perilously close to an area of [regulated] conduct [and thus] shall take the risk that [it] cross[ed] the line." *Throckmorton v. Nat'l Transp. Safety Bd.*, 963 F.2d 441, 444–45 (D.C.Cir.1992).

### C.     AAN Provides No Reason for This Court to Revisit its Prior Judgments.

In *CREW I* and *CREW II*, this Court found that AAN could qualify as a political committee based on the amounts is spent on express advocacy and electioneering communications in 2010 and 2011. *CREW II*, 299 F. Supp. 3d at 97; *CREW I*, 209 F. Supp. 3d at 92, 94. AAN fills out its brief with a litany of meritless attacks on those judgements and with

---

[26] AAN also cites regulatory guidance that put it on notice that the FEC could employ a "flexibl[e]" "case-by-case analysis" that could deem it to be a political committee without warning. AAN Mem. 5 (quoting Supplemental E&J, 72 Fed. Reg. at 5601).

arguments foreclosed by them.

First, AAN concedes that it has nothing new to add with respect to the central question at issue in *CREW I* and *CREW II*: whether its electioneering communications indicate it had a major purpose in 2010 and 2011 of electing federal candidates. AAN Mem. 43, 44. For the reasons well stated in this Court's prior judgments, AAN's contentions remain meritless.

AAN also wrongly asserts that this Court must afford deference to the FEC's interpretations of the relevant legal standards. AAN Mem. 42, 44. As the Court explained in *CREW I*, no deference is justified on the relevant question here—the meaning and application of *Buckley*'s major purpose test. 209 F. Supp. 3d at 87; *see also Akins*, 101 F.3d at 741 (stating "how the major purpose test applies" is the same as interpreting *Buckley*, and thus not to be afforded deference).

AAN also continues its error in assuming CREW is limited to litigating the administrative complaint below. Rather, the FEC's failure to conform permits CREW to bring "a civil action to remedy the *violation* involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C) (emphasis added). For the reasons stated above, CREW is not limited to the facts as they existed at the time of CREW's complaint. *See supra* Part IV.B.2.

AAN also argues—contradicting its earlier arguments here confining CREW's claim to a short time frame—that CREW may not establish its political committee status based on its activities in a single year. Of course, to the extent CREW must allege activity beyond a single year to establish that violation, then CREW's allegations about AAN's activities since 2011 are relevant here. Nonetheless, AAN cites nothing to support its assertion that political committee status could never be established by an organization's activities in a single year, and thus it fails to show how CREW's allegations are legally insufficient to state a claim. *See FEC v. Malenick*,

310 F. Supp. 2d 230, 237 (D.D.C. 2004) (group's major purpose "in 1996" qualified it as a political committee).

AAN's final attack on the merits here is that, by failing to allege AAN made public statements confessing to its major purpose, CREW somehow committed a "fatal" error. Yet AAN cites nothing to support its wild conclusion that signed confessions (or for that matter, any detailed allegations concerning public statements) are legally necessary to state a claim for a violation of the FECA's political committee rules. Rather, the law is clear that an organization's activities *alone* can subject it to political committee status. *See MCFL*, 479 U.S. at 262 (stating group would become a political committee when its spending on elections became "extensive[]," without requiring any confirmation in a public statement); 72 Fed. Reg at 5604 (laying out "Expenditure Path to Political Committee Status"); *cf. Free Speech v. FEC*, 720 F.3d 788, 797–98 (10th Cir. 2013) (finding extensive spending was not necessary for political committee status, but sufficient for it); *RTAA*, 681 F.3d at 557 (same). Indeed, this Court recognized AAN could qualify as a political committee despite the fact that the FEC found no public statements from AAN indicating its political purpose. *CREW I*, 209 F. Supp. 3d at 95. CREW need not allege AAN made or did not make revealing public statements in order to state its claim here. Of course, any such statement would further indicate AAN's major purpose, and to the extent AAN has made them, CREW is entitled to receive them in discovery.[27]

---

[27] Finally, AAN's request to strike CREW's request for attorney's fees is premature and would not result in dismissal of the action in any event. AAN cannot show there is no set of circumstances under which this Court may award fees in the course of this litigation, either as a result of its inherent equitable powers, *see, e.g.*, *Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 590 F.2d 1171, 1176 (D.C. Cir. 1978), or other various federal statutes, including 52 U.S.C. § 10310 (authorizing fees "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment").

**CONCLUSION**

For the reasons stated above, CREW respectfully requests the Court deny AAN's motion to dismiss.


Dated:  December 5, 2018

    Respectfully submitted,


/s/ Stuart McPhail
Stuart C. McPhail (D.C. Bar No. 1032529)          Sathya S. Gosselin (D.C. Bar # 989710)
smcphail@citizensforethics.org                    sgosselin@hausfeld.com
Laura C. Beckerman (D.C. Bar No. 1008120)         Seth R. Gassman (D.C. Bar #1011077)
lbeckerman@citizensforethics.org                  sgassman@hausfeld.com
Adam J. Rappaport (D.C. Bar No. 479866)           HAUSFELD LLP
arappaport@citizensforethics.org                  1700 K Street NW, Suite 650
CITIZENS FOR RESPONSIBILITY AND                   Washington, DC 20006
    ETHICS IN WASHINGTON                          Telephone: (202) 540-7200
1101 K Street N.W.                                Facsimile: (202) 540-7201
Washington, DC 20005
Telephone: (202) 408-5565
Fax: (202) 588-5020


                                                  *Counsel for Citizens for Responsibility and*
                                                  *Ethics in Washington*