UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>  Plaintiff,<br><br>  v.<br><br>AMERICAN ACTION NETWORK,<br><br>  Defendant. | Case No. 18-cv-945 (CRC) |

### MEMORANDUM OPINION

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brought this action under the citizen-suit provision of the Federal Election Campaign Act ("FECA"), claiming that defendant American Action Network ("AAN") violated FECA by operating as an unregistered political committee. In 2019, the Court denied AAN's motion to dismiss the suit. AAN now moves for reconsideration of that ruling, arguing that an intervening D.C. Circuit decision prohibits the Court from reviewing CREW's claim. See CREW v. FEC ("New Models"), 993 F.3d 880 (D.C. Cir. 2021). Although the Court stands by its prior reasoning, it agrees that New Models precludes review. Bound by that decision, the Court will grant AAN's motion and dismiss the suit.

I.   **Background**

The Court has recounted the decade-long procedural history of this case in three prior opinions. See CREW v. FEC ("CREW I"), 209 F. Supp. 3d 77 (D.D.C. 2016) (finding the initial dismissal of CREW's complaint against AAN "contrary to law," and remanding to the Commission); CREW v. FEC ("CREW II"), 299 F. Supp. 3d 83 (D.D.C. 2018) (finding the second dismissal of CREW's complaint contrary to law, and again remanding to the

Commission); CREW v. AAN ("CREW III"), 410 F. Supp. 3d 1 (D.D.C. 2019) (largely denying AAN's motion to dismiss CREW's citizen suit, which is the opinion and order now under reconsideration); see also CREW v. AAN ("CREW IV"), 415 F. Supp. 3d 143 (D.D.C. 2019) (denying AAN's request to certify an interlocutory appeal). The Court will limit its recitation here to the background bearing on AAN's present motion.

In 2012, CREW filed an administrative complaint with the Federal Election Commission alleging that AAN had been operating as an unregistered political committee in violation of FECA.[1] CREW based its complaint on AAN's expenditure of close to $18 million on political advertisements (nearly two-thirds of its total spending) over a two-year period straddling the 2010 midterm elections. The administrative complaint contended that the content of these AAN-sponsored ads indicated that the organization's "major purpose" was federal election activity—a finding that would have required AAN to register as a political committee under FECA and comply with the statute's attendant disclosure obligations. See CREW III, 410 F. Supp. 3d at 9.

The FEC's Office of General Counsel urged the Commission to open an investigation into CREW's allegations. But the agency's six Commissioners deadlocked 3-3 on whether to investigate, resulting in the dismissal of the administrative complaint. As required by FECA, the so-called "controlling Commissioners"—those who had voted against further investigation—drafted a lengthy Statement of Reasons explaining their decision to deep-six the case. See CREW v. FEC ("CHGO"), 892 F.3d 434, 437–38 (D.C. Cir. 2018) (explaining that, "for purposes of judicial review," the statement of reasons from controlling Commissioners is "treated as if they were expressing the Commission's rationale for dismissal").

---

[1] The documents and other information from the agency proceedings in this matter, including the administrative complaint and statements of reasons, can be found on the FEC's website: https://www.fec.gov/data/legal/matter-under-review/6589/.

2

In sum, the Commissioners reasoned that appellate precedent applying the First Amendment to political advertising required the Commission to treat a large portion of AAN's ads—those comprising so-called "electioneering communications" that are broadcast shortly before an election—as "genuine issue advocacy," and to categorically exclude expenditures on those ads from its assessment of AAN's status as a political committee. See generally In re Am. Action Network, Inc., Statement of Reasons of Chairman Lee E. Goodman and Commissioners Caroline C. Hunter and Matthew S. Petersen ("First Statement of Reasons"), MUR No. 6589 (July 30, 2014).[2] In one of the statement's 153 footnotes, the controlling Commissioners added that "constitutional doubts" stemming from their legal analysis "militate in favor of cautious exercise of [their] prosecutorial discretion." Id. at 23–24 n.137. They echoed this concern in the concluding paragraph of the statement, summarily noting that they were also voting against an investigation "in exercise of our prosecutorial discretion." Id. at 27.

FECA permits a rebuffed complainant to challenge a Commission dismissal as "contrary to law" through a suit against the agency in district court. 52 U.S.C. § 30109(a)(8)(C). CREW did just that, and AAN intervened. The Court granted summary judgment for CREW, finding that the controlling Commissioners' blanket treatment of all electioneering communications as genuine issue advocacy was contrary to FECA and the vast weight of applicable precedent. CREW I, 209 F. Supp. 3d at 92–93. The Court therefore remanded the case to the Commission with instructions to consider the content of the individual ads at issue in assessing AAN's status as a political committee. Id. at 95.

On remand, the Office of General Counsel again recommended initiating an investigation, and the Commission again deadlocked, leading to a second dismissal. A new

---

[2] Available at https://www.fec.gov/files/legal/murs/6589/14044362004.pdf.

Statement of Reasons issued by the same three controlling Commissioners analyzed the ads individually, as the Court had instructed. In re Am. Action Network, Inc., Statement of Reasons of Chairman Matthew S. Peterson and Commissioners Caroline C. Hunter and Lee E. Goodman ("Second Statement of Reasons"), MUR No. 6589R (Oct. 19, 2016).[3] It nonetheless concluded that most of the ads did not evince an election-related purpose as measured against the Commissioners' analysis of applicable legal standards. The new statement nowhere mentioned prosecutorial discretion. CREW challenged the second dismissal, and the Court again found the dismissal contrary to law and remanded the matter to the agency. This time, however, the Commission failed to take any further action within 30 days of remand, as FECA requires. See CREW III, 410 F. Supp. 3d at 11 (citing 52 U.S.C. § 30109(a)(8)(C)). That delay gave CREW the right to sue AAN directly under FECA's citizen-suit provision, which in did in April 2018. 52 U.S.C. § 30109(a)(8)(C).

AAN moved to dismiss CREW's citizen suit on a host of grounds. As relevant here, AAN argued that the suit was unreviewable because the controlling Commissioners indicated (albeit briefly) in their first Statement of Reasons that prosecutorial discretion played a part in their decision to dismiss CREW's original complaint. In advancing this argument, AAN relied heavily on a then-recent ruling by a divided D.C. Circuit panel, which found an FEC dismissal of an administrative complaint based on prosecutorial discretion to be beyond to judicial review. See CHGO, 892 F.3d 434. Finding AAN's reliance on CHGO misplaced, the Court concluded that the FEC's dismissal was subject to judicial review, and, rejecting AAN's other arguments as well, proceeded to deny its motion to dismiss in large part. See CREW III, 410 F. Supp. 3d at 15–20, 30.

---

[3] Available at: https://www.fec.gov/files/legal/murs/6589/16044401031.pdf.

For ease of reference on the question of reviewability, and the benefit of any reviewing court, the Court excerpts its reasoning in full below.

\*   \*   \*

The Court does not read CHGO to preclude judicial review here. CHGO based its holding on Heckler v. Cheney, where the Supreme Court held that agency nonenforcement decisions are "presumptively unreviewable" under the Administrative Procedure Act to the extent they are "committed to agency discretion by law." CHGO, 892 F.3d at 438–41 (citing Heckler, 470 U.S. 821, 830, 832–33 (1985)). Nonenforcement decisions receive this broad reprieve from judicial review because, in deciding to forgo enforcement, agencies

> must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing.

Heckler, 470 U.S. at 831–32; see CHGO, 892 F.3d at 439 & n.7 (quoting this passage). The controlling Commissioners in CHGO relied on the very type of practical and prudential considerations that Heckler indicated were not subject to judicial review. Their Statement of Reasons explained

> that the statute of limitations had expired or was about to; that the association . . . no longer existed; that the association had filed termination papers with the IRS four years earlier; that it had no money; that its counsel had resigned; that the "defunct" association no longer had any agents who could legally bind it; and that any action against the association would raise "novel legal issues that the Commission had no briefing or time to decide."

CHGO, 892 F.3d at 438 (quoting Statement of Reasons). Weighing these considerations, the three Commissioners concluded that the "case did not warrant further use of Commission resources." Id.

5

While finding the dismissal unreviewable under Heckler, the CHGO panel majority acknowledged prior Supreme Court and D.C. Circuit cases holding that FEC nonenforcement decisions, unlike those of other agencies, are reviewable for a determination of whether they are "contrary to law" when based on an interpretation of FECA.  CHGO, 892 F.3d at 441 n.11 (citing Akins, 524 U.S. at 26 (holding that there may be review under FECA if the agency's action was based entirely on its interpretation of the statute); FEC v. Democratic Senatorial Campaign Comm. ("DSCC"), 454 U.S. 27, 37 (1981) (noting that FEC dismissals based on its interpretation of FECA is subject to judicial review to determine whether its interpretation is "contrary to law")); see also Orloski v. FEC, 795 F.2d 156, 161 (D.C. Cir. 1986) ("The standard to be applied by this court in reviewing the FEC's decision not to investigate Orloski's complaint is whether the FEC has acted 'contrary to law.'").  The Circuit reconciled these competing precedents by distinguishing nonenforcement decisions that are "committed to agency discretion"—due to the prudential considerations present in both Heckler and CHGO—from decisions "based entirely on [the agency's] interpretation of the statute."  CHGO, 892 F.3d at 441 & n.11.  Dismissals in the latter category are reviewable; those in the former are not.

Nothing in CHGO suggests that the mere invocation of the phrase "prosecutorial discretion" precludes judicial review.  For good reason.  The use of the term could indicate at least two types of concerns.  In contrast to the prudential-based concerns at the heart of Heckler, agencies frequently exercise a kind of prosecutorial discretion when they consider whether a statute prohibits a certain type of conduct at the margins.  Reviewing an agency's interpretation of a statute in that context is squarely within the courts' expertise, particularly where the agency's reading of the statute implicates constitutional jurisprudence.  Cf. Akins v. FEC, 101 F.3d 731, 740 (D.C. Cir. 1996), vacated on other grounds, 524 U.S. 11 (1998) (noting that

6

review of agency interpretation of judicial opinions is especially salient when the "precedent is based on constitutional concerns, which is an area of presumed judicial competence'"); see also CREW I, 209 F. Supp. 3d at 87 ("[C]ourts need not, and should not, defer to agency interpretations of opinions written by courts.") (collecting cases).

What precludes judicial review, then, is not a talismanic recitation of the phrase "prosecutorial discretion" but reliance by the FEC on factors particularly within its expertise in exercising that discretion. It would upend the distinction that CHGO drew—and gut the statutory scheme that Congress created in FECA—to foreclose judicial review whenever the FEC bases its dismissal on legal interpretations couched as "prosecutorial discretion" or, worse yet, simply sprinkles the term throughout a Statement of Reasons in order to circumvent judicial review. See CREW v. FEC, 923 F.3d 1141, 1149 (D.C. Cir. 2019) (Pillard, J., dissenting from denial of rehearing en banc in CHGO) (suggesting as much, perhaps, by noting that the FEC has "cited prosecutorial discretion in every statement of reasons . . . since the district court decision in" CHGO).

Judge Contreras had a similar take on CHGO in a recent opinion declining to review the FEC's dismissal of yet another of CREW's administrative complaints regarding a putative political committee. See CREW v. FEC ("New Models"), 380 F. Supp. 3d 30 (D.D.C. 2019). There, the controlling Commissioners based their decision on "three reasons." Id. at 37. The first two were legal. See id. (discussing the FEC's conclusions that New Models "fell outside the statutory definition of a political committee" and that its "major purpose was not the nomination or election of candidates for federal elections"). The third, however, reflected prosecutorial discretion rooted in prudential concerns. The Commissioners reasoned that "proceeding further would not be an appropriate use of Commission resources" because "New Models 'appear[ed]

no longer active,'" had "liquidated, terminated, dissolved, or otherwise ceased operations," and had engaged in the activity in question years earlier. Id. at 37–38 (quoting Statement of Reasons) (alternation in original). Judge Contreras concluded that CHGO precluded judicial review even though most of the Statement of Reasons involved legal interpretations. Id. at 44–45. However, he then suggested that CHGO would not bar review when the FEC merely uses the term "prosecutorial discretion" but grounds that discretion in legal precedent: "Had the Controlling Commissioners invoked prosecutorial discretion based on their legal analysis, . . . the Court, perhaps, could undertake a more piercing review." Id. at 42 n.12.

This case presents the situation that Judge Contreras hypothesized. The controlling Commissioners' first Statement of Reasons spans 27 single-spaced pages and 153 footnotes. Virtually all its analysis is devoted to explaining why, in the Commissioners' view, it would violate Supreme Court and other lower court precedent to consider AAN's electioneering communications in determining whether the organization satisfied Buckley's "major purpose" test. The second Statement of Reasons, following this Court's initial remand, comprised an additional 19 single-spaced pages. It exclusively examines whether AAN's challenged electioneering advertisements evince an electoral purpose and concludes that most do not.

There are exactly two references to "prosecutorial discretion" in the first Statement and none in the second.[4] The first reference appears 23 pages into the initial Statement of Reasons in footnote 137. The footnote begins by noting the Commissioners' view that a then-recent Seventh Circuit opinion "casts grave constitutional doubt" on the Office of General Counsel's

---

[4] [footnote 5 in CREW III] Generally, the Court would review only the second Statement of Reasons, which as a formal matter superseded the first on remand. In this case, however, the Court thinks it prudent to consider both because AAN's premise is that under CHGO, the Court should have never reviewed the first statement, let alone the second.

"expansive approach" to applying Buckley's major purpose test. First Statement of Reasons at 23–24 & n.137. Then, analogizing to the rule of constitutional avoidance in statutory construction, the footnote continues:

> Moreover, the constitutional doubts raised here militate in favor of cautious exercise of prosecutorial discretion. See Heckler v. Chaney, 470 U.S. 821, 831 (1985) ("[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.").

Id. The only other reference to prosecutorial discretion appears in the concluding paragraph of the first Statement of Reasons, which reads in full:

> AAN is an issue-advocacy group that only occasionally engaged in express advocacy. As such, it cannot and should not be subject to the pervasive and burdensome requirements of registering and reporting as a political committee. For that reason, *and in exercise of our prosecutorial discretion*, we voted against finding reason to believe AAN violated the Act by failing to register and report as a political committee.

Id. at 27 (cleaned up) (emphasis added).

Neither reference mentions resource-based or other prudential considerations of the sort cited by the controlling Commissioners in CHGO and identified by the Supreme Court in Heckler as grounds to shield discretionary nonenforcement decisions from judicial review. Rather, the only factors that the Commissioners explicitly relied upon to ground their exercise of prosecutorial discretion are the "constitutional doubts" stemming from their interpretation of applicable case law. In the absence of any discussion of practical considerations, the Commissioners' observation that their "constitutional doubts . . . militate[d] in favor of cautious exercise of [their] prosecutorial discretion," id. at 23–24 n.137, is best understood as a conclusion that FECA, read in light of constitutional doctrine, did not permit an enforcement action. As CHGO explained, dismissals premised on those sorts of legal interpretations are judicially reviewable. 892 F.3d at 441 n.11.

9

AAN resists this conclusion by emphasizing the conjunctive "and" in the phrase italicized above from the first Statement of Reasons' concluding paragraph. In its view, the phrase shows that the Commissioners' invocation of prosecutorial discretion was distinct from the legal interpretations to which they devoted virtually all their reasoning. The Court is not convinced. The Commissioners' two references to prosecutorial discretion are tethered to their legal reasoning. Again, in footnote 137 of the first Statement of Reasons, the Commissioners explained that their "constitutional doubts" (about whether the case law supported a finding that AAN was operating as a political committee) counseled against enforcement. And the reference to prosecutorial discretion in the Statement of Reasons' concluding paragraph adds no further explanation for its application. It simply directs the reader back to the footnote. All roads, then, lead to legal interpretations.

Counsel for AAN suggested at the hearing that the Commission's reference to "constitutional doubts" in footnote 137 of the first Statement of Reasons should be understood as indicating an aversion to the litigation risk of enforcement. AAN maintains that this nod to litigation risk reflected some of the factors Heckler identified as squarely within agency expertise, such as "whether the agency is likely to succeed if it acts and whether the action [] best fits the agency's overall policies." Hr'g Tr. 14:19–22 (Aug. 6, 2019) (Rough). Even accepting AAN's equation of "constitutional doubts" with "litigation risk" (which would be charitable, given that the phrase "litigation risk" never appears in either Statement of Reasons), the Court is not persuaded.

"Litigation risk" could refer to two categories of concerns. First, as counsel argued, a concern over litigation risk could reflect the traditional resource-allocation decisions that would render a nonenforcement decision unreviewable. An agency might conclude that the costs of

10

litigating a potential action outweigh the likely benefits of enforcing a statute on the margins. But "litigation risk" could also mean that the agency simply doubts that a court would sustain enforcement based on its application of the statute and precedent to the facts.  That is a concern based on a legal interpretation, and it matches the words actually used by the controlling Commissioners here.  See First Statement of Reasons at 23–24 n.137 ("[T]he constitutional doubts raised here militate in favor of cautious exercise of prosecutorial discretion.").  If doubts as to how a court would rule were enough to preclude review, nearly every agency legal interpretation would be insulated from judicial oversight.  As Judge Bates recently explained in the context of an APA challenge to a general nonenforcement policy:

> [W]here an agency asserts that a nonenforcement policy is unlawful and then asserts "litigation risk" as a separate ground for the policy's rescission, there are reasons to be . . . suspicious.  After all, if an agency could insulate from judicial review any legal interpretation simply by . . . offering as an additional, "discretionary" justification the assertion that a court would likely agree with the agency's interpretation, then [precedent permitting judicial review] would be a dead letter.

NAACP, 298 F. Supp. 3d at 233.  "[S]uch an assertion," Judge Bates continued, "would depend (at least in part) on the correctness of the agency's view of the policy's unlawfulness," which is reviewable.  Id. at 233–34.

So, to the extent that a concern about "litigation risk" can be divined from the controlling Commissioners' mention of "constitutional doubts," that is no bar to review.  Any such concern would be part-and-parcel of the Commissioners' reviewable legal interpretations.  The Court declines to infer several layers of meaning into the Commissioners' purported "constitutional doubts;" it will instead take them at their word and find that their interpretation of FECA in light of First Amendment doctrine is what led them to dismiss the complaint.

In sum, the controlling Commissioners expressed skepticism over the constitutionality of the Office of General Counsel's legal approach and concern that action on CREW's complaint would be legally suspect. The Commissioners' passing invocation of prosecutorial discretion was rooted entirely in those legal misgivings. The first Statement of Reasons cannot be fairly read to imply resource-based or other practical considerations, including litigation risk, that the Commissioners nowhere mentioned. And the second Statement of Reasons—issued on remand from CREW I and challenged in CREW II—does not mention prosecutorial discretion at all, which only bolsters the conclusion that the Commission's dismissal of the case was premised entirely on the controlling Commissioners' legal reasoning.[5] Accordingly, the record demonstrates that the Commissioners' decision was based on legal interpretations that FECA authorizes the Court to review. The Court will therefore deny AAN's motion to dismiss the complaint as beyond judicial review.

. . . .

See CREW III, 410 F. Supp. 3d at 15–20.

\*   \*   \*

To these points, the Court could have added another. While the Supreme Court has "rejected the principle that if an agency 'gives a reviewable reason for otherwise unreviewable action, the action becomes reviewable,'" New Models, 993 F.3d at 886 (quoting Crowley

---

[5] [footnote 6 in CREW III] AAN cites a string of cases that hold that an unreviewable discretionary decision remains unreviewable even if there are reviewable legal standards baked in. See Reply at 11–12 (citing, *inter alia*, ICC v. Bhd. of Locomotive Eng'rs, 482 U.S. 270, 282–83 (1987)). But those decisions are inapposite because here both Statements of Reasons were entirely based on legal conclusions. See CHGO, 892 F.3d at 442 ("The law of this circuit rejects the notion of carving reviewable legal rulings out from the middle of non-reviewable actions.") (internal quotation marks omitted).

Caribbean Transp., Inc. v. Peña, 37 F.3d 671, 676 (D.C. Cir. 1994)), the underlying "action" in cases under FECA's citizen-suit provision is always the same: a "dismissal of the complaint or the failure to act." § 30109(a)(8)(C). The statute makes that action reviewable. Indeed, if the citizen-suit provision is to do any work, a nonenforcement decision must be reviewable *sometimes*—and it actually does depend on the reasons given by the controlling Commissioners. A dismissal based on "prosecutorial discretion," where the exercise of that discretion rests *solely* on the FEC's legal interpretation, is no different than "the Commission declin[ing] to bring an enforcement action on the basis of its interpretation of FECA," which is subject to judicial review. See CHGO, 892 F.3d at 441 n.11. If the Commissioners' legal reasons were wrong, perhaps they would not have invoked their so-called "prosecutorial discretion."[6] On the other hand, prudential considerations, like whether enforcement aligns with the agency's priorities or is worth spending resources on, reflect the quintessential exercise of "prosecutorial discretion." Those considerations are, in a sense, "unreviewable reasons" that shield an otherwise reviewable action from judicial review.

Following the Court's ruling in CREW III, AAN sought a certification for an interlocutory appeal on four issues, including whether the FEC's two dismissals of CREW's complaint were reviewable in this Court. See CREW IV, 415 F. Supp. 3d at 144. The Court declined to issue the requested certification, reiterating that "FEC dismissals based on

---

[6] This case may be a prime example. Here, the supposed "constitutional doubts" that motivated the controlling Commissioners' "cautious exercise of [their] prosecutorial discretion," First Statement of Reasons at 23–24 & n.137, stemmed from their view of the Seventh Circuit's decision in Wisconsin Right To Life, Inc. v. Barland, 751 F.3d 804 (7th Cir. 2014). In Crew I, this Court explained why Barland's "cramped interpretation" was "in conflict with the vast majority of appellate courts," "out of step with the legal consensus" at the time, and "rested on a flawed premise." See 209 F. Supp. 3d at 90–91. Courts are well equipped to review the legal reasoning, like this, behind FEC dismissals, and FECA expressly provides for "contrary to law" review.

[prosecutorial] discretion rooted entirely in legal conclusions are reviewable." Id. at 146. That was in November 2019, and the parties then entered discovery.

Before the close of discovery, in April 2021, another divided D.C. Circuit panel issued a decision in the appeal of the New Models case mentioned above. See 993 F.3d 880. While the panel affirmed Judge Contreras's grant of summary judgment to the Commission based on the unreviewable invocation of prosecutorial discretion, its holding and reasoning went further than Judge Contreras's opinion. The panel held that an FEC dismissal of an administrative complaint "that rests even in part on prosecutorial discretion cannot be subject to judicial review." Id. at 884; see also id. at 882. It added that "whether legal interpretation underlay the decision" did not matter. Id. at 886 n.4.

Seizing on the Circuit's ruling in New Models, AAN has moved under Federal Rule of Civil Procedure 54(b) for reconsideration of the Court's denial of its motion to dismiss CREW's suit.

## II. Legal Standards

When a court issues an "order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties," such an order or decision "may be revised at any time before" the case has been fully and finally resolved. Fed R. Civ. P. 54(b). Rule 54(b) allows such modification of interlocutory orders "as justice requires." See Attias v. CareFirst, Inc., 518 F. Supp. 3d 43, 51 (D.D.C. 2021) (Cooper, J.) (citation omitted). As relevant here, "[r]evision may be necessary" under this standard when there has been a "controlling or significant change in the law or facts . . . since the submission of the issue to the Court." Talbot v. U.S. Dep't of State, 373 F. Supp. 3d 212, 217 (D.D.C. 2018) (Cooper, J.).

14

### III. Analysis

The Court stands by its prior reasoning, laid out above, as to why the Commission's dismissal in this case is reviewable. But AAN is correct that the panel majority's subsequent ruling in New Models precludes judicial review of that dismissal.

As here, a Commission stalemate in New Models resulted in the dismissal of CREW's administrative complaint. As here, the controlling FEC Commissioners issued a lengthy Statement of Reasons that applied a "thoroughgoing legal analysis" to support the dismissal. See New Models, 993 F.3d at 896 (Millett, J., dissenting). As here, Commissioners based their Statement of Reasons almost entirely on their legal analysis of FECA, with only a fleeting, conclusory reference to prosecutorial discretion in the last sentence of the statement and an accompanying footnote. Id. at 896, 899–900 (Millett, J., dissenting). And as here, CREW argued in New Models that to the extent the controlling Commissioners' concerns about prosecutorial discretion were grounded in their interpretation of the statute—including a concern that the law would not support a charge—that interpretation was subject to "contrary to law" review under FECA. See id. at 884–86 (Majority Op.).

Faced with these parallel circumstances, the panel majority found the Commission's dismissal of CREW's complaint unreviewable, holding that "a Commission decision that rests even in part on prosecutorial discretion cannot be subject to judicial review." Id. at 884. And, unlike Judge Contreras's opinion below, its holding was unqualified: The form and length of the Commission's discussion of prosecutorial discretion was not "dispositive or even particularly relevant." Id. at 887 & n.5; contra CREW v. FEC, 380 F. Supp. 3d 30, 42 n.12 (D.D.C. 2019) (New Models district court opinion) (Judge Contreras noting that if Commissioners had "invoked prosecutorial discretion based on their legal analysis"—including if they thought agency action

"was unlikely to succeed" or if their dismissal were based on "fair notice or due process concerns"—then a court "could undertake a more piercing review."). Nor did it matter that the Commissioners' purported exercise of prosecutorial discretion may have been motivated by legal reasons, as opposed to the type of prudential considerations that animated Heckler v. Chaney. See New Models, 993 F.3d at 886 n.4 ("It is the nature of the decision not to prosecute that matters, not whether legal interpretation underlay the decision").

To be sure, the Court could distinguish this case from New Models in certain respects. Most notably, the controlling Commissioners in New Models at least mentioned a few prudential considerations in connection with their cursory invocation of prosecutorial discretion. In re New Models, Statement of Reasons of Vice Chair Caroline C. Hunter and Commissioner Lee E. Goodman, MUR No. 6872, at 31 n.139 (Dec. 20, 2017) ("Given the age of the activity and the fact that the organization appears no longer active, proceeding further would not be an appropriate use of Commission resources."). Here, they cited none. But these distinctions do not place this case beyond the majority opinion's reach. As Judge Millett put it in dissent, the majority's ruling permits the FEC to effectively shield any dismissal from judicial scrutiny "with just a rhetorical wink to prosecution discretion." New Models, 993 F.3d at 896 (Millett, J., dissenting). The wink here was even quicker, but no less fatal to CREW's claim.[7]

---

[7] This case is also somewhat different from New Models in that, here, the controlling Commissioners issued two separate Statements of Reasons, one after a remand from this Court, and the second statement did not mention prosecutorial discretion at all. But as AAN points out, if the passing reference to prosecutorial discretion in the initial statement made the first dismissal unreviewable under New Models, then the Court lacked the power to issue the remand order that resulted in the second statement. The result would have been a dismissal of CREW's case, and the Commissioners never would have issued a second statement. In any event, the second Statement of Reasons "incorporate[d] by reference" the first one "on all points except for aspects deemed contrary to law" by this Court. Second Statement of Reasons at 2.

16

One final note. As reflected by the divided panels in both <u>CHGO</u> and <u>New Models</u>, the Circuit appears deeply split over the relationship between the presumptive unreviewability of agency nonenforcement decisions on one hand, and FECA's explicit provision of "contrary to law" review on the other. Following the <u>New Models</u> ruling, CREW petitioned for rehearing en banc. The Court had hoped to wait for at least the prospect of additional guidance from the Circuit before ruling on AAN's motion for reconsideration. But CREW's en banc petition has been pending for nearly nine months. Given the passage of time, and in fairness to AAN, the Court will not wait any longer. Should CREW appeal today's ruling and the Circuit grant en banc review in <u>New Models</u>, the en banc ruling would likely resolve the question of reviewability for both cases. And if en banc review is denied, another Circuit panel would have an opportunity to evaluate whether <u>New Models</u> is indeed controlling in this case.

## IV. Conclusion

For the above reasons, CREW's challenge to the FEC's dismissal of its administrative complaint is not subject to judicial review. Accordingly, the Court must grant AAN's motion for reconsideration and dismiss this suit. A separate Order will follow.

CHRISTOPHER R. COOPER<br>
United States District Judge

Date: <u>March 2, 2022</u>